## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

**MAHASKA BOTTLING COMPANY, INC.,**

     *Plaintiff,*

**v.**

**PEPSICO, INC.  and BOTTLING GROUP, LLC,**

     *Defendants.*

**Case No. 16-114**


**COMPLAINT**

## COMPLAINT

**COMES NOW** Mahaska Bottling Company, Inc., who files this Complaint and alleges as follows:

### PARTIES AND RELEVANT NON-PARTIES

1.     Plaintiff Mahaska Bottling Company, Inc., ("Mahaska") is an Iowa Corporation with its principal office located at 1407 17th Avenue, East Oskaloosa, Iowa 52577.

2.     Defendant PepsiCo, Inc. ("PepsiCo") is a New York Corporation organized, existing and doing business under and by virtue of the laws of the State of North Carolina, with its office and principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577.

3.     Defendant Bottling Group LLC a/k/a and/or d/b/a Pepsi Beverages Company ("PBC") is a Delaware subsidiary of PepsiCo, which is a successor to formerly independent bottling companies, Pepsi Bottling Group, Inc. ("PBG"), and PepsiAmericas, Inc. ("PAS") each of which had been acquired, through acquisition of all outstanding voting securities, by PepsiCo in or around year 2010.

4.      Non-Party Dollar General Corporation ("Dollar General") is a Tennessee Corporation.  Dollar General is the largest discount retailer in the United States with over 11,500 stores located in over 43 states, including more than 80 stores in Iowa.

5.      Non-Party Family Dollar Stores, Inc., ("Family Dollar") is a North Carolina Corporation and, as of July 2015, a wholly owned subsidiary of Dollar Tree, Inc., a Virginia Corporation.  Family Dollar operates over 7800 discount stores throughout the United States, including more than 30 stores in Iowa.

6.      Non-Party Dr Pepper Snapple Group ("DPSG") is a Texas Corporation that is a leading integrated brand owner, manufacturer and distributor of non-alcoholic beverages in the United States ("U.S."), Canada and Mexico, and, after the Coca-Cola Company and PepsiCo, DPSG owns the third largest share of the market for Carbonated Soft Drink ("CSD") concentrate in the United States.

**JURISDICTION AND VENUE**

7.      PepsiCo and PBC are, and at all times relevant herein have been, engaged in commerce, or in activities affecting commerce.

8.      This is an action under both state law and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 to recover treble damages, costs of suit, and reasonable attorneys' fees. Plaintiff's federal antitrust claims are based on Defendants' unlawful actions and conspiracy with third parties arise under Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 2(a) of the Robinson Patman Act, 15 U.S.C. § 13.

9.      This Court has original jurisdiction over the federal subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over the appended state law claims pursuant to 28 U.S.C. § 1367.

10.     This Court also has diversity jurisdiction over the state law claims.  The parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.     Venue is proper in this Court under 15 U.S.C. § 22, because Defendants are found or transact business in this District.

12.     Venue is also proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Factual Background

### The Mahaska Territories

13.     Mahaska is a local, family owned independent bottler that provides jobs to hundreds of Iowans. Mahaska was established in 1889, and entered its first Exclusive Bottling Appointment ("EBA") with PepsiCo in 1928.  After PepsiCo emerged from bankruptcy in the 1930s (with the support of independent bottlers including Mahaska), Mahaska continued to serve as the exclusive Pepsi bottler and distributor in its territory.

14.     In 1948, Mahaska entered into a new EBA with PepsiCo that reaffirmed Mahaska's exclusive right, in perpetuity, to use the Pepsi trademark and to sell Pepsi soft drink products in various Iowa counties, including Marion; Mahaska; Keokuk; Washington; Jefferson; Wapello; Monroe; Lucas; Appanoose; and parts of Jasper and Poweshiek (the "Iowa Territories").  In subsequent agreements with PepsiCo, Mahaska was granted: 1) rights to Pepsi syrup used for fountain products; 2) additional exclusive territories including parts of Nebraska and Kansas; and 3) additional products such as Diet Pepsi, Mountain Dew, and etc.  Collectively, Mahaska's exclusive territories under its agreements with PepsiCo are referred to below as the

"Mahaska Territories."   As discussed below, Mahaska also has exclusive rights to distribute DPSG products in the Mahaska Territories.

15.     Under the EBA and related agreements, Mahaska must purchase the concentrate for carbonated soft drinks (*i.e.,* the "concentrate") from PepsiCo, and must "vigorously push" sales of PepsiCo products in the Mahaska Territories.   In return, Mahaska was given full discretion to set prices of PepsiCo products to customers in the Mahaska Territories.   Through its own diligence, high quality service and support, and fair pricing practices, Mahaska successfully distributed soft drink products in its territories for more than a century.   A true and correct copy of the EBA is attached hereto as **Exhibit "A."**

16.     PepsiCo is an American multinational food, snack and beverage corporation with interests in the manufacturing, marketing, and distribution of snack foods, beverages, and other products including but not limited to soft drink concentrate.

