**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                                              :

**MAHASKA BOTTLING COMPANY, INC.,**     :     **Case No. 16-114**

                                              :

     *Plaintiff,*                            :

                                              :     **ORAL ARGUMENT**

                                              :     **REQUESTED**

**v.**                                            :

                                            :

**PEPSICO, INC. AND BOTTLING GROUP, LLC,**     :

                                            :

     *Defendants.*                         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S ANTITRUST AND FIDUCIARY-DUTY CLAIMS**

**Table of Contents**

I.      Preliminary Statement.................................................................................................1

II.     Background................................................................................................................3

        A.    Mahaska Bottling Company................................................................................3

        B.    The Carbonated Soft-Drink Industry ................................................................3

        C.    Plaintiff's Exclusive Bottling Appointments With PepsiCo...............................4

        D.    PepsiCo's Relationship with National Chain Customers.........................................5

        E.    Plaintiff's Relationship with National-Chain Customers.........................................6

III.    Argument ...................................................................................................................7

        A.    Standard of Review .........................................................................................7

        B.    Plaintiff's Factual Allegations Against Defendants and Non-Party Dr
              Pepper Fail to Allege a "Contract, Combination, or Conspiracy" That
              Unlawfully Restrains Trade. ............................................................................8

              1.    PepsiCo and PBC Cannot Conspire as a Matter of Law..............................9

              2.    Plaintiff Fails to Allege an Agreement Between Defendants and
                    Non-Party Dr Pepper....................................................................................9

              3.    Plaintiff Fails to Allege An Unreasonable Restraint of Trade. .................12

              4.    Plaintiff Fails to State a Claim for Predatory Pricing. .............................15

              5.    Plaintiff Fails to Allege Antitrust Injury...................................................16

        C.    The Complaint Fails To State a Claim for Violation of Section 2 of the
              Sherman Act.................................................................................................18

              1.    Plaintiff Fails to Plead Conspiracy to Monopolize Pricing. ....................18

              2.    Plaintiff Fails to Plead Attempt to Monopolize Pricing. ..........................19

        D.    The Complaint Fails to Plead A Robinson-Patman Act Violation.......................20

        E.    The Complaint Fails to Plead a Violation of IA Code § 553.4 or § 553.5............22

        F.    The Complaint Fails To Plead a Breach of Fiduciary Duty.................................23

IV.     Conclusion ...............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Channel, LLC v. Time Warner Cable, Inc.*,
  No. 06-cv-2175 (DWF/SRN), 2007 WL 1892227 (D. Minn. June 28, 2007) ........................ 11

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) ................................................................................. 14

*Arnott v. Am. Oil Co.*,
  609 F.2d 873 (8th Cir. 1979) ................................................................................. 26

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ........................................................................................... 9

*Atlantic Richfield Co.* v. *USA Petroleum Co.*,
  495 U.S. 328 (1990) ........................................................................................ 2, 17

*Bain v. Champlin Petroleum Co.*,
  692 F.2d 43 (8th Cir. 1982) ................................................................................. 25

*Bathke v. Casey's Gen. Stores, Inc.*,
  64 F.3d 340 (8th Cir. 1995) ................................................................................. 15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... *passim*

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993) ....................................................................................... 15, 16

*Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*,
  429 U.S. 477 (1977) ........................................................................................... 17

*Carpenter Tech. v. Allegheny Techs.*,
  646 F. Supp. 2d 726 (E.D. Penn. 2009) ................................................................... 20

*City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*,
  838 F.2d 268 (8th Cir. 1988) ............................................................................... 10

*Concord Boat Corp. v. Brunswick Corp.*,
  207 F.3d 1039 (8th Cir. 2000) ............................................................................. 13

*Conoco, Inc. v. Inman Oil Co.*,
  774 F.2d 895 (8th Cir. 1985) .......................................................................................21, 22

*Copperweld Corp. v. Indep. Tube Corp.*,
  467 U.S. 752 (1984) .................................................................................................. 9

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
  363 F.3d 761 (8th Cir. 2004) ....................................................................................14

*Davies v. Genesis Med. Ctr.*,
  994 F. Supp. 1078 (S.D. Iowa 1998)............................................................... 9, 17, 23

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
  73 F.3d 756 (7th Cir. 1996) ......................................................................................14

*Emp'rs Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc.*,
  422 F.3d 776 (8th Cir. 2005) ....................................................................................25

*Fair Isaac Corp. v. Experian Info. Sols., Inc.*,
  650 F.3d 1139 (8th Cir. 2011) ..................................................................................17

*First Nat'l Bank v. Cities Serv. Co.*,
  391 U.S. 253 (1968) ..................................................................................................13

*Gregory Mktg. Corp. v. Wakefern Food Corp.*,
  787 F.2d 92 (3d Cir. 1986)........................................................................................18

*HDC Med., Inc. v. Minntech Corp.*,
  474 F.3d 543 (8th Cir. 2007) ....................................................................................20

*Ideal Plumbing Co. v. Benco, Inc.*,
  382 F. Supp. 1161 (W.D. Ark. 1974)........................................................................23

*Illig v. Union Elec. Co.*,
  652 F.3d 971 (8th Cir. 2011) ..................................................................................... 3

*Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*,
  797 F.3d 538 (8th Cir. 2015) ............................................................................ *passim*

*Leegin Creative Leather Prods. v. PSKS Inc.*,
  551 U.S. 877 (2007) ...........................................................................................13, 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ..................................................................................................13

*Max 100 L.C. v. Iowa Realty Co.*,
  621 N.W.2d 178 (Iowa 2001)....................................................................................23

*McDonough v. Anoka County*,
   799 F.3d 931 (8th Cir. 2015) ...................................................................8, 18

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
   5 F. Supp. 2d 694 (D. Minn. 1998) ..................................................................19

*Minn. Timber Producers Ass'ns. v. Am. Mut. Ins. Co.*,
   766 F.2d 1261 (8th Cir. 1985) ...........................................................................25

*Nitro Distrib., Inc. v. Alticor, Inc.*,
   565 F.3d 417 (8th Cir. 2009) .............................................................................14

*Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*,
   431 F.3d 1241 (10th Cir. 2005) ...................................................................4, 5, 6

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011) ..............................................................11

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) .............................................................................14

*Rose Confections, Inc. v. Ambrosia Chocolate Co., Div. of W.R. Grace & Co.*,
   816 F.2d 381 (8th Cir. 1987) .......................................................................21, 22

*Ross v. Am. Express Co.*,
   35 F. Supp. 3d 407 (S.D.N.Y. 2014) ................................................................13

*S. Dak. v. Kan. City S. Indus., Inc.*,
   880 F.2d 40 (8th Cir. 1989) ...............................................................................18

*St. Louis Convention & Visitors Comm'n v. Nat'l Football League*,
   154 F.3d 851 (8th Cir. 1998) ...............................................................................9

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*,
   373 F.3d 57 (1st Cir. 2004) ...............................................................................13

*Super Turf, Inc., v. Monsanto Co.*,
   660 F.2d 1275 (8th Cir. 1981) ...........................................................................19

