**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
**MAHASKA BOTTLING COMPANY, INC.,**          :          **Case No. 16-114**
                                                          :
    *Plaintiff,*                                    :
                                                          :          **ORAL ARGUMENT**
                                                          :          **REQUESTED**
**v.**                                                    :
                                                          :
**PEPSICO, INC. AND BOTTLING GROUP, LLC,**   :
                                                          :
    *Defendants.*                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS ALL CLAIMS**
**EXCEPT BREACH OF CONTRACT AND TORTIOUS INTERFERENCE**

**TABLE OF CONTENTS**

I.  Preliminary Statement.................................................................................................1

II. Background ..............................................................................................................4

    A.  Mahaska Bottling Company ................................................................4

    B.  The Carbonated Soft-Drink Industry ................................................4

    C.  Plaintiff's Exclusive Bottling Appointments With PepsiCo.................5

    D.  PepsiCo's Relationship with National Chain Customers.......................6

    E.  Dollar General and Family Dollar ......................................................7

III. Argument .................................................................................................................8

    A.  Standard of Review................................................................................8

    B.  The Amended Complaint Fails to Allege an Antitrust Violation Under Federal or Iowa State Law ...............................................................9

        1.  Plaintiff Fails to Allege a Section 1 Conspiracy. .........................9

        2.  The Amended Complaint Fails To State a Claim for Violation of Section 2 of the Sherman Act or § 553.5 of Iowa Competition Law. ..................................................................20

        3.  The Amended Complaint Fails to Plead A Robinson-Patman Act Violation.......................................................................23

    C.  The Amended Complaint Fails To Plead a Breach of Fiduciary Duty. .................25

    D.  The Amended Complaint Fails to Identify Any Statement By Defendants to Support a Defamation or Disparagement Claim..................................28

    E.  The Amended Complaint Fails to State A Claim For Relief Under the Lanham Act.........................................................................29

IV. Conclusion .............................................................................................................31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Channel, LLC v. Time Warner Cable, Inc.*,
    Civil No. 06-2175 (DWF/SRN), 2007 WL 1892227 (D. Minn. June 28, 2007) ...................12

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
    300 F.3d 620 (5th Cir. 2002) .................................................................................15

*Arnott v. Am. Oil Co.*,
    609 F.2d 873 (8th Cir. 1979) ................................................................................27

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................8

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...........................................................................................10

*Atlantic Richfield Co.* v. *USA Petroleum Co.*,
    495 U.S. 328 (1990).............................................................................................2

*Auto-Owners Ins. Co. v. Noyes*,
    No. C69-0061, 1997 WL 33558631 (N.D. Iowa Jan. 14, 1997)............................28

*Bain v. Champlin Petroleum Co.*,
    692 F.2d 43 (8th Cir. 1982) .................................................................................26

*Bathke v. Casey's Gen. Stores, Inc.*,
    64 F.3d 340 (8th Cir. 1995) .................................................................................17

*Behr v. Meredith Corp.*,
    414 N.W.2d 339 (Iowa 1987) ..............................................................................29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................ *passim*

*Boat & Motor Mart v. Sea Ray Boats, Inc*.,
    825 F.2d 1285 (9th Cir. 1987) .............................................................................26

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp*.,
    509 U.S. 209 (1993)......................................................................................17, 25

*Campbell v. Quad City Times*,
    547 N.W.2d 608 (Iowa Ct. App. 1996)................................................................29

*Carpenter Tech. v. Allegheny Techs.*,
    646 F. Supp. 2d 726 (E.D. Penn. 2009) ..................................................22

*City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*,
    838 F.2d 268 (8th Cir. 1988) ...................................................11, 25

*Co-Rect Prod., Inc. v. Marvy! Advert. Photography, Inc.*,
    780 F.2d 1324 (8th Cir. 1985) ...................................................30

*Concord Boat Corp. v. Brunswick Corp.*,
    207 F.3d 1039 (8th Cir. 2000) ...................................................14

*Conoco, Inc. v. Inman Oil Co.*,
    774 F.2d 895 (8th Cir. 1985) ...................................................23, 24

*Cont'l T.V., Inc. v. GTE Sylvania Inc.*,
    433 U.S. 36 (1977) ...................................................14

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984) ...................................................11

*Coyne's & Co. v. Enesco, LLC*,
    Civil No. 07-4095, 2010 WL 3269977 (D. Minn. Aug. 16, 2010) .........................29

*Davies v. Genesis Med. Ctr.*,
    994 F. Supp. 1078 (S.D. Iowa 1998) ...................................................10, 17, 18

*Davis v. TPI Composites, Inc.*,
    No. 4:11-cv-00233-JAJ-TJS. 2011 WL 3706560 (S.D. Iowa Aug. 3, 2011) ..........................4

*Digital Equip. Corp. v. Uniq Digital Techs., Inc.*,
    73 F.3d 756 (7th Cir. 1996) ...................................................15

*Doe v. Hagar*,
    765 F.3d 855 (8th Cir. 2014) ...................................................28

*Emp'rs Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc.*,
    422 F.3d 776 (8th Cir. 2005) ...................................................27

*Fair Isaac Corp. v. Experian Info. Sols., Inc.*,
    650 F.3d 1139 (8th Cir. 2011) ...................................................18

*Franklin Park-Lincoln-Mercury, Inc. v. Ford Motor Co.*,
    530 Fed. Appx. 542 (6th Cir. 2013) ...................................................26, 27

*Fusco v. Xerox Corp.*,
    676 F.2d 332 (8th Cir. 1982) ...................................................23

*Gregory Mktg. Corp. v. Wakefern Food Corp.*,
  787 F.2d 92 (3d Cir. 1986).................................................................................20

*HDC Med., Inc. v. Minntech Corp.*,
  474 F.3d 543 (8th Cir. 2007) .............................................................................22

*Huegerich v. IBP, Inc.*,
  547 N.W.2d 216 (Iowa 1996) .............................................................................28

*Illig v. Union Elec. Co.*,
  652 F.3d 971 (8th Cir. 2011) ...............................................................................4

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
  797 F.3d 538 (8th Cir. 2015) ................................................................... *passim*

*Jimmy Dan, Inc. v. Chrysler Credit Corp.*,
  643 F. Supp. 368 (W.D. Mo. 1986) ...................................................................26

*Johnson v. Nickerson*,
  542 N.W.2d 506 (Iowa 1996) .............................................................................28

*Leegin Creative Leather Prods. v. PSKS Inc.*,
  551 U.S. 877 (2007)............................................................................................14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)............................................................................................14

*Max 100 L.C. v. Iowa Realty Co.*,
  621 N.W.2d 178 (Iowa 2001) .............................................................................10

*McDonough v. Anoka Cty.*,
  799 F.3d 931 (8th Cir. 2015) ...........................................................................9, 19

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
  5 F. Supp. 2d 694 (D. Minn. 1998) ....................................................................21

*Minn. Timber Producers Ass'ns v. Am. Mut. Ins. Co.*,
  766 F.2d 1261 (8th Cir. 1985) ...........................................................................27

*Next Generation Realty, Inc. v. Iowa Realty Co.*,
  686 N.W.2d 206 (Iowa 2004) ........................................................................10, 19

*Nitro Distrib., Inc. v. Alticor, Inc.*,
  565 F.3d 417 (8th Cir. 2009) .............................................................................15

*Pac. Bell Tele. Co. v. linkLine Commc'ns*,
  555 U.S. 438 (2009)............................................................................................23

*Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*,
   431 F.3d 1241 (10th Cir. 2005) ............................................................4, 6, 26, 30

*In re Platinum & Palladium Commodities Litig.*,
   828 F. Supp. 2d 588 (S.D.N.Y. 2011)...................................................................12

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) ...............................................................................15

*Rose Confections, Inc. v. Ambrosia Chocolate Co., Div. of W.R. Grace & Co.*,
   816 F.2d 381 (8th Cir. 1987) ...............................................................................24

*Ross v. Am. Express Co.*,
   35 F. Supp. 3d 407 (S.D.N.Y. 2014)....................................................................14

*S. Dak. v. Kan. City S. Indus., Inc.*,
   880 F.2d 40 (8th Cir. 1989) .................................................................................20

*St. Louis Convention & Visitors Comm'n v. Nat'l Football League*,
   154 F.3d 851 (8th Cir. 1998) ...............................................................................10

*Super Turf, Inc., v. Monsanto Co.*,
   660 F.2d 1275 (8th Cir. 1981) .............................................................................21

*United Suppliers, Inc. v. Millard Feed Mill, Inc.*,
   No. 09-cv-107 (LRR), 2011 WL 219690 (N.D. Iowa Jan. 21, 2011)..........25, 26, 27

*Van Stelton v. Van Stelton*,
   No. C11–4045–MWB, 2013 WL 3776813 (N.D. Iowa July 17, 2013)..................29

*W.K.T. Distrib. Co. v. Sharp Elecs. Corp.*,
   746 F.2d 1333 (8th Cir. 1984) .............................................................................26

*Warfield v. KR Entm't (In re Fed. Fountain)*,
   165 F.3d 600 (8th Cir. 1999) ...............................................................................20

*Westowne Shoes, Inc. v. Brown Gp., Inc.*,
   104 F.3d 994 (7th Cir. 1997) ...............................................................................29

