UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

------------------------------------------------------------------ x
MAHASKA BOTTLING COMPANY, INC.     :
    :
        Plaintiff,     :
    :
        v.     : Civil Action Docket
    : No. 4:16-cv-00114-JEG-SBJ
PEPSICO, INC. and BOTTLING GROUP, LLC,     :
    :
        Defendants.     :
    :
------------------------------------------------------------------ x

**RULE 26(f) STIPULATION AND PROPOSED
ORDER REGARDING DISCOVERY PROTOCOLS**

WHEREAS, the above action, brought by Mahaska Bottling Company, Inc. (Plaintiff) against PepsiCo, Inc. and Bottling Group, LLC (Defendants) is pending before this Court;

WHEREAS, the parties recognize that certain documents and electronically stored information ("ESI") are relevant to the parties' claims and defenses in this action and the parties have engaged in discussions regarding the identification and production of such documents and ESI; and

WHEREAS, the parties have also engaged in discussions regarding the scope of discovery and the subjects on which discovery may be needed in this matter;

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES, THROUGH THEIR RESPECTIVE COUNSEL, AS FOLLOWS:

**I. GUIDING PRINCIPLES FOR DISCOVERY PRIOR TO RESOLUTION OF DEFENDANTS' MOTION TO DISMISS**

    A.    The parties agree that, for so long as Defendants' motion to dismiss all claims except breach of contract and tortious interference (ECF No. 28, 31, 43) ("Motion to Dismiss") remains pending and unresolved, discovery shall focus on whether Plaintiff may properly bring its breach of contract claims on behalf of a class, the

        merits of Plaintiff's individual breach of contract claim against Defendants, and the merits of Plaintiff's tortious interference claim.

    B.     The parties acknowledge that certain categories of discovery may be relevant to more than one issue, claim or defense, including claims that are the subject of the Motion to Dismiss. Provided that the predominant purpose of a category of discovery is related to the topics specified in I.A. above, such discovery may proceed while the Motion to Dismiss is pending.

    C.     The parties further acknowledge that it is not possible to specify the precise categories or types of documents that will fall within or outside of the guiding principles set forth above. They agree to meet and confer in good faith as to the scope of any discovery request issued prior to the resolution of the Motion to Dismiss.

## II. INITIAL DISCLOSURES

    A.     Initial disclosures shall proceed in accordance with the guiding principles set forth above, with an initial focus on Plaintiff's individual breach of contract and tortious interference claims and Defendants' defenses thereto.

    B.     The parties shall exchange initial disclosures focusing on the merits of Plaintiff's individual breach of contract and tortious interference claims on or before January 15, 2017.

    C.     Following the resolution of Defendants' Motion to Dismiss, the parties shall exchange a second set of initial disclosures that focus on any of Plaintiff's claims that remain pending following the resolution of that motion, Defendants' defenses thereto, Defendants' counterclaims, and Plaintiff's defenses thereto.

    D.     The parties shall meet and confer in good faith to determine a date for the exchange of the second set of initial disclosures described in II.C above following the resolution of Defendants' Motion to Dismiss.

## III. TIMING OF DISCOVERY PRIOR TO RESOLUTION OF DEFENDANTS' MOTION TO DISMISS

    A.     Initial requests for production of documents consistent with the guiding principles set forth above shall be served by January 27, 2017.

    B.     The parties shall confer as to all other types of allowable discovery (*e.g.*, depositions, interrogatories) and discovery limitations, and attempt to negotiate a schedule for such discovery by February 3, 2017.

IV. **INITIAL DEADLINES**

    A. The below deadlines concerning motions to amend the pleadings are intended solely to limit the party's right to add additional claims and/or counterclaims, and are without prejudice to any party's right to seek leave to amend its pleading to conform to the evidence produced in discovery.

        1. Any motion by Plaintiff for leave to amend to add additional claims, or for Defendant to amend any answer and counterclaims, under Rule 15 of the Federal Rules of Civil Procedure shall be filed within 6 months following the issuance of an order deciding Defendants' Motion to Dismiss, provided that notwithstanding the foregoing, Defendants shall have thirty days from the filing of any amended complaint to file a motion to dismiss or amended answer and counterclaims.

        2. Defendants' initial Answer and Counterclaims ("Answer and Counterclaims") shall be filed within 30 days of a decision on Defendants' Motion to Dismiss.