17.     PBC is a direct competitor of Mahaska in the Mahaska Territories. Specifically, PBC competes with Mahaska in selling snack/vending, beverages (such as Gatorade), and other such products.

18.     Beginning in the 1920s, PepsiCo established a network of independent bottlers, each having exclusive territories, as a means of financing expansion and competing with the leading soft drink company of the time, Coca-Cola Company.   Without financial support from independent bottlers such as Mahaska, PepsiCo would not have survived its bankruptcy in the 1930s or subsequently prospered.

19.     For decades, PepsiCo recognized both the critical role of the independent bottlers and exclusive rights that were required to incentivize their substantial investments in the growth of the PepsiCo brands.   Thus, and as acknowledged by the U.S. Court of Appeals for the Fifth

Circuit, in *Pepsi-Cola Bottling Company of Pittsburg, Inc. v PepsiCo, Inc*. 431 F.3d 124, 1249 (5th Cir. 2005) in his August 14, 1975, testimony before the Federal Trade Commission, then-PepsiCo President Walter S. Mack discussed how PepsiCo used the promise of exclusivity to persuade independent businessmen to become PepsiCo bottlers:

> "[W]e had to give them confidence in the early days that we were going to win our trademark suits and that they were taking on a beverage which they would have the exclusive right to from then on for the rest of their lives. [We told the bottlers] that the parent company would protect their franchise, the terms and conditions of the franchise, and do everything we could to protect both the trademark and the name and their territory for them on an exclusive basis.

> Mack testified that PepsiCo told the bottlers they would have an exclusive franchise for the rest of their lives or in perpetuity.

20.    Beginning in the 1980s; however, PepsiCo adopted strategies to undermine the exclusive rights of many bottlers and sought increasing control over relationships with customers having multiple locations around the country.  For example, in the early 1990s, PepsiCo began to push marketing programs built upon agreements with large chain customers, called the Customer Development Agreement ("CDA").  PepsiCo uses such agreements to set supposedly national (or uniform) pricing for large retail chains and to overcome its inability to compel independent bottlers, such as Mahaska, to offer Pepsi products at specific prices.

21.    The CDA's established a rebate that PepsiCo will pay to replicate the "national" price it wants to offer a particular customer.  Because PepsiCo cannot force Mahaska and/or other independent bottlers to sell PepsiCo products at a particular price, under a CDA, PepsiCo generally pays a rebate to account for the difference between the price charged by the bottler and the national price agreed upon by PepsiCo and the particular customer.

22.     To reduce its own costs and protect its profitability, and contrary to express commitments made to Mahaska and other independent bottlers, PepsiCo has persistently attempted to persuade and/or coerce independent bottlers into accepting a portion of the rebate costs.  In many instances, PepsiCo and a bottler enter into a Marketplace Investment Agreement ("MIA") under which PepsiCo makes payments to the bottler in return for accepting a portion of rebate costs and costs related to national advertising campaigns.

23.     Unlike many other independent bottlers, Mahaska does not agree to participate in any CDA or MIA arrangements.  Such agreements, in Mahaska's view, serve only to erode its exclusive rights and relationships with customers of PepsiCo products in its territories.

24.     Despite Mahaska's insistence on maintaining its exclusive rights and customer relationships, Mahaska has long cooperated with PepsiCo's efforts to offer national pricing to large customers.  Mahaska's sole condition for such cooperation has been that PepsiCo honor its own pricing commitments (while Mahaska will honor its own commitments to customer's in its exclusive territories).

25.     In 2003, PepsiCo and Mahaska formalized their agreement with respect to national customers.  In a letter agreement entered as part of exclusive arrangements for multiple PepsiCo products, PepsiCo and Mahaska agreed, in Paragraph 8, as follows:

> "[Mahaska] will not be required to enter into any Marketplace Investment Agreements nor will [Mahaska] be required to participate in CMAs or CDAs (regional or national) nor be financially responsible or liable for the offers (including pricing programs, discounts or rebates) made by [PepsiCo] and/or any other bottler to any customer, unless the Bottlers and the Company otherwise specifically agree in writing.  If the Company, [PepsiCo] or any other bottler make any such offers, the offering party (and not [Mahaska]) will be responsible for fulfilling the terms of any such offers."