*United Suppliers, Inc. v. Millard Feed Mill, Inc.*,
   No. 09-cv-107 (LRR), 2011 WL 219690 (N.D. Iowa Jan. 21, 2011) ...............24

*Van Stelton v. Van Stelton*,
   No. C11-4045 (MWB), 2014 WL 4898591 (N.D. Iowa July 17, 2013)..............24

*W.K.T. Distrib. Co. v. Sharp Elecs. Corp.*,
   746 F.2d 1333 (8th Cir. 1984) ...........................................................................25

*Warfield v. KR Entm't (In re Fed. Fountain),*
    165 F.3d 600 (8th Cir. 1999) ...................................................................................................18

**Statutes**

15 U.S.C. § 1 ..................................................................................................................... *passim*

15 U.S.C. § 2 ...............................................................................................................18, 19

IA Code § 553.3 .............................................................................................................22, 23

IA Code § 553.4 ...................................................................................................................22

IA Code § 553.5 .............................................................................................................22, 23

**Other Authorities**

Fed. R. Civ. P 12(b)(6) .........................................................................................................1

Defendants PepsiCo, Inc. ("PepsiCo") and Bottling Group, LLC (t/a "Pepsi Beverages Company" or "PBC") respectfully submit this Brief in support of their Motion to Dismiss Plaintiff's Antitrust and Fiduciary-Duty Claims under Federal Rule of Civil Procedure 12(b)(6).

## I.    PRELIMINARY STATEMENT

Plaintiff Mahaska Bottling Company Inc. ("Mahaska" or "Plaintiff")—an exclusive bottler and distributor of several PepsiCo products in certain geographic markets—attempts to transform what is, at most, an ordinary commercial dispute—and one without basis—into an antitrust conspiracy, a defamation scheme, and a violation of fiduciary duties allegedly owed by a manufacturer to a bottler.  In doing so, Plaintiff ignores the commercial realities of the world in which it does business, conflating and mismatching the markets and chains of distribution in which Defendants operate.  The Complaint is replete with cursory, unsupported allegations, and does not coherently allege how, exactly, Plaintiff was wronged, what contracts are at issue, or what injury was suffered.  Instead, it resorts to a mix of information and belief, baseless innuendo, and selective citation to a subset of the agreements between the parties.  The Complaint's confused allegations simply make no sense, and Plaintiff should not be permitted to benefit from the confusion that the Complaint creates.  Although all of Plaintiff's claims are poorly pleaded, the antitrust and breach-of-fiduciary-duties claims are wholly deficient and must be dismissed.

As a preliminary matter, all of the antitrust claims fail because the Complaint does not establish that Plaintiff has standing under the antitrust laws.  It points only—through entirely conclusory allegations—to alleged lost profits, purportedly flowing from the decision of Plaintiff's customers (who are not defendants in this case) to cancel their contracts or otherwise forgo business with Plaintiff.  And even then, the Complaint offers no details about when or how such losses were sustained.  It does not point to any anticompetitive injury—a prerequisite to a

private antitrust claim.  As the Supreme Court has made clear, the antitrust laws are designed to protect "*competition*, not *competitors*."[1]  Moreover, lower prices to consumers are among the central objects of the antitrust laws.  It follows that the basic complaint underlying these claims—that Plaintiff sustained losses because it was being asked to lower its prices to retail customers—is not the kind of complaint that the antitrust laws are designed to address.

Each of the antitrust claims fails for several additional reasons.  As the Eighth Circuit has recently observed, "the unusually high cost of discovery in antitrust cases, the limited success of judicial supervision in checking discovery abuse[,] and the threat [that] discovery expense will push cost-conscious defendants to settle even anemic cases," have prompted federal courts to adopt a reasonably aggressive approach "in weeding out meritless antitrust claims at the pleading stage."[2]  Such considerations are especially pressing here because the Complaint fails to plead even the basic elements of its claims for price-fixing (*see infra* Section III.B.), predatory pricing (*see infra* Section III.B.4), attempt and conspiracy to monopolize (*see infra* Section III.C), and price discrimination (*see infra* Section III.D).

The Complaint's claims for breach of fiduciary duty likewise fail because no cognizable fiduciary relationship exists between Plaintiff and either Defendant.  The relationship described in the Complaint is a commercial one; the parties dealt with one another on an arm's length basis, and the Complaint points to nothing in any of the agreements between them to suggest that any type of fiduciary relationship was ever intended.  No such relationship has ever been recognized as giving rise to fiduciary duties under Iowa law, and the Complaint provides no reason for such a relationship to be implied here.  (*See infra* Section III.F.)

---

[1] *Atlantic Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (internal quotation marks omitted).

[2] *Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) (alterations and omission in original) (citation and internal quotation marks omitted).

## II.   BACKGROUND

### A.   MAHASKA BOTTLING COMPANY

Mahaska is an Iowa-based corporation, engaged in bottling carbonated soft-drink products for distribution to retailers.  (Compl. ¶¶ 1, 14.)  Plaintiff is the exclusive bottler and distributor of certain PepsiCo carbonated soft-drink products in specified territories in Iowa, Nebraska, and Kansas (the "Mahaska Territories").  (Compl. ¶¶ 13, 14, 96, 97, 132.)  Plaintiff also "has exclusive rights to distribute Dr Pepper Snapple Group . . . products in the Mahaska Territories."  (Compl. ¶ 14.)[3]  According to Plaintiff's website, Plaintiff also has partnerships with, and distributes products of, Arizona, Nestlé, and Kellogg Company, among others.[4]

### B.   THE CARBONATED SOFT-DRINK INDUSTRY

PepsiCo is an American multinational food, snack and beverage corporation that manufactures soft-drink concentrate (Compl. ¶ 16), a flavor-ingredient syrup that is used to produce carbonated soft drinks.  (*See* Compl. Ex. E ¶ 2.)  As a concentrate producer, PepsiCo—like non-parties Coca-Cola and Dr Pepper—manufactures and supplies soft-drink concentrate to bottlers.  (*See* Compl. Ex. E ¶¶ 1-2, 6; Ex. F ¶ G.)  Those bottlers then use that concentrate to produce carbonated soft drinks, which they market, price and sell—as bottled, branded soft drinks—to retailers.  (*See* Compl. Ex. E ¶¶ 2, 6; Ex. F ¶ D.)  Concentrate producers like PepsiCo enter into individual agreements with bottlers for the bottling and distribution of its soft-drink products within designated geographic territories (Exclusive Bottling Appointments ("EBAs")).

---

[3] Plaintiff does not allege that it bottles Dr Pepper Snapple Group ("Dr Pepper") products, and the Complaint does not append any of its alleged agreements with Dr Pepper.

[4] *See Bevarages*, *Mahaska*, https://www.mahaska.com/products/beverages (last visited Jul. 29, 2016); *Snacks*, *Mahaska*, https://www.mahaska.com/products/snacks (last visited Jul. 29, 2016).  The Court may take judicial notice of publicly available materials, including website publications.  *See Illig v. Union Elec. Co.*, 652 F.3d 971 (8th Cir. 2011) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010))).