**Statutes and Rules**

15 U.S.C. §1 ......................................................................................... *passim*

15 U.S.C. § 1125 ...............................................................................29, 30

15 U.S.C. § 1127 .......................................................................................29

Iowa Code § 553 ................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................1

Defendants PepsiCo, Inc. ("PepsiCo") and Bottling Group, LLC (t/a "Pepsi Beverages Company" or "PBC") respectfully submit this Memorandum of Law in support of their Motion to Dismiss Counts III, IV, and VI through X of the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## I.   PRELIMINARY STATEMENT

Once again, Plaintiff Mahaska Bottling Company Inc. ("Mahaska" or "Plaintiff")—an exclusive bottler and distributor of several PepsiCo products in certain geographic markets—has attempted to spin what is at most an ordinary, though baseless, contractual dispute into an antitrust conspiracy, a defamation scheme, and a violation of fiduciary duties allegedly owed by a manufacturer to a bottler.  Despite being on notice of numerous pleading deficiencies in the original complaint ("Original Complaint") through Defendants' initial motion to dismiss, the First Amended Complaint ("Amended Complaint") simply recycles those deficiencies.  Indeed, it is quite telling that, after two tries, Mahaska still cannot allege any facts to support the vast majority of claims it has asserted.  Underscoring the extent of Mahaska's overreaching, the Amended Complaint also now includes class allegations purporting to assert breach of contract claims on behalf of all PepsiCo independent bottlers,[1] as well as a new claim for violation of the Lanham Act against PepsiCo on the basis of PepsiCo's use of its own trademarks.

Like its predecessor, the Amended Complaint is replete with cursory allegations, often pled on information and belief, and it fails to allege how, exactly, Plaintiff was wronged, which contracts are at issue, or what injury was suffered.  In preparing this motion, Defendants have

---

[1]   Defendants respectfully submit that there is no basis for any class claims to be brought under the Amended Complaint, and the propriety of class certification should be addressed in the early stages of this case.  Even the sampling of exclusive bottling appointments Mahaska has annexed to the Amended Complaint (*see* Am. Compl., Ex. A)—which govern the relationship between PepsiCo and Mahaska in Iowa, but not any parts of Kansas or Nebraska—contain different terms, and Mahaska has failed even to allege (nor could it) that any other bottler has any agreement with PepsiCo that resembles the June 1, 2003 Omnibus Side Letter annexed to the Amended Complaint as Exhibit B (*see* Am. Compl., Ex. B) in either form or substance.

done their best to try to understand and respond to Mahaska's confusing and often contradictory allegations.  Although all of the claims in the Amended Complaint are poorly pleaded, even under the most generous reading of Mahaska's allegations, claims other than simple breach of contract and tortious interference claims are  deficient and must be dismissed.

Even after Defendants alerted Mahaska to its failure to plead antitrust injury in its Original Complaint, Mahaska still fails to allege any facts to support this prerequisite to a private antitrust claim.  Instead, through entirely conclusory allegations, the Amended Complaint refers to Mahaska's alleged lost profits, which purportedly flowed from the decision of Plaintiff's customers (who are not defendants in this case) to cancel their contracts or otherwise forgo business with Plaintiff.  But as the Supreme Court has made clear, the antitrust laws are designed to protect "*competition*, not *competitors*."[2]  In addition, Mahaska affirmatively alleges that the conduct it is challenging under the antitrust laws actually resulted in consumers paying lower prices.  Lower consumer prices are among the central objects of the antitrust laws.  It follows that the basic complaint underlying Mahaska's antitrust claims—that Mahaska sustained losses because it refused to lower its prices to retail customers to meet competition—is not the kind of complaint that the antitrust laws are designed to address.

Even if there were some basis to conclude that Mahaska had standing to bring antitrust claims—there is not—the Eighth Circuit has recently observed that "the unusually high cost of discovery in antitrust cases" and "limited success of judicial supervision in checking discovery abuse" require federal courts to closely scrutinize a complaint's allegations to "weed[] out meritless antitrust claims at the pleading stage."[3]  Such considerations are especially pressing here because, as was the case with the Original Complaint, the Amended Complaint fails to

---

[2] *Atlantic Richfield Co.* v. *USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (internal quotation marks omitted).
[3] *Insulate SB, Inc. v. Advanced Finishing Systems, Inc.*, 797 F.3d 538, 543 (8th Cir. 2015) (alterations and omission in original) (citation and internal quotation marks omitted).

2

plead even the basic elements of price-fixing (*see infra* Section III.B.1), predatory pricing (*see infra* Section III.B.1.d), attempt or conspiracy to monopolize (*see infra* Section III.B.2), and price discrimination (*see infra* Section III.B.3).

Mahaska's breach of fiduciary duty claim also suffers from exactly the same flaws now as when it was initially pleaded—it fails to allege any facts from which the existence of a fiduciary relationship can be found. The allegations of the Amended Complaint describe the typical arm's length commercial relationship that one would expect between a manufacturer and its distributor. This type of relationship has never been recognized as giving rise to fiduciary duties under Iowa law, and the Amended Complaint provides no reason for such relationship to be inferred here. (*See infra* Section III.C.)

Mahaska's claim for business defamation / disparagement is also ripe for dismissal because it is based on the statement of a third party—not the Defendants. Moreover, the substance of the statement is confirmed by Mahaska's own admissions and allegations which suggest that the statement is substantially true and further forecloses this claim. (*See infra* Section III.D.)

Finally, the Amended Complaint's Lanham Act claim makes no sense. Mahaska has no right to limit PepsiCo's use of its own trademarks, and Mahaska has expressly acknowledged in its contracts with PepsiCo that it has no ownership or other "right or interest" in PepsiCo's marks. (Am. Compl., Ex. A at 5.) Even if there were some cognizable claim under the Lanham Act that permitted a licensee to prevent the owner of a trademark from using the owner's own mark—there is not—Mahaska's claim would still fail because the Amended Complaint does not plead any facts showing actual or likely customer confusion. (*See infra* Section III.E.)

## II.   BACKGROUND[4]

### A.   MAHASKA BOTTLING COMPANY

Mahaska is an Iowa-based corporation, engaged in, among other things, bottling carbonated soft-drink products for distribution to retailers.  (Am. Compl. ¶¶ 1, 14, 97.)  It is the exclusive bottler and distributor of certain PepsiCo carbonated soft-drink products in specified territories in Iowa, Nebraska, and Kansas (the "Mahaska Territories").  (Am. Compl. ¶¶ 14, 17, 19–20.)  Plaintiff also has "the exclusive right to distribute [Dr Pepper Snapple Group] products in the Mahaska Territories."  (Am. Compl. ¶ 69.)[5]  According to its website, Mahaska also distributes products of Arizona, Nestlé, and Kellogg Company, among others.[6]

### B.   THE CARBONATED SOFT-DRINK INDUSTRY

PepsiCo is an American multinational food, snack and beverage corporation that manufactures soft-drink concentrate (Am. Compl. ¶ 13), a flavor-ingredient syrup that is used to produce carbonated soft drinks.  (See Am. Compl. Ex. E ¶¶ 2, 6, 29.)  As a concentrate producer, PepsiCo—like non-parties Coca-Cola and Dr Pepper—manufactures and supplies soft-drink concentrate to bottlers.  (See Am. Compl., Ex. E ¶¶ 1-2, 6; Ex. F ¶ G.)  Concentrate producers like PepsiCo enter into individual agreements with bottlers frequently known as Exclusive Bottling Appointments ("EBAs") for the bottling and distribution of their soft-drink products within designated geographic territories.  See Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo,

---

[4]  On a motion to dismiss, the Court must accept all well pleaded allegations of a complaint as true, but it is not constrained to credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Davis v. TPI Composites, Inc., No. 4:11-cv-00233-JAJ-TJS. 2011 WL 3706560, at *2 (S.D. Iowa Aug. 3, 2011) (quotation omitted).

[5]  Plaintiff does not allege that it bottles Dr Pepper Snapple Group ("Dr Pepper") products, and the Complaint does not append any of its alleged agreements with Dr Pepper.

[6]  See Beverages, Mahaska, https://www.mahaska.com/products/beverages (last visited Sept. 27, 2016); Snacks, Mahaska, https://www.mahaska.com/products/snacks (last visited Sept. 27, 2016).  See Illig v. Union Elec. Co., 652 F.3d 971 (8th Cir. 2011) ("In addressing a motion to dismiss, '[t]he court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" (quoting Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010))).

*Inc.*, 431 F.3d 1241, 1248 (10th Cir. 2005) (cited in Am. Compl. ¶¶ 26, 27).  Plaintiff and PBC are both carbonated soft-drink bottlers with the exclusive right to distribute both Pepsi- and Dr Pepper-branded carbonated soft drinks in their respective territories (meaning that PBC and Plaintiff do not compete in the alleged market).  (*See* Am. Compl. ¶¶ 3, 16-17, 75, 95).  Neither PBC nor Plaintiff produces soft-drink concentrate.