        3. Nothing herein shall restrict or limit Defendants' right to amend its Answer and Counterclaims once as of right as provided in the Federal Rules of Civil Procedure.

    B. The deadline for motions to add parties shall be March 3, 2017.

V. **MOTION FOR CLASS CERTIFICATION**

    A. Moving papers, including any supporting declarations or evidentiary submissions, shall be due by July 14, 2017.

    B. Opposition papers, including any supporting declarations or evidentiary submissions, shall be due by August 18, 2017.

    C. Reply papers, including any supporting declarations or evidentiary submissions, shall be due by September 8, 2017.

VI. **PRESERVATION**

Each party will take reasonable and good faith steps to prevent the loss, destruction, alteration, overwriting deletion, shredding, incineration, or theft of any document or data the party knows, or reasonably should know, falls within the scope of Fed. R. Civ. P 26(b)(i). This includes all relevant documents and data in the party's possession, custody or control.

VII. **PRODUCTION FORMAT OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

    A. <u>Paper Documents</u>: The parties will produce paper documents according to the

following protocol:

1. All paper documents shall be produced as TIFF images with a cross-referenced load file, according to the specifications set forth in Section V.B. hereto. The TIFF images will be accompanied by an optical character recognition ("OCR") text file, to the extent OCR text can be generated for each paper document. The producing and receiving parties shall each bear their own costs associated with generating OCR versions of the TIFF images.

2. The parties agree to search for and review paper documents by the application of search terms, agreed upon by the parties or ordered by the Court, in accordance with the protocol for the application of search terms to ESI set forth herein. The parties agree to make a reasonable, good faith effort to identify for manual review and production any paper documents for which search terms cannot reliably be applied.

3. The following production fields associated with each paper document will be provided:

   1) FIRSTBATES
   2) LASTBATES
   3) BEGATTACH
   4) ENDATTACH
   5) PARENT_ID
   6) ATTACHMENT_ID
   7) ATTACHMENT_COUNT
   8) CUSTODIAN
   9) PAGE_COUNT
   10) CONFIDENTIAL (*TO THE EXTENT DOCUMENTS HAVE BEEN DESIGNATED AS SUCH*)
   11) TEXT (*LOCATION TO THE TEXT FILE*)

B. Electronically Stored Information: The parties will produce ESI according to the following protocol:

1. Except as provided in Section V.D herein, all ESI shall be produced in TIFF format. Each TIFF version of an electronic document will be created directly from the corresponding native file. All TIFF formatted documents will be single page, black and white, Group 4 TIFF at 300 X 300 dpi resolution and 81/2 X 11 inch page size, except for documents requiring different resolution or page size.

2. A unitization file, in standard format (*e.g.*, Concordance, Concordance Image, Summation DII, or the like) showing the Bates number of each page, the appropriate unitization of the documents and the entire family range, will accompany each TIFF document.

3. The parties and their respective vendors shall coordinate regarding the specifics of the load file formatting.

4. Each document that is searchable in its native state (*e.g.*, .msg, .xls, .doc files) shall be produced with the extracted text from the body of the document as an accompanying text file. Each document that is not searchable in its native state (*e.g.*, (*e.g.*, non-searchable .pdf, .jpg, .tif images) shall be produced with an accompanying optical character recognition ("OCR") text file, to the extent that OCR text can be generated for the document. Redacted documents shall be produced with an accompanying OCR text file that does not contain the redacted text.

5. Each party shall bear the costs associated with generating OCR text files for documents in its production.

6. The following metadata and production fields associated with each electronic document shall be provided:

   1) FIRSTBATES
   2) LASTBATES
   3) BEGATTACH
   4) ENDATTACH
   5) PARENT_ID
   6) ATTACHMENT_ID
   7) ATTACHMENT_COUNT
   8) FILE_NAME
   9) FILE_EXTEN
   10) CUSTODIAN
   11) ALL CUSTODIANS (*GENERATED BEFORE DEDUPLICATION PROCESS*)
   12) PATH
   13) AUTHOR
   14) FROM
   15) TO
   16) CC
   17) BCC
   18) SUBJECT
   19) TITLE
   20) NATIVE_LINK (*LOCATION TO NATIVES TO THE EXTENT NATIVE FILES HAVE AGREED TO BE PRODUCED*)
   21) PARENT_DATE (*EMAILS AND ATTACHMENTS FOR CHRON SETTING*)
   22) DATE_CREATED (*NON-EMAILS*)
   23) TIME_CREATED (*NON-EMAILS*)
   24) DATE_MOD (*NON-EMAILS*)
   25) TIME_MOD (*NON-EMAILS*)
   26) DATE_SENT