"Omnibus Side Letter Concerning Exclusive Bottling Appointments, Exclusive Syrup Appointments, Waiver Agreements, and Distribution Agreements for Mahaska Bottling Company," Bradley G. Muhl (Mahaska President) to Kathryn L, Carson, Esq. (Counsel for PepsiCo), dated July 1, 2003. ("Omnibus Side Letter").  A true and correct copy of the Omnibus Side Letter is attached hereto as **Exhibit "B."**

26.     Paragraph 8 of the Omnibus Side Letter reiterated the express commitment made by PepsiCo to all of its independent bottlers at the outset of its CDA program.  In a memorandum to "All Pepsi-Cola Bottlers," dated September 24, 1993, Gerald W. Casey, then Vice President and Associate General Counsel of PepsiCo, issued a memo to all Pepsi-Cola bottlers which stated in pertinent part:

> ***The Pepsi Bottler has always enjoyed the exclusive right to manufacture and sell franchised products in bottles and cans in its Territory, to the exclusion of other Pepsi Bottlers and PepsiCo.*** Equally fundamental is the Bottler's independence in determining price and other conditions of sale to its customers. PepsiCo remains strongly committed to exclusive territories and the Bottler's exclusive relationship with its customers. Pepsi-Cola company has expressly recognized that Bottlers will not be deemed to waive or be estopped to assert their exclusive rights where PepsiCo makes "headquarters calls" on behalf of Bottlers.

> … PepsiCo recognizes the need for protection of Bottler rights in connection with such discussions and accordingly agrees as follows: (i) by allowing such discussions the ***Bottler neither waives its right to enforce its exclusive Appointment nor is estopped fromasserting any right***: (ii) ***the Bottler's independence in determining its prices and other terms of sale will not be compromised***; (iii) PepsiCo may offer incentives to Bottlers who elect to participate in specific programs which PepsiCo may develop with national chains, ***but the Bottler's freedom to decide whether to participate in any such program will not be compromised by means of retribution, pressure or coercion***: however, this shall not limit any rights which PepsiCo or the Bottler has under the terms of the Exclusive Bottling Appointment: and (iv) PepsiCo will make every reasonable effort to provide Bottlers with information sufficient to make an informed business and legal decision regarding participation in any national chain program…

> ***PepsiCo remains committed to the principle that the local Pepsi Bottler is the***

*sole seller of Pepsi-Cola products in bottles and cans to customers within its Territory, and enjoys an exclusive, direct and highly valuable relationship with each bottle and can customer.* [Emphasis Added].

The Casey memorandum has, in dealings between PepsiCo and independent bottlers since its distribution, been call the "Rule of '94."  A copy of the Casey memorandum is attached hereto as **Exhibit "C."**

## MAHASKA'S EXCLUSIVE DR PEPPER TERRITORIES

27.     Dr Pepper Snapple Group ("DPSG"), like PepsiCo, is a leading beverage company that offers more than 50 brands of carbonated soft drink juices, teas, and other beverages.  DPSG offers six of the top 10 non-cola soft drinks in the United States, including Dr Pepper, Snapple, 7UP, A&W, Canada Dry, Crush, Schweppes, Squirt, and Sunkist among others.

28.     Mahaska has distributed DPSG products since 1975 in territories that overlap with its exclusive PepsiCo territories.

## PEPSICO'S BREACH OF CONTRACT AND DISPARAGEMENT OF MAHASKA

29.     Contrary to the Parties' practices over the past 50 years, the Mahaska EBAs and Syrup Appointments with Mahaska, and Paragraph 8, PepsiCo has now sought to coerce Mahaska to assume responsibility for pricing agreed to between PepsiCo and certain national customers—namely, Dollar General and Family Dollar Stores—without Mahaska's knowledge or consent.  Indeed, some of the prices established by PepsiCo are below Mahaska's costs, and can only be considered an attempt to undermine Mahaska and force it out of the market.

30.     PepsiCo has promised pricing to large retail chains with outlets in Mahaska's exclusive territories that could not be met by Mahaska and which is disruptive to Mahaska's longstanding relationships with both the subject companies and its other long-standing customers.  Unlike PepsiCo, Mahaska has never been willing to price discriminate among its

customers and, thereby, undermine competition among them and harm its own reputation, credibility, and business relationships.

31.     Further, to implement its conspiracy to unlawfully grab Mahaska's exclusive territory, PepsiCo has disparaged Mahaska with the false statement that Mahaska is unwilling to serve its long-standing customers.

32.     Thus, a February 26, 2016, Family Dollar email communication makes clear that PepsiCo disparaged Mahaska to disrupt its exclusive right to distribute Pepsi products in its territory through false statements that include the following:

> "Please be advised that your store is 1 of 67 that will no longer have Pepsi service. Your local Pepsi bottler is unwilling to do business with Family Dollar due to our aggressive pricing. We have exhausted all options through 6 months of negotiations to fix this situation. Select stores may have service halted immediately while others may receive service until the end of March, 2016."

A true and correct copy of the Family Dollar (email or letter) is attached hereto as **Exhibit "D."** In fact, neither PepsiCo nor Family Dollar ever "negotiated" with Mahaska to fix the alleged "problem," and PepsiCo, as it has repeatedly admitted, had no right to negotiate prices for Pepsi products to be sold in Mahaska's exclusive territories.