*See Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1248 (10th Cir. 2005), *cited in* Compl. ¶ 19.  Plaintiff and PBC are both carbonated soft-drink bottlers with the exclusive right to distribute both Pepsi- and Dr Pepper-branded carbonated soft drinks in their respective territories (meaning that PBC and Plaintiff do not compete in the alleged product and geographic markets).  (*See* Compl. ¶¶ 3, 14, 34, 49.)  Neither PBC nor Plaintiff is alleged to produce soft-drink concentrate.

Understanding the differing roles of concentrate producers and bottlers is important, because the Complaint often conflates the markets or distribution chains in which the parties are alleged to participate.  Although Plaintiff acknowledges that PepsiCo is in the concentrate business, the Complaint alleges that the relevant product market is carbonated soft drinks, and the relevant geographic market is the Mahaska Territories.  (*See* Compl. ¶ 52.)  And when making factual allegations about the relevant markets (something that is essential to an antitrust claim), Plaintiff bounces back and forth between discussing concentrate and carbonated soft drinks.  (*See* Compl. ¶¶ 35, 63.)  Against this background, Plaintiff's factual allegations are addressed in turn below.

### C.   PLAINTIFF'S EXCLUSIVE BOTTLING APPOINTMENTS WITH PEPSICO

Plaintiff allegedly entered into its first EBA with PepsiCo in 1928.[5]  Under the 1928 EBA and subsequent EBAs, PepsiCo sells carbonated soft-drink concentrate to Plaintiff, and Plaintiff bottles and sells PepsiCo carbonated soft-drink products, including fountain products, to retailers.  (Compl. ¶ 14.)  The EBAs provide that PepsiCo carbonated soft-drink products will be

---

[5] Exhibit A is alleged to be "[a] true and correct copy of the EBA" between PepsiCo and Plaintiff.  (Compl. ¶ 15.) However, Exhibit A actually includes several exclusive bottling appointment agreements between Plaintiff and PepsiCo, including the 1948 EBA for Pepsi, the 1968 EBA for Diet Pepsi, and the 1965 EBA for Mountain Dew. (*See* Compl. Ex. A.)  It is unclear if these are all of the "EBA and related agreements" (*see* Compl. ¶ 15) alleged by Plaintiff to govern the relationship between Plaintiff and PepsiCo.

sold "at [Mahaska's] price per case," although PepsiCo "may from time to time suggest to [Mahaska] the price per case to be charged by" it.  (Compl. Ex. A, 1948 Pepsi EBA ¶ 9; 1964 Diet Pepsi EBA ¶ 8; 1965 Mountain Dew EBA ¶ 8.)  Plaintiff is required to "push vigorously the sale of [the Pepsi-Cola beverage]" in its territory (Compl. Ex. A, 1948 Pepsi EBA ¶ 8, 1964 Diet Pepsi EBA ¶ 9, 1965 Mountain Dew EBA ¶ 9), to "secure full distribution" of the PepsiCo beverage in its territory (*id.*), and to "fully meet and increase the demand for the [PepsiCo beverage] throughout the Territory" (Compl. Ex. A, 1964 Diet Pepsi EBA ¶ 9, 1965 Mountain Dew EBA ¶ 9).  Plaintiff also is obligated to "fully cooperate in and vigorously push [PepsiCo's] cooperative advertising and sales promotion programs and campaigns for the Territory."  (*Id.*)

### D.   PEPSICO'S RELATIONSHIP WITH NATIONAL CHAIN CUSTOMERS

As alleged in the Complaint, "[d]uring the 1980s and 1990s, two significant changes occurred" in the beverage industry "which directly affected PepsiCo's ability to successfully compete nationwide," including "significant consolidation . . . on the retail side of the soft drink industry as a result of the growth of large, nationwide retail chains like Wal-Mart and Sam's Club," as well as the establishment of "a single anchor bottler" by "PepsiCo's chief rival, the Coca-Cola Company (Coke)," which allowed Coke to more effectively negotiate competitive prices with national chains.  *Pepsi-Cola Bottling Co. of Pittsburg*, 431 F.3d at 1250, *cited in* Compl. ¶ 19.  During this time, the national chains "began demanding that PepsiCo service their needs at a national rather than a local level," and this, in turn, impacted PepsiCo's "relationship with its bottlers."  *Id.*

Beginning in the 1980s, PepsiCo began entering into marketing agreements called Customer Development Agreements ("CDAs") with large chain customers.  (*See* Compl. ¶ 20.) The Complaint alleges that the CDAs are designed to achieve greater consistency in pricing for

customers with a national presence by establishing a rebate paid to these chains to account for differences in pricing by independent bottlers.  (*See* Compl. ¶¶ 20, 21.)

The Complaint also alleges that some local bottlers have assumed a portion of the cost of the rebate by entering into a Marketplace Investment Agreement ("MIA") with PepsiCo, pursuant to which "PepsiCo makes payments to the bottler in return for accepting a portion of rebate costs and costs related to national advertising campaigns."  (Compl. ¶ 22.)

Bottlers are not obliged to enter into such agreements, and Plaintiff has elected not to do so.  (Compl. ¶ 23.)

### E.    PLAINTIFF'S RELATIONSHIP WITH NATIONAL-CHAIN CUSTOMERS

Plaintiff alleges that PepsiCo has entered into CDAs with, among other retailers, Dollar General Corporation ("Dollar General") and Family Dollar Stores, Inc. ("Family Dollar").  (*See* Compl. ¶ 29.)   Family Dollar and Dollar General hold significant bargaining power in negotiations with suppliers.  Dollar General is the largest discount retailer in the United States, with more than 11,500 stores located in over 43 states, including more than 80 stores in Iowa. (Compl. ¶ 4.)   Family Dollar operates more than 7,800 discount stores throughout the United States, including more than 30 stores in Iowa.   (Compl. ¶ 5.)   Family Dollar admits that it engages in "aggressive pricing," and as a result, certain local Pepsi bottlers have been "unwilling to do business with Family Dollar."  (Compl. ¶ 32.)

Plaintiff alleges that it is, or has been, a party to a number of distribution agreements with Family Dollar and Dollar General.  (*See* Compl. ¶¶ 98, 101, 102.)  Plaintiff acknowledges that PepsiCo "cannot force Mahaska and/or other independent bottlers to sell PepsiCo products at a particular price."  (Compl. ¶ 21.)  Rather, Plaintiff negotiates prices directly with Family Dollar and Dollar General.

In late February 2016, as a result of an unwillingness of some local bottlers to agree to Family Dollar's "aggressive pricing," Family Dollar notified 67 of its stores that they would no longer have Pepsi service, and that they should replace Pepsi with competitor products including Coke, Dr Pepper/Snapple, Shasta and Faygo.  (Compl. ¶ 32; s*ee also* Compl. Ex D.)[6]  Although not expressly alleged, it appears that Plaintiff was among those bottlers unwilling to agree to the "aggressive pricing" demanded by Family Dollar or (presumably) Dollar General.  Plaintiff concedes that Pepsi "cannot force" it to set any particular price or unilaterally set a price on Plaintiff's behalf, and yet Plaintiff apparently blames PepsiCo for Plaintiff's inability to agree to prices with these chains.  It appears (although it is not expressly alleged) that Plaintiff believed it should be able to negotiate whatever prices it wanted with Family Dollar and Dollar General— subsidized with an unconditional guarantee by PepsiCo that PepsiCo would pay the difference between Plaintiff's offered prices, and the prices offered to Family Dollar and Dollar General stores outside of the Mahaska Territories by other independent bottlers, or by PBC.