Although Mahaska acknowledges that PepsiCo is in the concentrate business, the Amended Complaint often (and misleadingly) suggests that PepsiCo is in the bottling business— which it is not—and that PepsiCo and Mahaska compete in the alleged market for carbonated soft drinks in the Mahaska Territories.  (*See* Am. Compl. ¶¶ 77, 98, 175, 220.)  Indeed, when making factual allegations about the relevant markets for purposes of its antitrust claims, Mahaska bounces back and forth between discussing an alleged market for concentrate and an alleged market for carbonated soft drinks.  (*See. e.g.*, Am. Compl. ¶¶ 95, 77, 180.)

### C.   PLAINTIFF'S EXCLUSIVE BOTTLING APPOINTMENTS WITH PEPSICO

Under Mahaska's EBAs with PepsiCo,[7] Mahaska purchases carbonated soft-drink concentrate from PepsiCo and then bottles and sells Pepsi-branded carbonated soft-drink products, including fountain products, to retailers.  (Am. Compl. ¶¶ 17, 19-20.)  The EBAs provide that Mahaska will sell PepsiCo carbonated soft-drink products "at [Mahaska's] price per case," but permit PepsiCo "to suggest to [Mahaska] the price per case" Mahaska should charge. (Am. Compl. Ex. A, 1948 Pepsi EBA (Iowa) ¶ 9; 1964 Diet Pepsi EBA (Iowa) ¶ 8; 1965 Mountain Dew EBA (Iowa) ¶ 8.)  The EBAs require Mahaska to "push vigorously the sale" of

---

[7]  Exhibit A is alleged to be "[a] true and correct copy of the EBA" between PepsiCo and Plaintiff.  (Am. Compl. ¶ 18.) However, Exhibit A actually includes several exclusive bottling appointment agreements between Plaintiff and PepsiCo, including the 1948 EBA for Pepsi governing Iowa territories, the 1968 EBA for Diet Pepsi governing Iowa territories, and the 1965 EBA for Mountain Dew governing Iowa territories, as well as a Syrup Appointment. (*See* Am. Compl. Ex. A.)  Notably, Plaintiff has not attached EBAs for any territory outside of Iowa, or for any products other than Pepsi, Diet Pepsi and Mountain Dew, whether in Iowa, Kansas or Nebraska.  It is therefore unclear if the EBAs attached as Exhibit A to the Amended Complaint are all of the "EBA and related agreements" (*see* Am. Compl. ¶ 21) alleged by Plaintiff to govern the relationship between Plaintiff and PepsiCo.

the Pepsi-Cola beverage in its appointed territory, to "secure full distribution" of Pepsi-Cola in its territory (Am. Compl. Ex. A, 1948 Pepsi EBA (Iowa) ¶ 8, 1964 Diet Pepsi EBA (Iowa) ¶ 9, 1965 Mountain Dew EBA (Iowa) ¶ 9), and to "fully meet and increase the demand for the [PepsiCo beverage] throughout the Territory."  (Am. Compl. Ex. A, 1964 Diet Pepsi EBA (Iowa) ¶ 9, 1965 Mountain Dew EBA (Iowa) ¶ 9.)  Plaintiff also is obligated to "fully cooperate in and vigorously push [PepsiCo's] cooperative advertising and sales promotion programs and campaigns for the Territory."  (Am. Compl. Ex. A, 1964 Diet Pepsi EBA (Iowa) ¶ 9, 1965 Mountain Dew EBA (Iowa) ¶ 9.)

### D.    PEPSICO'S RELATIONSHIP WITH NATIONAL CHAIN CUSTOMERS

"During the 1980s and 1990s, two significant changes occurred" in the beverage industry "which directly affected PepsiCo's ability to successfully compete nationwide," including "significant consolidation . . . on the retail side of the soft drink industry as a result of the growth of large, nationwide retail chains like Wal-Mart and Sam's Club," as well as the establishment of "a single anchor bottler" by "PepsiCo's chief rival, the Coca-Cola Company (Coke)," which allowed Coke to more effectively negotiate competitive prices with national chains.  *Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1250 (10th Cir. 2005) (cited in Am. Compl. ¶¶ 26, 27).  National chains then "began demanding that PepsiCo service their needs at a national rather than a local level," and this, in turn, impacted PepsiCo's "relationship with its bottlers."  *Id.*

Beginning in the 1980s, PepsiCo began entering into marketing agreements called Customer Development Agreements ("CDAs") with large chain customers.  (*See* Am. Compl. ¶ 29-30.)  The Amended Complaint alleges that the CDAs are designed to achieve greater consistency in pricing for customers with a national presence by establishing a rebate paid to

these chains to account for differences in pricing by independent bottlers.  (*See* Am. Compl. ¶¶ 31, 34.)  The Amended Complaint also alleges that some local bottlers have assumed a portion of the cost of this rebate by entering into a Marketplace Investment Agreement ("MIA") with PepsiCo, pursuant to which "PepsiCo makes payments to the bottler in return for accepting a portion of rebate costs and costs related to national advertising campaigns."  (Am. Compl. ¶ 34.)

Bottlers are not obliged to enter into such agreements, and Plaintiff has elected not to do so.  (Am. Compl. ¶ 35.)

### E.   DOLLAR GENERAL AND FAMILY DOLLAR

Plaintiff alleges that PepsiCo has entered into CDAs with, among other retailers, Dollar General Corporation ("Dollar General") and Family Dollar Stores, Inc. ("Family Dollar").  (*See* Am. Compl. ¶ 58.)  Dollar General is the largest discount retailer in the United States, with more than 11,500 stores located in over 43 states, including more than 80 stores in Iowa.  (Am. Compl. ¶ 4.)  Family Dollar operates more than 7,800 discount stores throughout the United States, including more than 30 stores in Iowa.  (Am. Compl. ¶ 5.)  Family Dollar admits that it engages in "aggressive pricing," and as a result, certain local Pepsi bottlers have been "unwilling to do business with Family Dollar."  (Am. Compl. ¶ 63.)

In late February 2016, as a result of an unwillingness of some local bottlers to agree to Family Dollar's "aggressive pricing," Family Dollar notified 67 of its stores that they would no longer stock Pepsi products and would replace them with competitor products including Coke, Dr Pepper/Snapple, Shasta and Faygo.  (Am. Compl. ¶ 63; s*ee also* Ex D.)  Although not expressly alleged, it appears that Plaintiff was among those bottlers unwilling to agree to the "aggressive pricing" demanded by Family Dollar or (presumably) Dollar General.  It further

appears (although it is not expressly alleged) that Mahaska believes it should be able to negotiate whatever prices it wants with Family Dollar and Dollar General, and that PepsiCo should subsidize those prices and unconditionally pay the difference between Plaintiff's offered prices, and the prices offered to Family Dollar and Dollar General stores outside of the Mahaska Territories by other independent bottlers and PBC.   In mid-March 2016, Plaintiff alleges that a PepsiCo national accounts sales manager emailed eight individuals, including Jim Frush of Mahaska, advising them to cease deliveries of products to Family Dollar stores by March 31, 2016, if, by that date, they are "still not aligned to the [Family Dollar] program."   (Am. Compl. ¶ 92 & Ex. G.)

One month later, on April 15, 2016, Plaintiff filed its Original Complaint.   Defendants moved to dismiss the Original Complaint's antitrust and breach of fiduciary duty claims on July 29, 2016.   In response, Plaintiff filed the Amended Complaint on August 25, 2016.

### III.   ARGUMENT

#### A.   STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations must be "enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "nudge[] [the] claims across the line from conceivable to plausible."   *Id.* at 570.   "'[L]abels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" are insufficient.   *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).   Courts need not accept "naked assertion[s] devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."   *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted);

*McDonough v. Anoka County*, 799 F.3d 931, 945 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied* 136 S. Ct. 2388 (2016)).

The Eighth Circuit has recognized that, where misapplication of "the *Twombly* standard allows a complex case of extremely dubious merit to proceed, it bids fair to immerse the parties in the discovery swamp . . . and by doing so create irrevocable as well as unjustifiable harm to the defendant." *Insulate*, 797 F.3d 538, 543 (8th Cir. 2015) (quoting *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625–26 (7th Cir. 2010)). Thus, with regard to antitrust claims in particular, "[g]iven the unusually high cost of discovery in antitrust cases [and] the limited 'success of judicial supervision in checking discovery abuse[,]' . . . the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage." *Insulate*, 797 F.3d at 543 (citation and internal quotation marks omitted).

## B.    THE AMENDED COMPLAINT FAILS TO ALLEGE AN ANTITRUST VIOLATION UNDER FEDERAL OR IOWA STATE LAW

The Amended Complaint alleges a variety of antitrust violations—often misstating their elements. In addition, despite Iowa state courts' holding that Iowa Competition Law is to be read in parallel with federal antitrust provisions, the Amended Complaint inexplicably neglects to align its Federal and Iowa state antitrust claims. The result is a collection of stray allegations that do not support claims under either federal or state law. But the confusion Mahaska's allegations create should not inure to Mahaska's benefit. Even when construed broadly and most favorably to Mahaska, those allegations fail to adequately plead any violation of either federal or state antitrust law.