      27)     TIME_SENT
      28)     DATE_RECEIVED
      29)     TIME_RECEIVED
      30)     DATE_PRINT (*NON-EMAILS*)
      31)     TIME_PRINT (*NON-EMAILS*)
      32)     PAGE_COUNT
      33)     CONFIDENTIAL OR HIGHLY CONFIDENTIAL (*TO THE EXTENT DOCUMENTS HAVE BEEN DESIGNATED AS SUCH*)
      34)     MD5HASH (*TO IDENTIFY ORIGINAL DOCUMENT*)
      35)     CONVER_INDEX (CONVERSATION THREAD ID/INDEX VALUE)
      36)     ENTRYID (UNIQUE IDENTIFIER OF E-MAIL IN MAIL STORES)
      37)     INTMSGID (INTERNET MESSAGE ID ASSIGNED TO AN E-MAIL MESSAGE BY THE OUTGOING MAIL SERVER)
      38)     TEXT (*LOCATION TO THE TEXT FILE*)

C. <u>Discovery Not Required</u>: In the first instance, discovery shall not be required for the following categories of ESI, but the parties each reserve their rights to require that the categories below be searched:

1. Data duplicated in any electronic backup system for the purpose of system or disaster recovery or information restoration that is not reasonably accessible because of undue burden or cost including, but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten, or otherwise made not reasonably accessible;

2. Nontranscribed voicemail messages;

3. Instant messages;

4. Text messages, such as cell phone to cell phone SMS messages;

5. Electronic mail sent to or from a personal digital assistant (PDA) or smartphone (*e.g.*, BlackBerry) if the relevant data is synced to a network that will be collected in discovery;

6. Other electronic data stored on a PDA or smart-phone, such as calendar or contract data or notes;

7. Logs of calls made from cellular phones;

8. Deleted computer files, whether fragmented or whole;

9. Data stored in random access memory (RAM), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

      10.     Data stored on photocopiers, scanners, and fax machines;

      11.     Server, system, or network logs; and

      12.     Data in metadata fields that are frequently updated automatically, such as last-opened dates.

D.     <u>Production of Native Files</u>:

      1.     The parties agree that documents will be produced in the imaged format as set forth in Section V.B. hereto and that no requesting party may request or seek to compel the production of ESI in native format on a wholesale basis.

      2.     Microsoft Excel files, PowerPoint files, and other spreadsheets, audio, video, database type files, and other files that cannot reasonably be converted to TIFF image format, shall be produced in native file format in a separate folder on the production media, and the text load file shall contain a field that identifies the file path of the native file corresponding to each document. Any produced native files will be assigned a unique file name corresponding to the Bates number. For documents produced in native format, there will also be a placeholder TIFF image with the Bates number of the document produced in native format, stating "Document Produced in Native Format." The parties reserve the right to request additional documents in native format if it is determined that documents are not readable or usable in .tiff format.

E.     <u>De-duplication</u>:

      1.     The parties agree to utilize reasonable de-duplication procedures and that each party will disclose the methodology they used to de-duplicate (*e.g.*, MD5 Hashing, SHA-1).

      2.     The parties are not required to produce multiple instances of an electronic message sent to multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients) can be identified from documents or electronically stored information produced pursuant to the protocol set forth herein. Where a subsequent electronic mail message contains all of the portions of an earlier message that was produced, it is not necessary for a producing party to produce the earlier message in addition to the subsequent inclusive message. If the subsequent inclusive message does not include an attachment to an earlier message, the attachment must also be produced pursuant to the protocol set forth herein, in addition to the subsequent inclusive message.

      3.     The parties agree that an email that includes content in the "bcc" or other blind copy field shall not be treated as a duplicate of an email that does not include content in the "bcc" or other blind copy field, even if all remaining

content in the email is identical.