### PEPSICO'S UNLAWFUL COLLUSION, PRICE-FIXING, PRICE DISCRIMINATION AND VIOLATION OF CONSENT ORDER ENTERED BY THE FEDERAL TRADE COMMISSION

33.     On August 3, 2009, PepsiCo agreed to acquire its two largest independent bottlers and distributors, Pepsi Bottling Group ("PBG") and PepsiAmericas ("PAS"), for approximately $7.8 billion. When the agreement was announced, PepsiCo already owned about 40 percent of Pepsi Bottling Group and about 43 percent of PepsiAmericas, which together account for about three-quarters of all U.S. sales of PepsiCo carbonated soft drinks, as well as 20 percent of all U.S. bottler-distributed sales of DPSG's carbonated soft drinks.

34.     In a related deal, on December 7, 2009, PepsiCo agreed to continue bottling and distributing carbonated soft drink brands of DPSG which included Dr Pepper, Crush, and Schweppes in the territories of the two bottlers. Under the exclusive licensing agreement, PepsiCo will pay DPSG $900 million for a license to distribute and sell these brands for the next 20 years.

35.     PepsiCo and DPSG are direct competitors along with the Coca-Cola Company, in the highly concentrated and difficult-to-enter markets for branded soft drink concentrate and branded and direct-store-delivered CSD.  In all, the total sales of soft drink concentrate in the United States are about $9 billion annually, and the total U.S. sales of CSD sold by retailers are about $70 billion.

36.     The Federal Trade Commission ("FTC") has long been concerned with the need to preserve competition among Coca-Cola (the largest soft drink company), PepsiCo, and DPSG. Although Coca-Cola has the largest market share in the United States, PepsiCo and DPSG together account for more than 50% in CSD sales in the United States, and in some markets more than 80%.

37.     Accordingly, the FTC stepped-in to enjoin PepsiCo's proposed acquisition of Seven-Up and Coca-Cola's proposed acquisition of Dr Pepper in 1986.  After these failed efforts to further consolidate the CSD industry, Seven-Up and Dr Pepper merged in late 1986 and they were later joined by Cadbury (1995) and Snapple Beverage Group (2000) to form DPSG.

38.     More recently, the FTC acted to protect competition from potential collusion between PepsiCo and DPSG through PepsiCo vertically integrated bottlers (or distribution companies) such as PBG and PAS.  On September 27, 2010, the FTC initiated action against PepsiCo to enjoin PepsiCo's acquisitions of PBC and PAS (and a third bottler) in the absence of

competitive safeguards.  *See* FTC Docket No. C-4301.  A copy of the FTC's Complaint Against PepsiCo is attached hereto as **Exhibit "E."**

39.     The FTC's Complaint alleged, inter alia in Paragraph 36 thereof:

PepsiCo's access to competitively sensitive confidential information provided by DPSG to PepsiCo in furtherance of the DPSG-PepsiCo license agreement, or the use by PepsiCo of competitively sensitive information passed to it by DPSG in furtherance of the DPSG-PepsiCo license agreement, may substantially lessen competition in the relevant markets in some or all of the following ways,

- by eliminating direct competition between PepsiCo and DPSG,
- by increasing the likelihood that PepsiCo may unilaterally exercise market power or influence and control DPSG's prices, and
- by increasing the likelihood of, or facilitating, coordinated interaction;
- each of which may result in higher prices to consumers.

40.     To address competitive concerns with respect to the acquisitions of PBG and PAS (now PBC), the FTC entered a decision and order that obligated PepsiCo and PBC to maintain separation of PepsiCo and DPSG sales and marketing information and promotions.  A copy of the FTC's decision and order is attached hereto as **Exhibit "F."**  In brief, the Order prohibits PepsiCo from using confidential DPSG information in connection with promotion and sales of PepsiCo products.

41.     Thus, the Order, in Section II(A)(7-8), states, inter alia:

- DPSG Commercially Sensitive Information is not used in connection with Concentrate-Related Functions in any way, such prohibition to include but not be limited to using the information even if the DPSG Commercially Sensitive Information is not itself revealed;

- DPSG documents and copies of documents reflecting or containing DPSG Commercially Sensitive Information (whether in the form provided by DPSG or in a form created by PepsiCo) are maintained as confidential until the earlier of five (5) years or when DPSG Commercially Sensitive Information becomes public through no act of PepsiCo; and

- DPSG Information Relating to DPSG Independent Promotions shall not be provided to the National Accounts Sales Team any time prior to the disclosure of such information to any Bottler other than PepsiCo.

42.     On information and belief, in imposing conditions on PepsiCo's acquisition of PBC, the Federal Trade Commission sought to prevent PBC from becoming a vehicle for unlawful price-fixing and collusion between PepsiCo and DPSG.