In mid-March 2016, Plaintiff alleges via reference to a document attached to the Complaint (*see* Compl. Ex. G), that a PepsiCo national accounts sales manager emailed eight individuals, including Jim Frush of Mahaska, advising them to cease deliveries of products to Family Dollar stores by March 31, 2016, if, by that date, they are "still not aligned to the FD program."  One month later, on April 15, 2016, Plaintiff filed this Complaint.

## III.    ARGUMENT

### A.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

---

[6] Despite the Complaint's allegation that this communication "makes clear that PepsiCo disparaged Mahaska," there is no such reference or inference that can be drawn from a review of this communication, nor is there even any evidence or indication that it was ever sent to PepsiCo.  (*See* Compl. Ex. D.)

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual allegations must be "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "nudge [the] claims across the line from conceivable to plausible," *id.* at 570.  "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Courts need not accept "naked assertion[s] devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied* 136 S. Ct. 2388 (2016).

"When a district court by misapplying the *Twombly* standard allows a complex case of extremely dubious merit to proceed, it bids fair to immerse the parties in the discovery swamp . . . and by doing so create irrevocable as well as unjustifiable harm to the defendant." *Insulate*, 797 F.3d at 543 (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625–26 (7th Cir. 2010)).  Thus, "[g]iven the unusually high cost of discovery in antitrust cases, the limited 'success of judicial supervision in checking discovery abuse[,] and the threat [that] discovery expense will push cost-conscious defendants to settle even anemic cases . . . , the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage.'"  *Insulate*, 797 F.3d at 543 (alterations and omission in original) (citation and internal quotation marks omitted).

**B.    PLAINTIFF'S FACTUAL ALLEGATIONS AGAINST DEFENDANTS AND NON-PARTY DR PEPPER FAIL TO ALLEGE A "CONTRACT, COMBINATION, OR CONSPIRACY" THAT UNLAWFULLY RESTRAINS TRADE.**

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states."  15

U.S.C. § 1.  To state a claim for a Section 1 violation, a plaintiff must allege (1) an agreement among the defendants in restraint of trade; (2) that it was injured as a direct and proximate result of the agreement; and (3) that its damages are capable of ascertainment and are not speculative. *See St. Louis Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851, 861 (8th Cir. 1998) (listing elements of a cause of action under Section 1).  To recover damages for a Section 1 violation, a plaintiff must establish not only that it suffered an injury sufficient to confer Article III standing, but also that it "is a proper party to bring a private antitrust action." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 n.31 (1983).  Antitrust standing requires a party to plead (and ultimately to prove) that it has suffered antitrust injury. *Davies v. Genesis Med. Ctr.*, 994 F. Supp. 1078, 1092–96 (S.D. Iowa 1998).

### 1.      PepsiCo and PBC Cannot Conspire as a Matter of Law.

As an initial matter, any claim that PepsiCo and PBC conspired with one another (*see, e.g.*, Compl. ¶¶ 53–55, 61–63) fails because PepsiCo cannot conspire with its wholly-owned subsidiary. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984) ("Copperweld and its wholly owned subsidiary Regal are incapable of conspiring with each other for the purposes of § 1 of the Sherman Act."); *accord City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 274–75 (8th Cir. 1988).

### 2.      Plaintiff Fails to Allege an Agreement Between Defendants and Non-Party Dr Pepper.

To survive a motion to dismiss, a plaintiff must allege "enough factual matter (taken as true) to suggest than an agreement was made." *Insulate*, 797 F.3d at 544 (quoting *Twombly*, 550 U.S. at 556).  Conclusory allegations of an agreement, or facts that merely support a "suspicion" or "possibility" of agreement, will not do. *Twombly*, 550 U.S. at 555, 557.  Rather, a complaint

must offer facts supporting the existence of either (a) an express agreement among the defendants, or (b) an agreement implied from the surrounding circumstances.  *See Insulate*, 797 F.3d at 544 (a complaint "can satisfy the concerted action requirement by showing two or more persons entered into either an express or implied agreement"); *see also Twombly*, 550 U.S. at 557 (to plead a Section 1 claim based on parallel conduct, the conduct "must be placed in a context that raises a suggestion of a preceding agreement").

> ### a)       *Plaintiff Offers No Evidence of an Express Agreement Between Defendants and Dr Pepper.*

The Complaint alleges the existence of a "conspiracy" among Defendants and Dr Pepper, but that conspiracy is pleaded on information and belief.  (*See, e.g.*, Compl. ¶¶ 55, 84.)  Such "stray statements speak[ing] directly of agreement" are "merely legal conclusions resting on [other] allegations[,]" and must be disregarded.  *Twombly*, 550 U.S. at 564 & n.9 (disregarding conclusory allegation that phone companies "engaged in a 'contract, combination or conspiracy' and agreed not to compete with one another").

Absent from the Complaint are any "circumstances, occurrences, and events" that establish the existence of a "contract, combination, or conspiracy."  *Id.* at 555 n.3.  Plaintiff fails to establish when Defendants and non-party Dr Pepper agreed to fix the prices of carbonated soft drinks, which representatives of Defendants and Dr Pepper communicated with one another to fix prices, and precisely how Defendants and Dr Pepper accomplished their price-fixing conspiracy.  *Insulate*, 797 F.3d at 546 ("Without some supporting factual allegations," conclusory allegations of conspiracy are insufficient).  Indeed, unlike the complaint in *Twombly*, which at least alleged direct interactions between competitors at trade-association events but still failed to state a claim, *see* 550 U.S. at 567 n.12, the Complaint here does not refer to a single communication between either Defendant and Dr Pepper, much less any collusive ones

discussing pricing. *Am. Channel, LLC v. Time Warner Cable, Inc.*, No. 06-cv-2175 (DWF/SRN), 2007 WL 1892227, at *4 (D. Minn. June 28, 2007) (dismissing antitrust claim where complaint failed to refer to any "specific communications through which Defendants allegedly conspired"); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 597 (S.D.N.Y. 2011) (dismissing Section 1 claim where complaint failed to identify a single "actual, verbalized communication" among defendants).

Instead of citing any communication between Defendants and Dr Pepper, the Complaint falsely asserts that an email chain that originated with the ultimate customer (Family Dollar), and was forwarded to independent bottlers by PBC, evidences price fixing between Defendants and Dr Pepper. (Compl. ¶ 45; Compl. Ex. G.) It does not. Rather, the email (1) conveys Family Dollar's request for the identity of bottlers that deliver both Pepsi- and Dr Pepper-branded soft drinks to its stores and (2) instructs bottlers that are not participating in the Family Dollar national pricing program to cease delivery to Family Dollar stores as of March 31, 2016. (Compl. Ex. G.)