### 1.   Plaintiff Fails to Allege a Section 1 Conspiracy.

Although there is no formal count in the Amended Complaint alleging a claim under Section 1 of the Sherman Act, Mahaska refers to Section 1 claims: (1) to justify federal

jurisdiction (Am. Compl. ¶ 8); and (2) in its relevant market allegations (Am. Compl. ¶ 95).   In

addition, Mahaska   alleges a violation of Iowa Competition Law  §  553.4—a provision that

mirrors Sherman Act Section 1.   (Am. Compl. ¶¶ 214–18).   As a result, Defendants have no

choice but to address the Amended Complaint's failure to state a claim under Section 1 of the

Sherman Act.

Section 1 prohibits "[e]very contract, combination in the form of trust or otherwise, or

conspiracy, in restraint of trade or commerce among the several states."  15 U.S.C. §1.  Iowa's

Competition Law is construed in accordance with the Sherman Act.[8]   To state a claim under

Sherman Act Section 1, and thus its Iowa state analogue, a plaintiff must allege:   (1) an

agreement in restraint of trade; (2) that directly and proximately caused it injury; and (3) that its

resulting damages are capable of ascertainment and are not speculative.   *See, e.g., St. Louis*

*Convention & Visitors Comm'n v. Nat'l Football League*, 154 F.3d 851, 861 (8th Cir. 1998).  To

recover damages, a plaintiff must establish not only that it suffered an injury sufficient to confer

Article III standing, but also that it "is a proper party to bring a private antitrust action."

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535

n.31 (1983).   Antitrust standing requires a party to plead (and ultimately to prove) that it has

suffered antitrust injury.  *Davies v. Genesis Med. Ctr.*, 994 F. Supp. 1078, 1092–96 (S.D. Iowa

1998); *Next Generation Realty, Inc. v. Iowa Realty Co.*, 686 N.W.2d 206, 208–09 (Iowa 2004)

(explaining that "without an antitrust injury, the provisions of Iowa Code chapter 553 do not

apply").  Despite being given two bites at the apple, Mahaska has failed to plead a Section 1—or

---

[8]   *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 181–82 (Iowa 2001) (recognizing that Iowa Competition law
is "patterned" after the federal Sherman Act and that Iowa Code § 553.2 "explicitly requires" state courts to consider
federal case law and construe state law "uniformly with the Sherman Act"); *Insulate*, 797 F.3d at 547 (where
Minnesota and California antitrust laws were interpreted consistently with federal antitrust law, dismissal of federal
antitrust claims warranted dismissal of analogous state-law claims).  Iowa Code § 553.4 provides that "[a] contract,
combination, or conspiracy between two or more persons shall not restrain or monopolize trade or commerce in a
relevant market."  IOWA CODE § 553.4 (2016).

corresponding state law—claim.

### a) PepsiCo and PBC Cannot Conspire as a Matter of Law.

As an initial matter, any claim that PepsiCo and PBC conspired (*see* Am. Compl. ¶¶ 174, 178–81) fails because PepsiCo cannot conspire with its wholly-owned subsidiary as a matter of law. *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 777 (1984) (wholly-owned subsidiaries and their parents "are incapable of conspiring with each other for the purposes of § 1"); *accord City of Mt. Pleasant v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 274–75 (8th Cir. 1988).

### b) Plaintiff Fails to Allege an Antitrust Conspiracy Between Defendants and Non-Party Dr Pepper.

Nor does Mahaska adequately allege a Section 1 conspiracy between Defendants and Dr Pepper. To survive a motion to dismiss, a plaintiff must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Insulate*, 797 F.3d at 544 (quoting *Twombly*, 550 U.S. at 556). Conclusory allegations of an agreement, or facts that merely support a "suspicion" or "possibility" of agreement, will not do. *Twombly*, 550 U.S. at 555, 557. Rather, a complaint must offer facts supporting the existence of either (a) an express agreement among the defendants, or (b) an agreement implied from the surrounding circumstances. *See Insulate*, 797 F.3d at 544 (requiring a showing that "'two or more persons entered into either an express or implied agreement'" (quoting *Impro Prods., Inc. v. Herrick*, 715 F.2d 1267, 1273 (8th Cir. 1983)); *see also Twombly*, 550 U.S. at 557 (requiring context that "raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action").

### i. *Plaintiff Offers No Evidence of an Express Agreement.*

The Amended Complaint makes conclusory stray statements of a "conspiracy" among Defendants and Dr Pepper (Am. Compl. ¶¶ 179-80), but fails to plead any "circumstances,

occurrences, and events" that establish the existence of a "contract, combination, or conspiracy." *Twombly*, 550 U.S. at 555 n.3.  "[S]tray statements speak[ing] directly of agreement" are "merely legal conclusions resting on [other] allegations" and must be disregarded.  *Twombly*, 550 U.S. at 564 & n.9 (disregarding conclusory allegation that companies "engaged in a 'contract, combination or conspiracy' and agreed not to compete with one another").  Thus, even taking all of the allegations in the Amended Complaint as true, any claim that Defendants conspired with Dr Pepper is woefully deficient.

In particular, the Amended Complaint fails to plead any facts to establish when Defendants and non-party Dr Pepper entered into a supposed conspiracy, which representatives of Defendants and Dr Pepper reached an anticompetitive agreement, or precisely how Defendants and Dr Pepper accomplished their conspiracy.  These pleading deficiencies are fatal to a claim under Section 1 of the Sherman Act.  *See Insulate SB*, 797 F.3d at 546 ("Without some supporting factual allegations," conclusory allegations of conspiracy are insufficient).  Indeed, unlike the complaint in *Twombly*, which at least alleged interactions between competitors via trade-associations but still failed to state a claim, *see* 550 U.S. at 567 n. 12, the Amended Complaint does not refer to a single communication between Defendants and Dr Pepper, much less any collusive pricing communications.  *Am. Channel, LLC v. Time Warner Cable, Inc.*, 2007 WL 1892227, at *4–5  (D. Minn. June 28, 2007) (dismissing antitrust claim where complaint failed to refer to any "specific communications through which Defendants allegedly conspired"); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 597 (S.D.N.Y. 2011) (dismissing Section 1 claim where complaint failed to identify a single "actual, verbalized communication" among defendants (quoting *In re Currency Conversion*, 773 F. Supp. 2d 351, 366 (S.D.N.Y. 2011)).

### ii.   *Plaintiff Pleads No Facts Sufficient to Infer an Agreement.*

The Amended Complaint also offers no circumstantial allegations sufficient to infer a conspiracy between Defendants and Dr Pepper.  Plaintiff appears to be intimating—without alleging directly—that because Dollar General and/or Family Dollar negotiated with Dr Pepper concerning national pricing of Dr Pepper carbonated soft drinks, Dr Pepper and Pepsi must have engaged in unlawful collusion.  (*See, e.g.*, Am. Compl. ¶ 179.)  But at most, Mahaska's allegations about Dollar General / Family Dollar's negotiations with Dr Pepper suggest parallel pricing conduct, they do not support an inference of collusion.  "Pleading only 'parallel conduct' or other conduct 'merely *consistent with* [an] agreement' is not sufficient to show a conspiracy." *Insulate*, 797 F.3d at 544 (quoting *Twombly*, 550 U.S. at 557) (alterations and emphasis in original).

To support an inference of antitrust conspiracy, a complaint must plead parallel conduct unlikely to occur absent an agreement.  *See Twombly* at 556 n.4.  But PepsiCo and other concentrate companies had a legitimate *independent* interest in acquiescing to retailers' demands to discuss national pricing: minimizing the prospect of losing shelf space and sales to competing products such as Coca-Cola.  Indeed, acquiescence to the pricing demands of customers is exactly the conduct expected as a result of competition—not coordination.

Moreover, unlike the prototypical price-fixing theory, where competitors are alleged to have fixed artificially high prices to further their *shared interest* in reaping greater profits, the purpose that PepsiCo allegedly sought to accomplish here—retaining its (and by extension, its bottlers') own shelf space at key national retailers by negotiating *lower* prices in response to competitive pressure—is not served by parallel conduct.  As a matter of common sense, PepsiCo (and its bottlers) would be better off if Dollar General and Family Dollar stocked only Pepsi brands.   Thus, under the facts Mahaska has alleged, there is "just no need for joint

encouragement" and "no reason to infer that the companies had agreed among themselves to do what was only natural anyway." *Twombly*, 550 U.S. at 566; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97 (1986) (absent a "rational economic motive to conspire," where "conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy."); *Ross v. Am. Express Co.*, 35 F. Supp. 3d 407, 442 (S.D.N.Y. 2014) ( "Courts may not infer a conspiracy where the defendants have no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations." (internal quotation marks omitted)).

### c) Plaintiff Fails to Allege An Unreasonable Restraint of Trade.

Even if Plaintiff adequately alleged an agreement among Defendants and Dr Pepper, its Section 1 claim would still fail because it has not alleged an unreasonable restraint of trade. It is well established that Section 1 prohibits "only *unreasonable* restraints" of trade. *See, e.g.*, *Leegin Creative Leather Prods. v. PSKS Inc.*, 551 U.S. 877, 885 (2007) (emphasis added). "The unreasonableness of a restraint is determined using either a per se standard or a standard that examines all of the circumstances, the so-called rule of reason test." *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1058 (8th Cir. 2000). The rule of reason is the "prevailing standard of analysis." *Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977). However, "there are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable." *Id*. at 50 (quoting *Northern Pac. R.R. Co. v. United* States, 356 U.S. 1, 5 (1958)).