F. Production Media:

The parties shall produce documents in an electronic form on CD-ROM, DVD, external hard drive, or such other readily accessible computer or electronic media as the parties may hereafter agree upon (the "Production Media"). Information that shall be identified on the physical Production Media shall include: (1) a reference to the above-captioned litigation, (2) the producing party's name, and (3) the production date. The Bates number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter. If the producing party encrypts or "locks" the production, the producing party shall include with the production an explanation of how to decrypt the files.

## VIII. IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI

A. Custodians:

1. The parties shall meet and confer on a list of Defendants' custodians whose hard copy documents and ESI will be searched for responsiveness to Plaintiff's document requests, subject to Defendant's objections to the document requests, and a list of Plaintiff's custodians whose hard copy documents and ESI will be searched for responsiveness to Defendants' document requests, subject to Plaintiff's objections to the document requests.

2. The parties understand and agree that they will only search for documents within their respective possession, custody or control with respect to the custodians identified in the lists described in Section VII.A.1 above.

3. The parties shall meet and confer on the relevant time frame to be searched for each custodian whose hard copy documents and ESI will be searched.

B. Search Terms:

1. The parties shall meet and confer on search terms to be used to identify electronic documents that will be reviewed for possible production.

2. Search terms will be run against all ESI collected from agreed-upon custodians, including emails and their attachments. If a search term returns an email or an attachment to an email, both the email and any attachment(s) will be reviewed and produced, if responsive and non-privileged, and subject to the parties' objections to discovery requests and any agreements reached in the parties' meet-and-confer process.

3. Subject to the parties' agreement, or Court Order, regarding the scope of

        Plaintiff's or Defendant's document requests, the agreed-upon search terms shall be used to identify ESI and paper documents that will be reviewed for responsiveness to Plaintiff's or Defendant's discovery requests, and produced if responsive and non-privileged subject to and without waiver of a party's objections to the opposing parties' discovery requests and to any agreements reached in the parties' meet-and-confer process.

4. A party's obligation to conduct a reasonable search for documents in response to propounded discovery requests shall be deemed to be satisfied by reviewing documents that are captured by utilizing the agreed-upon search terms to be applied to ESI and paper documents from agreed-upon custodians. Furthermore, a party shall have no obligation to produce any documents, except as otherwise agreed to in writing by the parties, that are not either (a) captured by one or more of the agreed-upon search terms to be applied to ESI and paper documents of agreed-upon custodians and identified as non-privileged and responsive to a specific propounded discovery request or (b) otherwise identified by the party as non-privileged and responsive to a specific propounded discovery request.

5. The fact that a document is captured by application of agreed-upon search terms from agreed-upon custodians does not mean that such document is responsive to any propounded discovery request or otherwise relevant to this litigation. Propounded discovery requests shall govern the scope of documents to be produced, subject to the parties' objections and any agreements reached in the parties' meet-and-confer process.

6. If any party seeks to modify agreed-upon search terms, that party will notify the opposing parties prior to any modification.

7. Within 10 business days of being notified of any proposed modified search terms, an opposing party shall have the right to object to the use of such search terms.

8. The parties will then meet and confer regarding the proposed modified search terms, and if the parties are unable to agree about the use of the search terms within 10 business days of submission of the opposing party's objection(s), the parties will submit the matter to the Court.

9. The parties will make reasonable efforts to identify any potentially relevant ESI that is password protected or encrypted and undertake to remove those passwords in order that the search terms can be run against that ESI and it can be reviewed. If a party's efforts are unsuccessful, that party shall identify the file(s) at issue to the receiving party. The parties are not required to provide information on passwords obtained or the manner with which password-protected or encrypted files were made accessible.

## IX.  PROTECTIVE ORDER

The parties agree that a protective order should be entered in this case to protect the confidential information of both parties.  Although agreement as to the specific terms of such an agreement has not yet been reached, the parties agree in principle to the existence of a non-waiver (or "claw back") provision preserving the privileged status of inadvertently produced information.  Once agreement as to the specific terms of a protective order is reached, the parties will submit a Stipulation and [Proposed] Protective Order for the Court's consideration.

## X.  PROTECTION OF PRIVILEGES AND WORK PRODUCT IMMUNITY

A.  The prosecution and defense of this action will require each party to review and to disclose, through the discovery process, potentially large quantities of information and documents, including ESI.  As a result, the parties agree that record-by-record pre-production privilege review, and logging of individual privileged documents, would likely impose an undue burden on the parties' resources and is not required.