43.     PepsiCo and PBC actions and communications with respect to Family Dollar stores, shows that PepsiCo and PBC have ignored the obligations of the Order and, to the contrary, have orchestrated an unlawful price-fixing agreement with respect to sales of PepsiCo and DPSG products.

44.     PepsiCo and PBC have, moreover, engaged in unlawful price discrimination in violation of Section 2(a) of the Robinson Patman Act by selling soft drink products below cost to the detriment of competitors of Family Dollar and Dollar General and further in an effort to force Mahaska out of the market and thereby facilitate for future anticompetitive increases in prices on both PepsiCo and DPSG product to all consumers in the relevant market.

45.     PBC has effectively admitted the price fixing in email correspondence notifying Mahaska that PepsiCo and PBC entered into an unlawful pricing arrangement with Family Dollar covering not only PepsiCo products but also DPSG products and unlawfully instructing Mahaska to discontinue all DPSG service to Family Dollar.

> ---------- Forwarded message ----------
> From: **Daniels, Donna {PBC}** <Donna.Daniels@pepsico.com>
> Date: Wed, Mar 16, 2016 at 4:53 PM
> Subject: FW: Pepsi stores not going forward
> To: "breding@pepsidbq.com" <breding@pepsidbq.com>,
> "mikegarrison@winfieldbottling.com" <mikegarrison@winfieldbottling.com>,
> "thaubrich@iw.net" <thaubrich@iw.net>, "pepsimca@att.net"
> <pepsimca@att.net>, "markm@pepsiselmainc.com"
> <markm@pepsiselmainc.com>, "jfrush@themahaskagroup.com"

<jfrush@themahaskagroup.com>, "toddjohnson@pepsidavenport.com"
<toddjohnson@pepsidavenport.com>, "grpepsi@neibottling.com"
<grpepsi@neibottling.com>
Hi please let me know if you deliver Dr Pepper in your market. Also, please
confirm if you are still making deliveries to FD. If you are still not aligned to
the FD program, deliveries should be stopped on 3/31.
Thank you,
Donna Daniels
Pepsi Beverages Company
Phone: 336-896-5598
donna.daniels@pepsico.com

**From:** CALLIE LAMB [mailto:CLAMB@FAMILYDOLLAR.com]
**Sent:** Tuesday, March 15, 2016 2:43 PM
**To:** Daniels, Donna {PBC}
**Subject:** pepsi stores not going forward
Hi Donna,
For the 34 stores not going forward with pepsi, which of these have Dr Pepper
delivered by Pepsi?
*Callie Lamb*
Merchandise Coordinator -Beverages
10401 Monroe Road, Matthews, NC 28105
                     *: clamb@familydollar.com | 704-814-5059

A true and correct copy of the Donna Daniel's email is attached hereto as **Exhibit "G."**

46.     The prices agreed upon among PepsiCo, PBC, Family Dollar and Dollar General
for both PepsiCo and DPSG products are below Mahaska's costs for many products.

47.     By pricing below cost, and disparaging Mahaska, PepsiCo and PBC seek to drive
Mahaska out of the market (notwithstanding its exclusive rights) so that they can subsequently
raise prices in Mahaska's territories.

<u>**THE RELEVANT MARKETS AND MARKET POWER**</u>

48.     With respect to Mahaska's claim of *per se* unlawful price-fixing and tying in
violation of the Section 1 of the Sherman Antitrust Act, 15 U.S.C § 1, no allegations with respect
the relevant product or geographic markets are required.

49.     With respect to Mahaska's claims that Defendants have violated the Robinson Patman Act and Section 1 of the Sherman Antitrust Act, 15 U.S.C § 1 under the Rule of Reason, the relevant product Market is all CSD, and the relevant geographic market are the areas of Iowa, Kansas, and Nebraska that are included in the Mahaska Territories.[1]

50.     PepsiCo acting in concert with DPSG and PBC has market power in the relevant market as PepsiCo and DPSG branded products together account for more than 50% of sales of CSD and in some markets, including those served by Mahaska, they together account for more than 80%.

## CAUSES OF ACTION

## COUNT I

### PER SE UNLAWFUL PRICE FIXING AND PREDATORY PRICING IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT (15 U.S.C. § 1)

51.     Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

52.     PepsiCo and DPSG are direct competitors in the CSD market in the Mahaska Territories and throughout the United States.

53.     By and through PBC, PepsiCo and DPSG have unlawfully colluded to set prices for CSD products in the Mahaska Territories.

54.     PepsiCo and DPSG have fixed wholesale prices for sales to stores in the "Dollar Channel" below Mahaska's costs (which are controlled by PepsiCo).  The Dollar Channel, which

---

[1] The Soft Drink Interbrand Competition Act of 1980, 15 U.S.C § 3501 expressly acknowledges the proprietary and role of exclusive territorial licenses for the manufacture, distribution and sale of "a trademarked soft drink product" which grant "the licensee the sole and exclusive right  to manufacture, distribute and sell such product in a defined geographic area… Provided, that such product is in substantial and effective competition with other products of the same general class in the relevant market or markets.

includes discount stores like Dollar General and Family Dollar, is a distinct submarket for sales of CSD.