> **b)** ***Plaintiff Does Not Plead Sufficient Circumstantial Facts from Which To Infer the Existence of an Agreement Between Defendants and Dr Pepper.***

Just as the Complaint does not identify any facts that support the existence of an express agreement, it offers no circumstantial allegations sufficient to show that a conspiracy existed between Defendants and Dr Pepper. Plaintiff appears to be intimating—without alleging directly—that Dollar General and/or Family Dollar negotiated with Dr Pepper concerning national pricing of Dr Pepper carbonated soft drinks. (*See, e.g.*, Compl. ¶ 54.) To the extent that this could be construed as an allegation that Defendants and Dr Pepper engaged in parallel pricing conduct, that allegation does not support an inference of collusion. "Pleading only 'parallel conduct' or other conduct 'merely *consistent with* [an] agreement' is not sufficient to

show a conspiracy." *Insulate*, 797 F.3d at 544 (quoting *Twombly*, 550 U.S. at 557) (alterations in original).  To support an inference of agreement between competitors, a Complaint must plead parallel conduct unlikely to occur absent an agreement.  *See Twombly*, 550 U.S. at 556 n.4.  But PepsiCo and other concentrate companies had a legitimate *independent* interest in acquiescing to retailers' demands to negotiate national pricing: minimizing the prospect of losing shelf space and sales to competing products such as Coca-Cola.  Acquiescing to the pricing demands of customers is exactly the conduct expected as a result of competition—not coordination.

Moreover, unlike the prototypical price-fixing theory, where competitors are alleged to have fixed artificially high prices to further their *shared interest* in reaping greater profits, the purpose that PepsiCo allegedly sought to accomplish here—preventing the loss of Pepsi-branded carbonated soft-drink sales at key national retailers by negotiating lower prices in response to competitive pressure—would in no way depend upon any other company doing the same.  If anything, PepsiCo (and its bottlers) would be better off if its own brands were the only ones that Dollar General and Family Dollar continued to stock.  Indeed, "there was just no need for joint encouragement" and "no reason to infer that the companies had agreed among themselves to do what was only natural anyway."  *Id.* at 566; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986) ("[I]f petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy."); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 278–79 (1968); *Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) (on a motion to dismiss, "[c]ourts may not infer a conspiracy where the defendants have no rational economic motive to conspire" (internal quotation marks omitted)).

### 3.     Plaintiff Fails to Allege An Unreasonable Restraint of Trade.

Even if Plaintiff adequately alleged an agreement among Defendants and Dr Pepper, its

Section 1 claim would fail because it has not alleged an unreasonable restraint of trade. It is well established that Section 1 prohibits only *unreasonable* restraints of trade. *See, e.g., Leegin Creative Leather Prods. v. PSKS Inc.*, 551 U.S. 877, 885 (2007) ("[T]he Court has repeated time and again that §1 outlaws only unreasonable restraints." (internal quotations omitted)). A plaintiff can show that a restraint of trade is unreasonable in two ways: by showing that (i) it is a type of restraint that is presumptively unreasonable—*i.e.*, it is *per se* unlawful—or (ii) it should be condemned under the rule of reason. *See Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir. 2000) ("The unreasonableness of a restraint is determined using either a per se standard or a standard that examines all of the circumstances, the so-called rule of reason test."); *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 61 (1st Cir. 2004). While certain types of agreements are considered so harmful to competition that they almost always are illegal, all other agreements are evaluated under the "rule of reason." *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 772–73 (8th Cir. 2004) ("The rule of reason is the 'prevailing standard' for determining a restraint's effect upon competition . . . . When a restraint's negative impact on competition is immediately discernable and the restraint has no redeeming virtue, the *per se* mode of analysis applies." (quoting *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49 (1977)).

The Complaint contends that Defendants' conduct is "*per se* unlawful price fixing." (Compl. ¶ 57.) But a price-fixing agreement is *per se* unlawful only in the context of a horizontal agreement between competitors in the affected market. *See Leegin*, 551 U.S. at 907 ("Vertical price restraints are to be judged according to the rule of reason."); *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 424 (8th Cir. 2009) ("For appellants to succeed in their claims of *per se* antitrust violations, they must show that Amway was in direct competition with Pro Net

and InterNET").  Neither Defendants nor Dr Pepper compete in the Mahaska Territories for the sale of carbonated soft drinks—the only relevant product market the Complaint alleges.  As a result, the *per se* standard is inappropriate.

In the absence of a *per se* unlawful horizontal agreement, Plaintiff must satisfy the rule-of-reason standard by plausibly alleging that Defendants held market power.  *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418–19 (5th Cir. 2010); *accord*, *e.g.*, *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 761 (7th Cir. 1996) ("[S]ubstantial market power is an indispensable ingredient of every claim under the Rule of Reason.").  To plead market power, the Complaint must first "plausibly define the relevant product and geographic markets."  *Leegin*, 615 F.3d at 417; *see also Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 625 (5th Cir. 2002).  Plaintiff has alleged that the relevant product market is carbonated soft drinks and the relevant geographic market is the Mahaska Territories.  (Compl. ¶ 49.)  Defendants and Dr Pepper do not produce or sell carbonated soft drinks in the Mahaska Territories.  Although Plaintiff makes the misleading claim that "PepsiCo and [Dr Pepper] together account for more than 50% of sales of CSD in the relevant market" (Compl. ¶ 60), the assertion is demonstrated to be false by Plaintiff's admission that Plaintiff is the exclusive distributor of Pepsi- and Dr Pepper-branded carbonated soft drinks in the Mahaska Territories (Compl. ¶ 14).  If any company possesses market power in the relevant market for carbonated soft drinks in the Mahaska Territories, it is Mahaska.  Consequently, Plaintiff cannot satisfy even the threshold element of a Section 1 rule-of-reason claim against Defendants.

### 4.  Plaintiff Fails to State a Claim for Predatory Pricing.

To state a claim for predatory pricing under the Sherman Act,[7] a plaintiff must show (1) that a "rival was pricing below cost" and (2) the rival's "eventual ability to recoup its losses from pricing below cost."  *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 344 (8th Cir. 1995) (summarizing *Brooke Grp.*, 509 U.S. 209) (describing elements of a predatory pricing claim). The Complaint does not satisfy either requirement.

Preliminarily, Defendants are not "rivals" of Plaintiff because neither of them bottles or distributes Pepsi-branded carbonated soft drinks in the Mahaska Territories.  Rather, Plaintiff is the sole distributor of Pepsi-branded carbonated soft drinks in the Mahaska Territories, and PepsiCo supplies concentrate to Plaintiff.  (Compl. ¶¶ 14–15.)  Moreover, Plaintiff does not allege that Defendants were pricing any product sold by Defendants below *Defendants*' costs. Instead, Plaintiff makes the irrelevant claim that PepsiCo set prices below *Plaintiff*'s costs. (Compl. ¶ 54 (noting that PepsiCo controlled Plaintiff's costs).)  That is not a predatory pricing claim.  The Supreme Court has explicitly stated that the relevant measure for a predatory pricing claim is the purported "rival's" costs, about which the Complaint is silent.  *See, e.g.*, *Brooke Grp.*, 509 U.S. at 222–23 ("[A] plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of *its rival's* costs . . . .  [W]e have rejected elsewhere the notion that above-cost prices that are below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws." (emphasis added)).