The Amended Complaint contends that Defendants' conduct is "*per se* unlawful price fixing" under § 553.4. (Am. Compl. ¶ 217.) But a price-fixing agreement is *per se* unlawful only in the context of a horizontal agreement between competitors in the affected market. *See Leegin*, 551 U.S. at 907 ("Vertical price restraints are to be judged according to the rule of

reason."); *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 424 (8th Cir. 2009) ("For appellants to succeed in their claims of *per se* antitrust violations, they must show that Amway was in direct competition with Pro Net and InterNET . . . ."). Neither Defendants nor Dr Pepper compete in the Mahaska Territories for the sale of carbonated soft drinks—the only relevant market implicated by Defendants' relationships with national customers. As a result, the *per se* standard cannot apply here.

To survive this motion, Mahaska must therefore satisfy the rule-of-reason standard by plausibly alleging that Defendants held market power. *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418–19 (5th Cir. 2010); *accord*, *e.g.*, *Digital Equip. Corp. v. Uniq Digital Techs., Inc.*, 73 F.3d 756, 761 (7th Cir. 1996) ("[S]ubstantial market power is an indispensable ingredient of every claim under the Rule of Reason."). It cannot. Pleading market power requires a claimant to "plausibly define the relevant product and geographic markets" and plead sufficient facts to show that the defendants had sufficient power in those markets to affect competition. *Leegin*, 615 F.3d at 417; *see also Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 625 (5th Cir. 2002).

Mahaska alleges that (1) the relevant product market is all carbonated soft drinks, defined as including both "branded, direct-store-door delivered carbonated soft drinks and the branded concentrate used to produce branded, direct-store-door delivered carbonated soft drinks" and (2) the relevant geographic market "includes Iowa, Kansas, and Nebraska, which include the Mahaska Territories." (Am. Compl. ¶¶ 95–96.) The Amended Complaint broadens the definitions of the relevant product and geographic market Mahaska initially alleged, presumably

15

to draft around the absence of competition between Defendants and Plaintiff.[9]   But even in the more broadly alleged markets, Mahaska can never hope to show that either Defendants or Dr Pepper competes with Mahaska.   According to its own allegations, Mahaska exclusively sells Pepsi- and Dr Pepper-branded, direct-store-delivered carbonated soft drinks within the Mahaska Territories, such that, by extension, Defendants and Dr Pepper sell direct-store-delivered carbonated soft drinks only outside of the Mahaska Territories.   (*See* Am. Compl. ¶¶ 17, 19, 69.) Thus, there can be no credible claim that Mahaska is in direct competition with either Defendants or Dr Pepper.[10]

Moreover, Mahaska's conclusory and misleading claim that "PepsiCo and [Dr Pepper] together account for more than 50% of sales of CSD in the relevant market" (Am. Compl. ¶¶ 175, 220), is belied by its own admission that Mahaska is the exclusive distributor of Pepsi- and Dr Pepper-branded carbonated soft drinks in the territories it serves (Am. Compl. ¶¶ 17, 19, 69).[11]   Indeed, if any company possesses market power in the market for the sale of carbonated soft drinks in the Mahaska Territories, it is Mahaska.[12]   Consequently, Plaintiff cannot satisfy even the threshold element of a Section 1 rule-of-reason claim against Defendants.

---

[9]   The Original Complaint alleged the relevant product market to be carbonated soft drinks (as typically defined, not including the concentrate used to produce carbonated soft drinks) and the relevant geographic market to be, specifically, the Mahaska Territories. (*See* Orig. Compl. ¶ 49.)

[10]   The Amended Complaint makes the contradictory claims: "Mahaska separately negotiated, and obtained from [Dr Pepper] the exclusive right to distribute [Dr Pepper] products in the Mahaska Territories" (Am. Compl. ¶ 69; *see also* Am. Compl. ¶ 185, 193) and "PBC is a direct competitor of Mahaska in the Mahaska Territories on certain products such as *[Dr Pepper]* products, snacks, vending, sports beverages (such as Gatorade), and other similar products."   (Am. Compl. ¶ 97; *see also* Am. Compl. ¶¶ 177) (emphasis added).

[11]   The Amended Complaint's nuanced statement that "PepsiCo and [Dr Pepper] *branded* products together account . . . for more than 80%" of sales of carbonated soft drinks in Mahaska Territories (Am. Compl. ¶ 98 (emphasis added); *see id*. ¶ 220), is misleading and inadequate to support any inference of market power on behalf of Defendants because Plaintiff has exclusive rights to distribute Pepsi- and Dr Pepper-branded carbonated soft drinks in its territories.   (Am. Compl. ¶¶ 17, 19, 69.)

[12]   Moreover, Plaintiff does not claim or provide any facts to support that Defendants possess market power in the sale of branded concentrate.

### d) Plaintiff Fails to State a Claim for Predatory Pricing.

Mahaska's predatory pricing claim is equally flawed. To state such a claim under the Sherman Act or Iowa Competition Law,[13] a plaintiff must show (1) that a "rival was pricing below cost" and (2) the rival's "eventual ability to recoup its losses from pricing below cost." *Bathke v. Casey's Gen. Stores, Inc.*, 64 F.3d 340, 344 (8th Cir. 1995). The Amended Complaint does not satisfy either requirement.

First, Defendants are not "rivals" of Plaintiff because neither of them bottles or distributes Pepsi-branded carbonated soft drinks in the Mahaska Territories. Rather, Plaintiff is the sole distributor of Pepsi-branded carbonated soft drinks in the Mahaska Territories, and within the Mahaska Territories, PepsiCo supplies only concentrate to Plaintiff. (Am. Compl. ¶¶ 17, 19, 21.) Second, even if Plaintiff's unsubstantiated allegation that Defendants priced carbonated soft drinks below its own cost is sufficient to survive a motion to dismiss,[14] Plaintiff has alleged no facts to suggest, let alone establish, that Defendants could recoup their losses in the future. Instead, the Amended Complaint asserts that Defendants "will seek to recoup losses from predatory pricings and sales below cost by raising prices to consumers after forcing Mahaska out of the market." (Am. Compl. ¶ 216; *see id.* ¶ 158.) But it is entirely implausible

---

[13] Iowa competition law is interpreted consistently with federal antitrust laws. *See Davies*, 994 F. Supp. at 1103 ("Because Plaintiffs' claims of attempt to monopolize and monopolization are dismissed under Section 2 of the Sherman Act, which is similar to Section 553.5, and because Section 553.2 requires a 'uniform application of state and federal laws prohibiting restraints of economic activity and monopolistic practices' . . . Iowa courts would interpret Section 553.5 to require dismissal"). Although the Amended Complaint alleges a predatory pricing claim under § 553.4, Iowa Competition Law's analogue to Sherman Act Section 1, predatory pricing is traditionally asserted under Section 2 as a monopolization claim. *See, e.g., Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222-24 (1993). The Amended Complaint also does not suggest that the alleged predatory pricing was a result of any agreement or conspiracy between Defendants and a third party. (*See* Am. Compl. ¶¶ 214–18).

[14] The Amended Complaint's allegation that PBC "fix[ed] prices below cost" (Am. Compl. ¶ 215) is without any specificity or basis. Although the Amended Complaint pleads Plaintiff's concentrate costs (Am. Compl. ¶ 129), and separately suggests PBC may face the same costs (*see* Am. Compl. ¶¶ 52, 94, 161), it does not plead with any specificity the prices alleged to fall below those costs or any basis for inferring that PBC's costs are similar to Mahaska's costs. At the same time, Plaintiff admits that overall, carbonated soft drink concentrate costs account for less than 13% of carbonated soft drink sales by retailers. (*See* Am. Compl. ¶ 78.)

that PepsiCo or PBC could raise carbonated soft-drinks prices to supracompetitive levels given competition from, among others, Coca-Cola.

Contrary to Mahaska's predatory pricing claim, the Amended Complaint implies that Mahaska itself lost sales when it tried to extract an uncompetitively high price from Family Dollar (*see* Am. Compl. ¶ 63 & Ex. D.)  Such implication suggests that even if a plausible conspiracy between PepsiCo and Dr Pepper existed—it does not—national retailers would be unwilling to pay the prices required for Defendants to recoup sales lost in the interim.  Further, it is implausible that the alleged predatory pricing could possibly have the effect of forcing Mahaska out of the market given that the alleged predation relates to only a limited portion of Mahaska's sales.  Mahaska distributes a wide range of products other than Pepsi-branded carbonated soft drinks (*see* Am. Compl. ¶ 97) and distributes Pepsi-branded products to customers other than national chains (*see* Am. Compl. ¶ 55).