  1.  The parties agree that it is presumptively proper to log privileged documents in groups or by categories when asserting privilege on the same basis with respect to multiple documents. The parties also agree that they are not required to include on their privilege logs any protected documents that came into existence on or after the date of the filing of the initial Complaint in this action.

  2.  Privilege logs will identify e-mail chains as a single entry and note that they are chains, as long as all persons participating in the chains are identified.

  3.  The parties agree that privilege logs and supplements thereto should be provided no later than ninety (90) days following the production from which privileged documents are withheld.

B.  Each party shall examine the files containing documents to be produced and shall screen documents for privilege.  Such examination shall be performed with due regard for the likelihood that the files contain privileged documents.  It may involve record-by-record review of potentially privileged documents, but it may also involve or rely on sampling or electronic searching.

C.  Each party agrees that if electronically stored information that contains privileged matter or attorney work product has been produced, the electronically stored information shall be immediately returned to the producing party and permanently deleted from all media on which such electronically stored information was stored within 14 days of the receiving party's discovery of the protected information or receipt of notice from the producing party of the inadvertent production.  The receiving party shall provide written certification of compliance with this directive within 14 days of discovery or notice of such inadvertent production.

    D.      If the producing party claims that only a portion of the document is privileged, the producing party shall provide, along with the notice of the claim of privilege, a new copy of the document with the allegedly privileged portions redacted.

    E.      The parties' stipulations and this Order invoke the protections afforded by Fed. R. Evid. 502(d). As used in this Order, "privilege" means both the attorney-client privilege and the work-product immunity doctrine. Pursuant to Fed. R. Evid. 502(d), the disclosure of privileged information or documents in discovery — consistent with the terms of the parties' stipulation and this Order — shall not waive the claim of privilege or protection in this proceeding or in any other federal or state proceeding.

## XI.   SETTLEMENT

The parties will continue to seek to resolve this matter amicably through negotiations. In the event that a settlement is reached, the parties shall promptly notify the Court of the same.

## XII.   MEET AND CONFER

The parties shall act in good faith to meet and confer periodically to formulate, validate and, if necessary, refine search terms, search protocols, date restrictions, discovery limitations, and custodians for email messages and other ESI.

Dated:   December 8, 2016

By: _____  
Johannes (John) H. Moorlach  
WHITFIELD & EDDY, PLC  
699 Walnut Street, Suite 2000  
Des Moines, IA 50309  
Telephone: (515) 246-5501  
Fax: (515) 246-1474  
Email: moorlach@whitfieldlaw.com  

Jason H. Friedman  
FRIEDMAN & FEIGER, LLP  
5301 Spring Valley Road, Suite 200  
Dallas, TX 75254  
(972) 788-1400  
Fax: (972) 788-2667  
Email: jhfriedman@fflawoffice.com  

Mazin A. Sbaiti  
Sbaiti & Company PLLC  
5307 Mockingbird Lane, Fifth Floor  
Dallas, TX 75206  
(214) 432 2899  
Fax: (214) 853-5367  
Email:  sbaitiandcompany@gmail.com  

***ATTORNEYS FOR PLAINTIFF***  
***MAHASKA BOTTLING COMPANY INC.***

By: _____  
Linda H. Martin  
Freshfields Bruckhaus Deringer US LLP  
601 Lexington Avenue, 31st Floor  
New York, NY 10011  
Telephone: (212) 277-4000  
Facsimile: (212) 277-4001  
E-mail: linda.martin@freshfields.com  

Thomas Ensign  
Freshfields Bruckhaus Deringer US LLP  
700 13th Street NW, 10th Floor  
Washington, DC 20005  
Telephone: (202) 777-4500  
Facsimile: (202) 777-4555  
E-mail: thomas.ensign@freshfields.com  

Ryan G. Koopmans (AT0009366)  
NYEMASTER GOODE P.C.  
700 Walnut Street, Suite 1600  
Des Moines, IA 50309  
Telephone: (515) 283-3100  
Facsimile: (515) 283-3108  
Email:  rkoopmans@nyemaster.com  

***ATTORNEYS FOR DEFENDANTS***  
***PEPSICO, INC. and BOTTLING GROUP, LLC***

## CERTIFICATE OF SERVICE

    I hereby certify that on **December 8, 2016**, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which shall provide notice to counsel who have entered their respective appearances for the parties.

                                              s/ Johannes H. Moorlach