55.    On information and belief, PepsiCo, DPSG and PBC have conspired to drive Mahaska out of the market for CSD in the Mahaska Territories and/or the Dollar Channel in Mahaska Territories.

56.    On information belief, PepsiCo, DPSG and PBC will seek to recoup losses from predatory pricing and sales below cost by raising prices to consumers after forcing Mahaska out of the market.

57.    Mahaska has suffered, and will suffer, substantial harm to it business and property as the result of Defendants' per se unlawful price fixing.

58.    **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count I of the Complaint for statutory damages including but not limited to treble damages, costs of this action (including reasonable attorney's fees), equitable relief, and for such further relief the Court finds proper and necessary.

## COUNT II:

## CONSPIRACY AND ATTEMPT TO MONOPOLIZE PRICING IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2)

59.    Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

60.    PepsiCo and DPSG together account for more than 50% of sales of CSD in the relevant market.

61.     By and through PBC, PepsiCo and DPSG have conspired to and attempted to monopolize sales of CSD in the relevant market.

62.     By and through PBC, PepsiCo and DPSG have committed numerous acts in furtherance of their conspiracy to monopolize, including fixing prices below cost in an effort to drive competitors, including Mahaska, out of the market.

63.     The conspiracy among PBC, PepsiCo and DPSG has a dangerous probability of success as PepsiCo and PBC control the costs of competitors, such as Mahaska, by virtue of their control over the price of their respective soft drink concentrates.

64.     As a result of Defendants' conspiracy and attempt to monopolize the relevant market for CSD, Mahaska has suffered and will continue to suffer substantial competitive injury and irreparable harm.

65.     **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count II of the Complaint for statutory damages including but not limited to treble damages, costs of this action (including reasonable attorney's fees), equitable relief, and for such further relief the Court finds proper and necessary.

## COUNT III:

## UNLAWFUL PRICE DISCRIMINATION AND REBATES IN VIOLATION OF THE ROBINSON PATMAN ACT (15 U.S.C. § 13)

66.     Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

67.     PepsiCo and PBC offer commodities of like grade and quality, namely CSD products, in commerce to purchasers in the relevant market.

68.     In the course of such commerce, PepsiCo and PBC have discriminated in price between different purchasers of such CSD commodities (who are also in commerce).

69.     The CSD commodities are sold for use, consumption, or resale within the United States.

70.     The effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with PepsiCo and PBC.

71.     The effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with Family Dollar and Dollar General.

72.     PepsiCo and PBC have paid or contracted for the payment of funds for the benefit of Dollar General in the course of commerce as compensation or in consideration for services or facilities in connection with the processing, handling, sale, or offering for sale CSD Commodities.

73.     The payments to Dollar General are not available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

74.     PepsiCo and PBC have paid or contracted for the payment of funds for the benefit of Family Dollar in the course of commerce as compensation or in consideration for services or facilities in connection with the processing, handling, sale, or offering for sale CSD Commodities.

75.     The payments by PepsiCo and/or PBC to Dollar General are not available on proportionally equal terms to all other customers competing in the distribution of such CSD products or commodities.

76.     The payments by PepsiCo and/or PBC to Family Dollar are not available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

77.     As a result of Defendants unlawful price discrimination, Mahaska has suffered and will continue to suffer substantial competitive injury and irreparable harm.

78.     As a result of Defendants unlawful and discriminatory rebates to Dollar General and Family Dollar. Mahaska has suffered and will continue to suffer substantial competitive injury and irreparable harm.

79.     **WHEREFORE,** Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count III of the Complaint for statutory damages including but not limited to treble damages, costs of this action (including reasonable attorney's fees), equitiable relief, and for such further relief the Court finds proper and necessary.

## COUNT IV:

### PER SE UNLAWFUL PRICE FIXING AND PREDATORY PRICING IN VIOLATION OF THE IOWA COMPETITION LAW (IA CODE § 553.4)

80.     Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

81.     PepsiCo and DPSG are direct competitors in the CSD market in the Mahaska Territories and throughout the United States.

82.     By and through PBC, PepsiCo and DPSG have unlawfully colluded to set prices for CSD products in the Mahaska Territories.

83.     PepsiCo and DPSG have fixed wholesale prices for sales to stores in the "Dollar Channel" below Mahaska's costs (which are controlled by PepsiCo).  The Dollar Channel, which includes discount stores like Dollar General and Family Dollar, is a distinct submarket for sales of CSD.

84.     On information and belief, PepsiCo, DPSG and PBC have conspired to drive Mahaska out of the market for CSD in the Mahaska Territories and/or the Dollar Channel in Mahaska Territories.