As to recoupment, the Complaint makes the cursory allegation that Defendants and Dr Pepper "will seek to recoup losses from predatory pricing and sales below cost by raising

---

[7] Although the Complaint alleges a predatory pricing claim under Section 1, predatory pricing is traditionally asserted under Section 2 (as a monopolization claim).  *See, e.g.*, *Brooke Grp.*, 509 U.S. at 222-24.

prices to consumers after forcing Mahaska out of the market."  (Compl. ¶ 56.)  But because the Complaint does not allege that Defendants are pricing below *their* cost, there is nothing to recoup; the allegation makes no sense.  And even so, the Complaint does not allege how PepsiCo or PBC could go about recouping losses in the absence of market power in the Mahaska Territories—even if Mahaska were not the exclusive bottler and Defendants could enter as carbonated soft-drink distributors.  (*See* Compl. ¶ 14.)   In particular, it is implausible that PepsiCo or PBC could raise carbonated soft-drinks prices to supracompetitive levels given competition from, for example, Coca-Cola.  The Complaint implies that Plaintiff lost Pepsi-branded carbonated soft-drink sales when it tried to extract an uncompetitively high price from Family Dollar (*see* Compl. ¶ 32; Compl. Ex. D), suggesting that even if PepsiCo and Dr Pepper conspired, national retailers would have been unwilling to pay prices even as high as Plaintiff aspired to charge, let alone higher levels required to recoup sales lost in the interim.

## 5.        Plaintiff Fails to Allege Antitrust Injury.

Dismissal of Plaintiff's Section 1 claims is appropriate for the independent reason that Plaintiff fails to allege antitrust injury.[8]  Even if a plaintiff plausibly alleges an illegal agreement (which the Complaint here does not), it nonetheless may not seek recovery under Section 4 of the Clayton Act if the agreement did not cause cognizable antitrust injury.  *See, e.g.*, *Atl. Richfield*, 495 U.S. at 341–42 ("The per se rule . . . does not indicate whether a private plaintiff has suffered antitrust injury and thus whether he may recover damages under § 4 of the Clayton Act."); *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1144 (8th Cir. 2011) ("a private plaintiff must demonstrate that he has suffered an 'antitrust injury' as a result of the alleged conduct of the defendants" to recover damages under § 4 of the Clayton Act (internal

---

[8] Failure to allege antitrust injury is fatal to Plaintiff's Section 2 claims as well.  *Davies*, 994 F.Supp. at 1096 (dismissing both Section 1 and Section 2 claims for failure to plead antitrust injury).

16

quotation marks omitted)).   A plaintiff must show that it has sustained "injury of the type the antitrust laws were intended to prevent." *Davies*, 994 F. Supp. at 1092–96 (quoting *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 103 (1984) (internal quotation marks omitted)); *see Brunswick Corp. v. Pueblo Bowl-o-Mat, Inc.*, 429 U.S. 477, 489 (1977).

The Complaint does not adequately allege any injury—let alone antitrust injury. Although it repeats the conclusory assertion that Plaintiff was "injured" or suffered "damage," no facts are offered to support these assertions, or to suggest that Defendant caused such injury or damage.   The Complaint appends what appears to be an internal Family-Dollar communication in which a Family Dollar store is advised that it is "1 of 67 that will no longer have Pepsi service" because "[y]our local Pepsi bottler is unwilling to do business with Family Dollar due to our aggressive pricing."   (Compl. Ex. D.)   But the communication does not suggest that the decision to cease stocking Pepsi-branded products was the result of Defendants' action, or that the decision related exclusively to stores within the Mahaska Territories.   Rather, it suggests that Family Dollar refused to accept high prices from certain bottlers.   *McDonough*, 799 F.3d at 946 ("Courts should consider whether there are lawful, 'obvious alternative explanation[s]' for the alleged conduct because, '[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quoting *Iqbal*, 556 U.S. at 678, 682)).

The Complaint's repeated claims of "substantial competitive injury" (*see, e.g.*, Compl. ¶¶ 64, 77, 78) are insufficient to ground standing under the Clayton Act.   The Complaint does not allege any reduction in competition as a result of Defendants' purported conduct.   It intimates only loss of sales and profits flowing from the refusal of "Dollar Channel" customers to renew their contracts with Plaintiff.   Plaintiff would have suffered the same injury if customers

unilaterally refused to accept Plaintiff's pricing for reasons unrelated to the alleged conspiracy. *See South Dakota v. Kan. City S. Indus., Inc.*, 880 F.2d 40, 48–49 (8th Cir. 1989) (dismissing Section 1 claim because plaintiff's alleged injuries "flowed from the cancellation of the contract rather than from injury to competition"), *abrogated on other grounds*, *Warfield v. KR Entm't (In re Fed. Fountain)*, 165 F.3d 600 (8th Cir. 1999); *Gregory Mktg. Corp. v. Wakefern Food Corp.*, 787 F.2d 92, 96 (3d Cir. 1986) (no antitrust standing because lost future income would flow not from decreased competition in the applicable market but from termination of contract).

## C.  THE COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF SECTION 2 OF THE SHERMAN ACT.

### 1.  Plaintiff Fails to Plead Conspiracy to Monopolize Pricing.

Plaintiff alleges that, "[b]y and through PBC, PepsiCo and DPSG conspired to . . . monopolize sales of CSD in the relevant market." (Compl. ¶ 61.) But Plaintiff does not plead the elements of a conspiracy-to-monopolize claim under Section 2 of the Sherman Act—"(1) the existence of a combination or conspiracy; (2) an overt act in furtherance of the conspiracy; and (3) specific intent to monopolize." *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 5 F. Supp. 2d 694, 711 (D. Minn. 1998) (citing *Baxley-DeLamar Monuments, Inc. v. Am. Cemetery Ass'n*, 843 F.2d 1154, 1157 (8th Cir. 1988)) (listing the elements of a conspiracy-to-monopolize).[9]

First, as explained above, the Complaint does not adequately allege a conspiracy among Defendants and Dr Pepper by either direct or circumstantial evidence. *See supra* Section III.B.2. Second, aside from conclusory assertions that Defendants and Dr Pepper sought "to drive Mahaska out of the market for CSD" (Compl. ¶ 55) and "grab Mahaska's exclusive territory" (Compl. ¶ 31), the Complaint offers nothing to indicate that Defendants shared a specific intent to monopolize with Dr Pepper. *See Super Turf, Inc., v. Monsanto Co.*, 660 F.2d 1275, 1283 (8th

---

[9] Claims for conspiracy to monopolize are exceedingly rare, and are not often permitted to proceed.