### e) Plaintiff Fails to Allege Antitrust Injury.

The Amended Complaint does not adequately allege antitrust injury—or the threat of antitrust injury—and therefore, Mahaska cannot seek recovery under Section 4 or Section 16 of the Clayton Act, which confer a private right of action under the federal antitrust laws.  *See, e.g.*, *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1144 (8th Cir. 2011) ("a private plaintiff must demonstrate that he has suffered an 'antitrust injury'" to recover damages under § 4 of the Clayton Act (internal quotations and citations omitted)); *id.* at 1146 ("[T]o seek injunctive relief under § 16 of the Clayton Act, a private plaintiff must allege threatened loss or damage of the type the antitrust laws were designed to prevent . . . ." (internal quotation marks omitted)); *Davies*, 994 F. Supp. at 1092–96 (a plaintiff must show it has sustained "injury of the type the antitrust laws were intended to prevent") (quoting *NCAA v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 103 (1984) (internal quotation marks omitted)).  Although it repeats the

18

conclusory assertion that Mahaska was "injured" or suffered "damage," the Amended Complaint offers no facts to support these assertions, or to suggest that Defendant caused such injury or damage. Instead, it relies on what appears to be an internal Family Dollar communication in which an unidentified Family Dollar store is advised that it is "1 of 67 that will no longer have Pepsi service" because "[y]our local Pepsi bottler is unwilling to do business with Family Dollar due to our aggressive pricing." (Am. Compl. ¶ 63 & Ex. D.) But this communication does not suggest that the decision to cease stocking Pepsi-branded products was the result of any action by Defendants, or that the decision related exclusively to stores within the Mahaska Territories. Rather, it suggests that Family Dollar refused to accept uncompetitive prices from certain bottlers. Where, as here, "a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *McDonough v. Anoka County*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Here, Mahaska has failed to allege any injury at all, let alone the type of injury to competition needed to sustain its antitrust claims. Indeed, the Amended Complaint's conclusory claims of "substantial competitive injury" and that Defendants' conduct will "substantially lessen[] competition" (*see, e.g.*, Am. Compl. ¶¶ 167, 169, 170, 181, 223) are insufficient to ground standing under the Clayton Act. Leaving this unsupported hyperbole aside, the fact remains that Mahaska is the exclusive bottler of Pepsi-branded carbonated soft drinks in the Mahaska Territories. (*See* Am. Compl. ¶ 17, 19.) Thus, even if all of Plaintiff's allegations are accepted as true, the notion that customers—and competition—would be harmed by the substitution of an alternative Pepsi bottler for an original exclusive Pepsi bottler remains implausible. *See Next Generation Realty, Inc. v. Iowa Realty Co.*, 686 N.W.2d 206, 208–09

(Iowa 2004) ("Antitrust is in place to protect the market, not any individual merchant doing business there. . . . Iowa Code chapter 553 simply does not provide a remedy for a private wrong.").

Finally, the Amended Complaint intimates loss of sales and profits flowing from the refusal of "Dollar Channel" customers to renew their contracts with Plaintiff. (*See* Am. Compl. ¶ 67.)  However, Plaintiff's lost sales and profits do not constitute an antitrust injury.  *See S. Dak. v. Kan. City S. Indus., Inc.*, 880 F.2d 40, 48–49 (8th Cir. 1989) (dismissing Section 1 claim because plaintiff's alleged injuries "flowed from the cancellation of the contract rather than from injury to competition"), *abrogated on other grounds*, *Warfield v. KR Entm't (In re Fed. Fountain)*, 165 F.3d 600 (8th Cir. 1999); *Gregory Mktg. Corp. v. Wakefern Food Corp.*, 787 F.2d 92, 96 (3d Cir. 1986) (no antitrust standing because lost future income would flow not from decreased competition in the applicable market but from termination of contract).

### 2.   The Amended Complaint Fails To State a Claim for Violation of Section 2 of the Sherman Act or § 553.5 of Iowa Competition Law.

The relevant headings in the Amended Complaint purport to allege attempted monopolization in violation of Sherman Act Section 2 and the analogous § 553.5 of Iowa Competition Law ("§ 553.5").  However, the allegations beneath those headings allege distinct and inconsistent federal and state causes of action of conspiracy to monopolize under Sherman Act Section 2, and an attempt to monopolize under § 553.5.  The incoherence of the Amended Complaint's purported and alleged claims is of no consequence, however, because Mahaska fails to adequately plead either conspiracy to monopolize or attempted monopolization in violation of federal or Iowa antitrust law.

### a)  Plaintiff Fails to Plead Conspiracy to Monopolize.

The Amended Complaint does not plead the elements of a conspiracy-to-monopolize claim under Section 2 of the Sherman Act:  "(1) the existence of a combination or conspiracy; (2) an overt act in furtherance of the conspiracy; and (3) specific intent to monopolize."  *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 5 F. Supp. 2d 694, 711 (D. Minn. 1998) (citing *Baxley-DeLamar Monuments, Inc. v. Am. Cemetery Ass'n*, 843 F.2d 1154, 1157 (8th Cir. 1988)). Instead, it simply asserts that "[b]y and through PBC, PepsiCo and DPSG have committed numerous acts in furtherance of their conspiracy to monopolize, including fixing prices below cost . . . ."  (Am. Compl. ¶ 179.)

As explained above, the Amended Complaint does not adequately allege a conspiracy among Defendants and Dr Pepper by either direct or circumstantial evidence.  *See supra* Section III.B.1.b.  Moreover, aside from conclusory assertions that Defendants sought "to drive Mahaska out of the market" (Am. Compl. ¶ 94; *see id*. ¶ 179) and "grab Mahaska's exclusive territory" (Am. Compl. ¶ 62), the Amended Complaint offers nothing to indicate that Defendants shared a specific intent to monopolize with Dr Pepper.[15]  *See Super Turf, Inc., v. Monsanto Co.*, 660 F.2d 1275, 1283 (8th Cir. 1981) (recognizing that to sustain a conspiracy-to-monopolize claim, a plaintiff must show that "the defendant's alleged co-conspirators . . . shared its specific intent to create a monopoly").  And it is implausible that Defendants and Dr Pepper would share an intent to monopolize.  Although Pepsi- and Dr Pepper-branded products might collectively account for more than 80% of carbonated soft-drink sales in the Mahaska Territories (Am. Compl. ¶¶ 98, 220), neither Defendants nor Dr Pepper is directly responsible for the sale of those products. Rather, PepsiCo and Dr Pepper are upstream concentrate companies and do not sell the

---

[15]   The Amended Complaint ascribes no intent to Dr Pepper beyond the conclusory statement that Defendants and Dr Pepper conspired "in an effort to drive competitors, including Mahaska, out of the market."  (Am. Compl. ¶ 179.)

downstream carbonated soft-drink products in the Mahaska Territories.  PBC distributes Pepsi-
and Dr Pepper-branded carbonated soft drinks only outside of the Mahaska Territories.  If there
is a carbonated soft-drink monopolist in the Mahaska Territories, it is Plaintiff—by its own
admission, the exclusive bottler and distributor of both Pepsi- and Dr Pepper-branded carbonated
soft drinks in the Mahaska Territories.[16]  (*See* Am. Compl. ¶ 17, 19, 69.)

### b)  Plaintiff Fails to Plead Attempt to Monopolize.

To prevail on an attempt-to-monopolize claim, a plaintiff must show "(1) a specific intent
by the defendant to control prices or destroy competition; (2) predatory or anticompetitive
conduct undertaken by the defendant directed to accomplishing the unlawful purpose; and (3) a
dangerous probability of success."  *HDC Med., Inc. v. Minntech Corp.*, 474 F.3d 543, 549 (8th
Cir. 2007) (internal quotation marks omitted)).   Here, the Amended Complaint does not
adequately plead any predatory or anticompetitive conduct by Defendants, or a dangerous
probability of success.

For the reasons noted above, *supra* at Section III.B.1.b, Plaintiff fails to plead a
conspiracy among Defendants and Dr Pepper, and its allegation of predation is implausible.  *See
supra* at Section III.B.1.d.

Similarly, Mahaska does not and cannot allege a "dangerous probability of success." This
requirement is "examined by reference to the offender's share of the relevant market."  *HDC*,
474 F.3d at 550 (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1181 (8th Cir. 1982)
(internal quotation marks omitted)).  But the Amended Complaint does not purport to define a

---

[16]  Plaintiff's claim for conspiracy to monopolize also fails because Plaintiff has not pleaded a relevant product
market.  *Carpenter Tech. v. Allegheny Techs.*, 646 F. Supp. 2d 726, 734 (E.D. Pa. 2009) ("The failure to plead a
relevant product market is fatal to [a conspiracy to monopolize] claim.")

relevant market for its claims under Section 2.[17]   Although it makes the cursory claim that "PepsiCo and DPSG together account for more than 50% of sales of CSD in the relevant market" (*see, e.g.*, Am. Compl. ¶¶ 175, 220), this claim is undermined by its concession that Plaintiff is the exclusive distributor of Pepsi- and Dr Pepper-branded carbonated soft drinks in the Mahaska Territories.   (Am. Compl. ¶ 17, 19, 69.)   Also, as set forth above, *supra* at Section III.B.2.a, Mahaska entirely fails to explain how Defendants could even theoretically achieve monopolization in a relevant market in which they do not participate—much less credibly allege a dangerous probability that Defendants could achieve a monopoly.

### 3.   The Amended Complaint Fails to Plead A Robinson-Patman Act Violation.

At best, the Amended Complaint's purported Robinson-Patman Act violation effectively amounts to a "price squeezing" claim (*see* Am. Compl. ¶¶ 153, 166–67), which the Supreme Court has refused to recognize as an independent right of action under the antitrust laws.   *See Pac. Bell Tele. Co. v. linkLine Commc'ns*, 555 U.S. 438, 452 (2009) (finding price-squeeze claim to be "nothing more than an amalgamation of a meritless claim at the retail level and a meritless claim at the wholesale level").