85.     On information and belief, PepsiCo, DPSG and PBC will seek to recoup losses from predatory pricings and sales below cost by raising prices to consumers after forcing Mahaska out of the market.

86.     Mahaska has suffered, and will suffer, substantial harm to it business and property as the result of Defendants' per se unlawful price fixing.

87.     **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count IV of the Complaint for Plaintiff's damages, costs of this actions, statutory remedies, and for such further relief the Court finds proper and necessary.

## COUNT V:

## CONSPIRACY AND ATTEMPT TO MONOPOLIZE PRICING IN VIOLATION OF IOWA COMPETITION LAW (IA CODE § 553.5)

88.     Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

89.     PepsiCo and DPSG together account for more than 50% of sales of CSD in the relevant market, and in some geographical areas more than 80%.

90.     By and through PBC, PepsiCo and DPSG have conspired to and attempted to monopolize sales of CSD in the relevant market.

91.     By and through PBC, PepsiCo and DPSG have committed numerous acts in furtherance of their conspiracy to monopolize, including fixing prices below cost in an effort to drive competitors, including Mahaska, out of the market.

92.     The conspiracy among PBC, PepsiCo and DPSG has a dangerous probability of success as PepsiCo and DPSG control the costs of competitors, such as Mahaska, by virtue of their control over the price of their respective soft drink concentrates.

93.     As a result of Defendants' conspiracy and attempt to monopolize the relevant market for CSD, Mahaska has suffered and will continue to suffer substantial competitive injury and irreparable harm.

94.     **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count V of the Complaint for Plaintiff's damages, costs of this actions, statutory remedies, and for such further relief the Court finds proper and necessary.

## COUNT VI:

## TORTIOUS INTERFERENCE WITH CONTRACTS AND PROSPECTIVE ECONOMIC ADVANTAGE BY DEFENDANT PBC

95.     Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

96.     Mahaska has valid contracts with PepsiCo that grant it exclusive rights to sell PepsiCo products in the Mahaska Territories.

97.    Mahaska has valid contracts with DPSG that grant it exclusive rights to sell DPSG products in the Mahaska Territories.

98.    Mahaska has contract and/or reasonable expectations of entering contracts with Dollar General and Family Dollar as both of these customers maintain outlets in the Mahaska Territories.

99.    Defendant PBC has full knowledge of Mahaska's contracts with Defendant PepsiCo.

100.    Defendant PBC has full knowledge of Mahaska's contracts with DPSG.

101.    Defendant PBC has full knowledge of Mahaska's contracts and reasonable expectations of future contract with Dollar General.

102.    Defendant PBC has full knowledge of Mahaska's contracts and reasonable expectations of future contract with Family Dollar.

103.    Defendant PBC intentionally induced PepsiCo, DPSG, Dollar General, and Family Dollar to breach their contracts with Mahaska and/or to refuse to enter future contracts with Mahaska.

104.    Defendant PBC had and has no lawful justification for its tortious interference with Mahaska's contracts and prospective economic advantage with PepsiCo, DPSG, Dollar General, and Family Dollar.

105.    Mahaska has suffered and will continue to suffer damages due to Defendant PBC's tortious interference with its contracts and/or prospective economic advantage.

106.    Mahaska has suffered and will continue to suffer irreparable harm due to Defendant PBC's tortious interference with its contracts and/or prospective economic advantage.

107.    **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count VI of the Complaint for Plaintiff's damages, exemplarly damages, costs of this actions,  and for such further relief the Court finds proper and necessary.

## COUNT VII:

### TORTIOUS INTERFERENCE WITH CONTRACTS AND PROSPECTIVE ECONOMIC ADVANTAGE BY DEFENDANT PEPSICO

108.    Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

109.    Mahaska has valid contracts with DPSG that grant it exclusive rights to sell DPSG product in the Mahaska Territories.

110.    Mahaska has contract and/or reasonable expectations of entering contracts with Dollar General and Family Dollar as both of these customers maintain outlets in the Mahaska Territories.

111.    Defendant PepsiCo has full knowledge of Mahaska's contracts with DPSG.

112.    Defendant PepsiCo has full knowledge of Mahaska's contracts and reasonable expectations of future contract with Dollar General.

113.    Defendant PepsiCo has full knowledge of Mahaska's contracts and reasonable expectations of future contract with Family Dollar.

114.    Defendant PepsiCo intentionally induced DPSG, Dollar General, and Family Dollar to breach their contracts with Mahaska and/or to refuse to enter future contracts with Mahaska.

115.    Defendant PepsiCo had and has no lawful justification for its tortious interference with Mahaska's contracts and prospective economic advantage with PepsiCo, DPSG, Dollar General, and Family Dollar.

116.    Mahaska has suffered and will continue to suffer damages due to Defendant PepsiCo's tortious interference with its contracts and/or prospective economic advantage.