Cir. 1981) (recognizing that to sustain a conspiracy-to-monopolize claim, a plaintiff must show that "the defendant's alleged co-conspirators . . . shared its specific intent to create a monopoly," and affirming denial of a directed verdict for attempt- and conspiracy-to-monopolize claims). And it is implausible that they would.  Although Pepsi- and Dr Pepper-branded products might collectively account for half of carbonated soft-drink sales in the Mahaska Territories (Compl. ¶ 60), neither Defendants nor Dr Pepper is directly responsible for the sale of those products.  As explained above, PepsiCo and Dr Pepper are upstream concentrate companies and do not sell the relevant downstream carbonated soft-drink products in the Mahaska Territories, and PBC distributes Pepsi- and Dr Pepper-branded carbonated soft drinks only outside of the Mahaska Territories.  If there is a carbonated soft-drink monopolist in the Mahaska Territories, it is Plaintiff—by its own admission the exclusive bottler of both Pepsi- and Dr Pepper-branded carbonated soft drinks in the Mahaska Territories.  (*See* Compl. ¶ 13, 14.)

### 2.   Plaintiff Fails to Plead Attempt to Monopolize Pricing.

To prevail on an attempt-to-monopolize claim, a plaintiff must show "(1) a specific intent by the defendant to control prices or destroy competition; (2) predatory or anticompetitive conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a dangerous probability of success."  *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 549 (8th Cir. 2007) (quoting *Gen. Indus. Corp. v. Hartz Mountain Corp.*, 810 F.2d 795, 806–07 (8th Cir. 1987) (internal quotation marks omitted)) (listing the elements of a claim for attempt to monopolize).

For the reasons noted *supra* at Section III.B.2, the Complaint does not plead a conspiracy among Defendants and Dr Pepper, and its allegation of predation is entirely conclusory.  Nor does the Complaint allege that the purported conspiracy has a "dangerous probability of success."  A dangerous probability of success is "examined by reference to the offender's share

of the relevant market," *HDC*, 474 F.3d at 550 (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1181 (8th Cir. 1982)), but the Complaint does not purport to define a relevant market for its claims under Section 2.[10]  Although it makes the cursory claim that "PepsiCo and DPSG together account for more than 50% of sales of CSD in the relevant market" (Compl. ¶ 60), this claim is undermined by its concession that Plaintiff is the exclusive distributor of Pepsi- and Dr Pepper-branded carbonated soft drinks in the Mahaska Territories.  (Compl. ¶ 14.)  Also, as explained *supra* at Section III.B.3, the Complaint offers nothing that explains how Defendants could even theoretically achieve monopolization in a market of which they concededly have no share—much less a dangerous probability that they could achieve a monopoly.

### D.   THE COMPLAINT FAILS TO PLEAD A ROBINSON-PATMAN ACT VIOLATION.

To state a claim for price discrimination under the Robinson-Patman Act, a plaintiff must plead facts sufficient to show (i) a difference in price between items of like grade and quality and (ii) resulting injury to competition.  *Conoco, Inc. v. Inman Oil Co*., 774 F.2d 895, 901–02 (8th Cir. 1985) (citing *FTC v. Anheuser-Busch, Inc*., 363 U.S. 536, 549–50 (1960)).  A plaintiff may demonstrate injury to competition in one of two ways:  (i) by introducing direct evidence that "disfavored competitors lost sales or profits as a result of the discrimination," *Rose Confections, Inc. v. Ambrosia Chocolate Co., Div. of W.R. Grace & Co.*, 816 F.2d 381, 385 (8th Cir. 1987) (citing *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 437–38 (1983)), or (ii) by showing that the "favored competitor received a substantial price reduction over a substantial period of time," *id.* (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 50–51 (1948)).

---

[10] Plaintiff's conspiracy-to-monopolize claim also fails because Plaintiff has not pleaded a relevant product market. *Carpenter Tech. v. Allegheny Techs*., 646 F. Supp. 2d 726, 734 (E.D. Pa. 2009) ("The failure to plead a relevant product market is fatal to [a conspiracy to monopolize] claim").  The Complaint purports to define a relevant market only for purposes of its Section 1 and Robinson-Patman Act claims; for those claims, Plaintiff asserts that "the relevant market is all CSD" and that the relevant geographic market is the Mahaska Territories.  (Compl. ¶ 49.) Although the Complaint does not suggest that these allegations were intended to support Plaintiff's Section 2 claims, they are in any event insufficient to support those claims, for the reasons noted in Section III.B.3, *supra*.

This claim faces a number of fatal obstacles.  First, PepsiCo could not have engaged in price discrimination if Plaintiff retained "full discretion to set prices of PepsiCo products to customers in the Mahaska Territories" (Compl. ¶ 15) and chose not to participate in PepsiCo rebate arrangements.  Second, the Complaint does not plead any injury to competition resulting from the purported price discrimination.  It alleges that Defendants violated the Robinson-Patman Act by "selling soft drink products below cost to the detriment of competitors of Family Dollar and Dollar General" (Compl. ¶ 44), and that Defendants made discriminatory rebate payments to Dollar General and Family Dollar (*see* Compl. ¶ 78).  But it offers no direct allegations that disfavored retailers were injured by the alleged discriminatory pricing—only the stray and unsupported assertion that competitors of Dollar General and Family Dollar suffered a "detriment."  (*See id*.)  Even if that unsupported allegation is accepted, such injury, if suffered at all, was not suffered by Plaintiff.  Dollar General and Family Dollar are Plaintiff's customers, not its competitors, and rebate payments made to them do not support a finding that any "favored *competitor* received a substantial price reduction over a substantial period of time."  *Contrast Rose Confections*, 816 F.2d at 385 (emphasis added) (citing *Morton Salt*, 334 U.S. at 50–51) (plaintiff suffered anticompetitive injury where it was forced to reduce prices to its customers in response to low-price offers); *Conoco*, 774 F.2d at 904 (no injury to competition because distributor plaintiff not in primary line competition with its supplier (the defendant)).

Nor does the Complaint allege that any favorable payments were made to any of Plaintiff's competitors (or to the customers of Plaintiff's competitors) in the Mahaska Territories.  To the contrary, the Complaint identifies no competitors for the sale of Pepsi-branded carbonated soft drinks because Plaintiff is the exclusive bottler of Pepsi-branded carbonated soft drinks in the Mahaska Territories, and the Complaint does not allege that any such payments were made to

downstream customers of one of Plaintiff's competitors (to the disadvantage of Plaintiff's own downstream customers).   It follows that the Complaint does not allege the kind of anticompetitive injury required under the Robinson-Patman Act.  *See Conoco*, 774 F.2d at 902–03 (the Robinson-Patman Act is concerned with the protection of competition on three levels: "(1) competition with the seller who granted the discriminatory prices (primary line); (2) competition with the seller's purchaser who received the favorable lower price (secondary line); and (3) competition with a customer of the favored purchaser (tertiary line).")[11]

### E.   THE COMPLAINT FAILS TO PLEAD A VIOLATION OF IA CODE § 553.4 OR § 553.5.

Like Plaintiff's federal antitrust law claims, Plaintiff's state law antitrust claims against Defendants consist only of "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  The Court should dismiss these claims as well.