To state a claim for price discrimination under the Robinson-Patman Act, a plaintiff must plead facts sufficient to show (i) a difference in price between items of like grade and quality and (ii) resulting injury to competition.   *Conoco, Inc. v. Inman Oil Co.*, 774 F.2d 895, 901–02 (8th Cir. 1985) (citing *FTC v. Anheuser-Busch, Inc.*, 363 U.S. 536, 549–50 (1960)).   The difference in price must be between two actual sales to two different purchasers.   *Fusco v. Xerox Corp.*, 676

---

[17]   The Amended Complaint purports to define a relevant market only for purposes of its Section 1 and Robinson-Patman Act claims; for those claims, Plaintiff asserts that the relevant product market is "all Carbonated Soft Drinks – all branded, direct-store-door delivered carbonated soft drinks, and the branded concentrate used to produce branded, direct-store-door delivered carbonated soft drinks" and that the relevant geographic market "includes Iowa, Kansas, and Nebraska which include the Mahaska Territories."   (Am. Compl. ¶¶ 95-96.)   Although the Amended Complaint does not suggest that these allegations were intended to support Plaintiff's Section 2 claims, they are in any event insufficient to support those claims, for the reasons noted in Section III.B.2, *supra*.

F.2d 332, 334–35 (8th Cir. 1982).  A plaintiff may demonstrate injury to competition in one of two ways:  (i) by introducing direct evidence that "disfavored competitors lost sales or profits as a result of the discrimination," *Rose Confections, Inc. v. Ambrosia Chocolate Co., Div. of W.R. Grace & Co.*, 816 F.2d 381, 385 (8th Cir. 1987) (citing *Falls City Indus., Inc. v. Vanco Beverage, Inc.*, 460 U.S. 428, 437–38 (1983)), or (ii) by showing that the "favored competitor received a substantial price reduction over a substantial period of time." *Id.* (citing *FTC v. Morton Salt Co.*, 334 U.S. 37, 50–51 (1948)).  Such injury must be alleged to occur at one of three levels of competition:  "(1) competition with the seller who granted the discriminatory prices (primary line); (2) competition with the seller's purchaser who received the favorable lower price (secondary line); and (3) competition with a customer of the favored purchaser (tertiary line)." *Conoco*, 774 F.2d at 902–03.

The Amended Complaint does not adequately plead injury at any level of competition.  It does not: (1) purport to allege injury to competition in the supply of carbonated soft drink concentrate; (2) allege any favorable payments to Plaintiff's competitors; or (3) allege that any payments were made to downstream customers of one of Plaintiff's competitors (to the disadvantage of Plaintiff's own downstream customers).  Fundamentally, the Amended Complaint's claim that PepsiCo has national pricing arrangements with certain customers that violate the Robinson-Patman Act fails because Dollar General and Family Dollar are Plaintiff's customers, not its competitors or customers of its competitors.[18]

---

[18]   Even if proven, rebate payments made to Plaintiff's customers are inadequate to support a finding that any "favored *competitor* received a substantial price reduction over a substantial period of time."  *Compare Rose Confections*, 816 F.2d at 385 (emphasis added) (citing *Morton Salt*, 334 U.S. at 50–51) (plaintiff suffered anticompetitive injury where it was forced to reduce prices to its customers in response to low-price offers) *with Conoco*, 774 F.2d at 904 (no injury to competition because distributor plaintiff not in primary line competition with its supplier (the defendant)).

Nor does the unsupported allegation that PepsiCo may have "discriminatorily pric[ed]" concentrate to favor its own bottlers" (Am. Compl. ¶ 168) adequately plead a violation of the Robinson-Patman Act.   Internal transfers from a parent to its subsidiary are not considered "sales" for the purposes of the Robinson-Patman Act.   *City of Mt. Pleasant v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 278–79 (8th Cir. 1988) (finding it "anomalous" to disallow parents and subsidiaries to "enjoy the fruits of vertical integration by transferring goods between its constituent units at a 'price' below what it charges outsiders").   Finally, the Amended Complaint's alternative allegation—that Defendants engaged in predatory pricing—fails for the reasons discussed in Section III.B.b.ii.d, above.[19]

## C.   THE AMENDED COMPLAINT FAILS TO PLEAD A BREACH OF FIDUCIARY DUTY.

The Amended Complaint suffers from the same flaws as its predecessor with regard to Mahaska's breach of fiduciary duty claim—it fails to plead any facts to show a fiduciary relationship between PepsiCo and Mahaska.   Under Iowa law, "[a] fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."   *United Suppliers, Inc. v. Millard Feed Mill, Inc.*, No. 09-cv-107 (LRR), 2011 WL 219690, at *21 (N.D. Iowa Jan. 21, 2011) (quoting *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986)).   "Indicia of a fiduciary relationship include:  the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of

---

[19]   *See Brooke Grp.*, 509 U.S. at 222-24 ("Whether the claim alleges predatory pricing under § 2 of the Sherman Act or primary-line price discrimination under the Robinson–Patman Act, two prerequisites to recovery remain the same. First, a plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs . . . . The second prerequisite to holding a competitor liable under the antitrust laws for charging low prices is a demonstration that the competitor had a reasonable prospect [under the Robinson-Patman Act], or, under § 2 of the Sherman Act, a dangerous probability, of recouping its investment in below-cost prices.") (citations omitted).

one person by another; the inequality of the parties; and the dependence of one person upon another." *Id.* (quotation omitted).

Mahaska's sweeping and unsupported allegation that "Defendants" owed fiduciary duties to Mahaska "[u]nder the EBA" (Am. Compl. ¶ 208) is hopelessly flawed. As to PBC, this claim makes no sense because PBC is not a party to any of the EBAs attached to the Amended Complaint. As to PepsiCo, it also fails because those EBAs do nothing more than set forth the terms of a supplier-distributor relationship. No Iowa court has recognized a fiduciary relationship between a supplier and its distributor, and the Eighth Circuit has consistently held that such relationships are not fiduciary in nature. *See, e.g.*, *W.K.T. Distrib. Co. v. Sharp Elecs. Corp.*, 746 F.2d 1333, 1336 (8th Cir. 1984) (no fiduciary relationship under Minnesota law where "the parties, as a result of arm's length negotiations, entered into an ordinary supplier-distributor relationship"); *Bain v. Champlin Petroleum Co.*, 692 F.2d 43 (8th Cir. 1982) (rejecting argument that a manufacturer-distributor relationship implicitly creates a "fiduciary" relationship under Missouri law).[20] Because the Amended Complaint offers no facts that warrant the recognition of anything other than an arm's length relationship between sophisticated business entities, Mahaska's fiduciary duty claim should be dismissed.

In a tortured effort to establish a fiduciary relationship, Mahaska relies on a single sentence in the "Rule of 94" Letter (the "94 Letter") that refers to PepsiCo making headquarters

---

[20]   Consistent with these rulings, other courts also have recognized that the relationship between a franchisor and franchisee standing alone does not give rise to fiduciary duties. *See Franklin Park-Lincoln-Mercury, Inc. v. Ford Motor Co.*, 530 Fed. Appx. 542, 546-47 (6th Cir. 2013) (fiduciary relationship does not exist between a franchisor and franchisee in the absence of a mutual agreement or other special circumstances), *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1267-68 (10th Cir. 2005) (describing the franchisor-franchisee relationship as an "arms-length, commercial one" in which no fiduciary relationship can be implied), *Boat & Motor Mart v. Sea Ray Boats, Inc.*, 825 F.2d 1285, 1292 (9th Cir. 1987) ("the relation between a franchisor and franchisee is not that of a fiduciary to beneficiary"), *Bain v. Champlain Petroleum Co.*, 692 F.2d 43, 47-48 (8th Cir. 1982) (grant of a franchise insufficient to impose fiduciary duties on  franchisor); *see also Jimmy Dan, Inc. v. Chrysler Credit Corp.*, 643 F. Supp. 368, 369 (W.D. Mo. 1986) (dismissing breach-of-fiduciary-duty claim because "Missouri law is quite clear that no fiduciary relationship exists between a franchisor and franchisee").

calls to national chain bottle and can retailers "on behalf of" its bottlers.  (Am. Compl. ¶ 206 & Ex. C at 2.)  Seizing upon the "on behalf of" language in the 94 Letter, Mahaska contends that "PepsiCo claimed for its (sic), and was thus reposed with the trust and confidence to decide whether and how to negotiate prices" with the national chains.  (Am. Compl. ¶ 207.)  But this interpretation makes sense only if PepsiCo had the authority to require its bottlers to offer or sell at any particular price.  It did not and does not.  To the contrary, as Mahaska itself alleges, "PepsiCo cannot compel an independent bottler, such as Mahaska, to offer PepsiCo's products at any specific price." (Am. Compl. ¶ 32.)  Consistent with this allegation, the 94 Letter expressly gave the bottlers the "freedom to decide whether to participate" in any national pricing program. (Am. Compl., Ex. C at 2.)   And Mahaska freely admits that it "does not agree blindly to participate" in such programs.  (Am. Compl. ¶ 35.)  Mahaska's own allegations thus belie any credible claim that PepsiCo exercised "dominance" over Mahaska, thus foreclosing Mahaska's breach of fiduciary duty claim.  *See United Suppliers,* 2011 WL 219690, at \*21; *see also Franklin*, 530 Fed. Appx. at 548-59 (no fiduciary relationship between defendant-manufacturer and plaintiff-distributor where distributor was granted a "fair amount of autonomy on advertising, staffing, the purchase and sale of used cars, the ability to sell cars outside of its market area"); *Emp'rs Mut. Cas. Co. v. Collins & Aikman Floorcoverings, Inc.*, 422 F.3d 776, 781–82 (8th Cir. 2005) (no fiduciary relationship where no evidence that one party dominated the other); *Minn. Timber Producers Ass'ns v. Am. Mut. Ins. Co.*, 766 F.2d 1261, 1268 (8th Cir. 1985) (no fiduciary relationship where no evidence that defendant "enjoyed superior or excessive influence over" plaintiff); *Arnott v. Am. Oil Co.*, 609 F.2d 873, 891 (8th Cir. 1979) (no fiduciary relationship where parties "served the interests of the other, but each also quite properly sought its own interests").