117.    Mahaska has suffered and will continue to suffer irreparable harm due to Defendant PepsiCo's tortious interference with its contracts and/or prospective

118.    **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count VII of the Complaint for Plaintiff's actual damages, exemplary damages, and for such further relief the Court finds proper and necessary.

## COUNT VIII:

### CIVIL CONSPIRACY

119.    Mahaska   re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

120.    PepsiCo, PBC, DPSG, Dollar General and Family Dollar have combined for unlawful purposes.

121.    Specifically, PepsiCo, PBC, DPSG, Dollar General and Family Dollar have combined to tortuously interfere with Mahaska's contracts and business and to harm competition in violation of federal and state antitrust laws.

122.    Mahaska has been injured, and will continue to suffer injury, as a result of the unlawful conspiracy.

123.   **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count VIII of the Complaint for Plaintiff's damages, exemplary damages, costs of this actions, and for such further relief the Court finds proper and necessary.

## Count IX

### Business Defamation or Disparagement

124.   Mahaska re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

125.   Through the email message referenced above and, on information and belief, other occasions, Defendants published false, misleading and/or defamatory remarks about Mahaska, its business practices, its operations, its professionalism and its methods and manner of doing business to third persons.

126.   No privilege, absolute or conditional, attaches to these statements.

127.   Defendants' false statements have negatively affected Mahaska in its business reputation and economic interests. As a result of Defendants' defamatory remarks certain customers, including Family Dollar & Dollar General, have ceased to do business with Mahaska.

128.   Defendants' statements were designed to disrupt and harm Mahaska's business reputation and have caused such harm.

129.   Each of the above-referenced acts and omissions, singly or in combination with others, constituted business disparagement, which proximately caused the general and special damages suffered by Mahaska.

130.   **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a

Pepsi Beverages Company on Count IX of the Complaint for Plaintiff's damages, exemplary damages, costs of this actions, and for such further relief the Court finds proper and necessary.

**C<small>OUNT</small> X**

**B<small>REACH OF</small> F<small>IDUCIARY</small> D<small>UTY</small>**

131.    Mahaska   re-alleges and incorporates each of the foregoing paragraphs by reference as if fully set forth herein.

132.    In 1948, Mahaska entered into a new EBA with PepsiCo that reaffirmed Mahaska's exclusive right, in perpetuity, to use the Pepsi trademark and to sell PepsiCo soft drink products in multiple Iowa counties, including Marion; Mahaska; Keokuk; Washington; Jefferson; Wapello; Monroe; Lucas; Appanoose; and parts of Jasper and Poweshiek (the "Iowa Territories"). Under the EBA, and through their own actions and statements Defendants owed fiduciary duties to Plaintiff to protect the franchises of independent bottlers, the terms and conditions of the franchise and do everything they could to protect both the trademark and the name and their territory for the independent bottlers like Mahaska on an exclusive basis.  As a result of their unlawful acts and conduct, Defendants breached the following fiduciary duties:

a)    duty of loyalty and utmost good faith;
b)    duty of candor;
c)    duty to refrain from self-dealing;
d)    duty to act with integrity of the strictest kind;
e)    duty of fair, honest dealing;
f)    duty of full disclosure;
g)    duty of good faith, fair dealing, loyalty, and fidelity;
h)    duty to make Mahaska's assets productive; and,
i)    duty of full disclosure on all matters affecting Mahaska;

133.    Defendants' breach of their fiduciary duties resulted in injury to Mahaska and a benefits to Defendants.   Mahaska has been damaged by the unlawful acts and conduct of

Defendants.  The damages suffered by Mahaska were a foreseeable result of Defendants breach of their fiduciary duties.

134.    Plaintiff seeks all actual, consequential, and incidental damages that have resulted from Defendants breaches of their fiduciary duties.    Further, Mahaska seeks forfeiture and disgorgement of all benefits that have been received by Defendants as a result of these breaches of fiduciary duties owed to Mahaska.

135.    **WHEREFORE**, Plaintiff Mahaska Bottling Co, Inc., demands that judgment be entered in its favor against Defendants PepsiCo, Inc., and Bottling Group, LLC a/k/a and/or d/b/a Pepsi Beverages Company on Count X of the Complaint for Plaintiff's damages, exemplary damages, costs of this actions, and for such further relief the Court finds proper and necessary.

Respectfully submitted,

**s/ Johannes (John) H. Moorlach**

**WHITFIELD & EDDY, PLC**
699 Walnut Street, Suite 2000
Des Moines, Iowa 50309
515-246-5501
515-246-1474 *fax*
moorlach@whitfieldlaw.com

and

Jason H. Friedman
*pro hac vice motion* to be filed
Mazin Sbaiti
*pro hac vice motion* to be filed
**FRIEDMAN & FEIGER**
5301 Spring Road, Suite 200
Dallas, Texas  75254
972-450-7339
972-788-2667 *fax*
jhfriedman@fflawoffice.com
mazin@fflawoffice.com