Iowa competition law is interpreted consistently with federal antitrust laws.  *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 181–82 (Iowa 2001) (recognizing that Iowa Competition law is "patterned" after the federal Sherman Act and that Iowa Code § 553.2 "explicitly requires" state courts to consider federal case law and construe state law "uniformly with the Sherman Act").  Because the Complaint fails to state claims under either Section 1 or Section 2 of the Sherman Act, it correspondingly fails to state claims for price fixing, predatory pricing, or monopolization under Iowa Code § 553.4 or § 553.5.  *See Davies*, 994 F. Supp. at 1103 ("Because Plaintiffs' claims of attempt to monopolize and monopolization are dismissed under Section 2 of the Sherman Act, which is similar to Section 553.5, and because

---

[11] To the extent that the Complaint claims that Plaintiff suffered anticompetitive injury because Defendants' pricing forced it out of the market, the Complaint offers no facts to support that claim, and Plaintiff has not actually sustained any such injury to date.  In any event, injury of that kind is far too speculative to ground standing under the statute.  *See Ideal Plumbing Co. v. Benco, Inc.*, 382 F. Supp. 1161, 1169 (W.D. Ark. 1974) (to recover damages, a Plaintiff must prove that "it has been injured as a proximate result of some unlawful act by the defendants. That is, it must first establish the fact of injury before the jury is allowed to determine the amount of injury"), *aff'd*, 529 F.2d 972 (8th Cir. 1976).

Section 553.2 requires a 'uniform application of state and federal laws prohibiting restraints of economic activity and monopolistic practices' . . . Iowa courts would interpret Section 553.5 to require dismissal); *Insulate*, 797 F.3d at 547 (where Minnesota and California antitrust laws were interpreted consistently with federal antitrust law, dismissal of federal antitrust claims warranted dismissal of analogous state-law claims).   Accordingly, the Complaint's state-law claims for price fixing, predatory pricing, and monopolization should be dismissed on the same basis as its claims under the Sherman Act.

### F.      THE COMPLAINT FAILS TO PLEAD A BREACH OF FIDUCIARY DUTY.

To plead a claim for breach of fiduciary duty under Iowa law, a plaintiff must offer facts demonstrating: (1) that the defendant owed the plaintiff a fiduciary duty; (2) that the defendant breached the fiduciary duty; (3) that the breach of fiduciary duty was a proximate cause of the plaintiff's damages; and (4) the amount of damages.  *Van Stelton v. Van Stelton*, No. C11-4045 (MWB), 2014 WL 4898591, at *21 (N.D. Iowa July 17, 2013) (listing elements of a claim for breach of fiduciary duty under Iowa law).

"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *United Suppliers, Inc. v. Millard Feed Mill, Inc.*, No. 09-cv-107 (LRR), 2011 WL 219690, at *21 (N.D. Iowa Jan. 21, 2011) (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986)). "Indicia of a fiduciary relationship include: the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another."  *Id.* (quoting *Vos v. Farm Bureau Life Ins. Co.*, 667 N.W.2d 36, 52 (Iowa 2003)).

The Complaint alleges that Defendants owed a fiduciary duty to "independent bottlers," like Plaintiff, (i) to protect their franchises, (ii) to protect the Pepsi trademark and name, and (iii) to protect their territory "on an exclusive basis." (Compl. ¶ 132.)[12]  These claims fail at the outset.  As to PBC, the Complaint fails to establish any privity between PBC and Plaintiff and neglects to identify any basis for the existence of a fiduciary relationship.  As to PepsiCo, no Iowa court has recognized a fiduciary relationship between a supplier and its distributor, and the Eighth Circuit has consistently held that such relationships are not fiduciary in nature.  *See, e.g.*, *W.K.T. Distrib. Co. v. Sharp Elecs. Corp.*, 746 F.2d 1333, 1336 (8th Cir. 1984) (no fiduciary relationship under Minnesota law where "the parties, as a result of arm's length negotiations, entered into an ordinary supplier-distributor relationship"); *Bain v. Champlin Petroleum Co.*, 692 F.2d 43 (8th Cir. 1982) (rejecting the argument that a manufacturer-distributor or franchise relationship implicitly creates a "fiduciary" relationship under Missouri law).

In short, the Complaint offers no facts that warrant the recognition of a fiduciary relationship between Plaintiff and Defendants.  The parties dealt with one another on an arm's length basis and the Complaint points to nothing in any of the agreements between them to suggest that any type of fiduciary relationship was ever intended, or that any type of confidential relationship existed between the parties.  Nor does the Complaint suggest that Defendants enjoyed superior or excessive influence over Plaintiff.  *Emp'rs Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc.*, 422 F.3d 776, 781–82 (8th Cir. 2005) (no compelling evidence of a fiduciary relationship between buyer and seller because both were "large, sophisticated business entities" and there was "no evidence of inequality between them," or evidence that seller

---

[12] Defendants are alleged to have violated the following putative fiduciary duties: (a) the "duty of loyalty and utmost good faith;" (b) the "duty of candor;" (c) the "duty to refrain from self-dealing;" (d) the "duty to act with integrity of the strictest kind;" (e) the "duty of fair, honest dealing;" (f) the "duty of full disclosure;" (g) the "duty of good faith, fair dealing, loyalty, and fidelity;" (h) the "duty to make Mahaska's assets productive;" and (i) the "duty of full disclosure on all matters affecting Mahaska." (Compl. ¶ 132(a) – (i).)

"exercise[d] influence over or dominate[d]" buyer); *Minn. Timber Producers Ass'ns v. Am. Mut. Ins. Co.*, 766 F.2d 1261, 1268 (8th Cir. 1985) (no fiduciary relationship between plaintiff and defendant where they "dealt with each other on an arm's length basis" and there was "no evidence that any type of fiduciary relationship was intended or that in fact any type of confidential relationship existed" between them, or that defendant "enjoyed superior or excessive influence over" plaintiff); *Arnott v. Am. Oil Co.*, 609 F.2d 873, 891 (8th Cir. 1979) (no fiduciary relationship between oil company and gas station dealer: "The parties in this case entered into a business relationship, not a fiduciary relationship. Each party served the interests of the other, but each also quite properly sought its own interests."). In the absence of a fiduciary relationship between the parties, this claim must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that Counts I–V and X of the Complaint be dismissed with prejudice.

*/s/Linda H. Martin*
Linda H. Martin
Leah Friedman
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10011
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
E-mail: linda.martin @freshfields.com
           leah.friedman@freshfields.com

Thomas Ensign
Freshfields Bruckhaus Deringer US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
E-mail: thomas.ensign@freshfields.com

25

Ryan G. Koopmans (AT0009366)
NYEMASTER GOODE P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-3108
Email:  rkoopmans@nyemaster.com

**ATTORNEYS FOR DEFENDANTS
PEPSICO, INC. and BOTTLING
GROUP, LLC**