**D.**   **THE AMENDED COMPLAINT FAILS TO IDENTIFY ANY STATEMENT BY DEFENDANTS TO SUPPORT A DEFAMATION OR DISPARAGEMENT CLAIM.**

Mahaska's business defamation / disparagement claim fares no better.  As a threshold matter, the Supreme Court of Iowa does not appear to have recognized an independent cause of action for business disparagement.  *Auto-Owners Ins. Co. Inc. v. Noyes*, No. C69-0061, 1997 WL 33558631, at *7 (N.D. Iowa Jan. 14, 1997) ("While Iowa law provides a cause of action for libel and slander, it does not provide a specific cause of action denominated disparagement.").  But, assuming that the Iowa Supreme Court would recognize such an action, the Amended Complaint makes clear that the sole factual predicate for Mahaska's business defamation / disparagement claim is a third-party statement concerning Mahaska's conceded unwillingness to meet certain national chain prices.  (*See* Am. Compl. ¶ 63.)  This cannot be enough because stating a claim for defamation under Iowa law requires a plaintiff to allege that the *defendant* "'(1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff.'"  *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996).  "Publication is an essential element of defamation" and requires "a communication of statements to one or more third persons."  *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221-22 (Iowa 1996); *see also Doe v. Hagar*, 765 F.3d 855, 861 (8th Cir. 2014).

In light of these requirements, Mahaska's reliance on an internal Family Dollar communication from "Store Ops Communications" to an unidentified Family Dollar Store to support its defamation claim is misplaced.  (*See* Am. Compl. ¶ 226 & Ex. D (addressed to store "1 of 67").)  The author of the statement at issue is Family Dollar—not the Defendants.  There is no attribution of the information contained in the statement to anyone at PepsiCo or PBC, and no basis to infer that the information originated at PepsiCo or PBC.  In short, the Amended Complaint fails to identify a single statement made by either Defendant that could be

characterized as defamatory, and also fails to specify when or how any such statement was published to external third parties. As a result, Mahaska's claim cannot survive dismissal. *Van Stelton v. Van Stelton*, No. C11–4045–MWB, 2013 WL 3776813, at *19 (N.D. Iowa July 17, 2013) at *19 (dismissing libel and slander claim where Complaint did not contain any alleged statements that were made by defendants, or specify when the statements were published).[21]

### E. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER THE LANHAM ACT.

In a final attempt to transform its breach of contract claim into something it is not, Mahaska alleges that the use of the PepsiCo trademark in Mahaska territories by PBC—a wholly owned subsidiary of PepsiCo—somehow violated the Lanham Act. (*See* Am. Compl. ¶¶ 3, 235-240.) This claim stands federal trademark law on its head. The Lanham Act protects registered trademarks "by making actionable the deceptive and misleading use of marks" in commerce. 15 U.S.C. § 1127. It does not give licensees the ability to limit a trademark owner's use of its own marks. *See Westowne Shoes, Inc. v. Brown Gp., Inc.*, 104 F.3d 994, 997 (7th Cir. 1997) (noting licensee "cannot sue the trademark owner for 'infringing' the trademark" and finding "[t]here is no basis in either the federal or the state law of unfair competition for such a claim"); *Coyne's & Co. v. Enesco, LLC*, Civil No. 07-4095, 2010 WL 3269977, at *15 (D. Minn. Aug. 16, 2010) ("A trademark owner cannot be sued under § 1125(a) because the owner is the originator of the trademarks").

---

[21] Even if Mahaska had some right to sue PepsiCo and PBC for a statement made by a third party – it does not – its claim would still be vulnerable because Iowa law recognizes "substantial truth as a defense in a defamation action." *Behr v. Meredith Corp.*, 414 N.W.2d 339, 342 (Iowa 1987). In asserting the defense, "[d]efendants are not required to establish the literal truth of every detail of the publication, as long as the 'sting' or 'gist' of the defamatory charge is substantially true." *Campbell v. Quad City Times*, 547 N.W.2d 608, 610 (Iowa Ct. App. 1996). Here, the allegedly defamatory statement states, "Your local Pepsi bottler is unwilling to do business with Family Dollar due to our aggressive pricing," and the Amended Complaint concedes that such pricing "cannot be met by Mahaska." (Am. Compl. ¶ 63.) If anything, Mahaska's own allegation suggests that the statement at issue is substantially true.

Indeed, Mahaska's inability to restrict PepsiCo's use of its own marks even within Mahaska's distribution territories was expressly acknowledged by Mahaska in the parties' agreements.  The EBAs annexed to the Amended Complaint contain Mahaska's agreement that *PepsiCo* "has the recognized right to the use of the name and trade mark 'Pepsi.'"  (Am. Compl. Ex. A, 1948 Pepsi EBA (Iowa) ¶ 11; 1964 Diet Pepsi EBA (Iowa) ¶ 15; 1965 Mountain Dew EBA (Iowa) ¶ 15.)  Similarly, in the Syrup Appointment, Mahaska acknowledged that Pepsi "is the owner of the trade-marks 'Pepsi-Cola' and 'Pepsi'" and that "[n]othing herein contained shall be construed as conferring upon [Mahaska] any right or interest in said trade-marks . . . ."  (Am. Compl., Ex. A, Syrup Appointment ¶ 12.)  Moreover, if an independent bottler like Mahaska could restrict PepsiCo's use of its own marks it would require the absurd result that PepsiCo would be unable to advertise during nationally televised events like the Superbowl without risking an onslaught of infringement claims from its independent bottlers.  Finally, even if Mahaska's Lanham claim had some valid basis in law—it does not—the claim would still fail because Mahaska has not pleaded any facts to establish actual or likely customer confusion.  A false designation of origin under 15 U.S.C. § 1125(a)(1)(A)[22] "occurs when another's use of the same or similar mark actually confuses, or is likely to cause confusion among consumers as to the source of the product."  *Co-Rect Prod., Inc. v. Marvy! Advert. Photography, Inc.*, 780 F.2d 1324, 1330 (8th Cir. 1985).  The Amended Complaint does not allege any instance where PepsiCo's use of its own brand confused a single customer, and the suggestion that PepsiCo's use of its own brand will confuse PepsiCo customers is nonsensical.  Thus, even when viewed in

---

[22]   Mahaska purports to bring this claim under "Section 1125(a)" of the Lanham Act, which establishes both false designation of origin claims under Section 1125(a)(1)(A) and false advertising claims under Section 1125(a)(1)(B). 15 U.S.C. § 1125(a).  Although Mahaska fails to specify which subsection supports its Lanham Act claim—and neither do—we presume that Mahaska intends to assert a false designation of origin claim because the Amended Complaint quotes the language of subsection (1)(A) (*see* Am. Compl. ¶ 237) and makes no reference to any commercial advertising of any nature.

the light most favorable to Mahaska, the Amended Complaint falls far short of giving rise to a plausible inference of actual or potential consumer confusion.[23]

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that Counts III, IV, and VI through X of the First Amended Complaint be dismissed with prejudice.

/s/Linda H Martin
Linda H. Martin
Freshfields Bruckhaus Deringer US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10011
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
E-mail: linda.martin @freshfields.com

Thomas Ensign
Freshfields Bruckhaus Deringer US LLP
700 13th Street NW, 10th Floor
Washington, DC 20005
Telephone: (202) 777-4500
Facsimile: (202) 777-4555
E-mail: thomas.ensign@freshfields.com

Ryan G. Koopmans (AT0009366)
NYEMASTER GOODE P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309
Telephone: (515) 283-3100
Facsimile: (515) 283-3108
Email:  rkoopmans@nyemaster.com

**ATTORNEYS FOR DEFENDANTS
PEPSICO, INC. and BOTTLING
GROUP, LLC**

---

[23]  To the contrary, accepted as true, Mahaska's own allegations show that whatever complaints consumers have made about the use of the Pepsi brand in Mahaska's territories were directed to PepsiCo.  (Am. Compl. ¶ 238.) Thus, there is no credible basis for Mahaska's contention that the PepsiCo brand is "inseparable from Mahaska." (Id. ¶ 235.)