IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MAHASKA BOTTLING COMPANY, INC.; PEPSI-COLA BOTTLING COMPANY OF SALINA, INC.; and PEPSI-COLA BOTTLING COMPANY OF NORFOLK, INC., | |
|       Plaintiffs, | |
| vs. | |
| PEPSICO, INC.; and BOTTLING GROUP, LLC, | **No. 4:16-cv-00114–JEG-SBJ** |
|     Defendants. | |
| | **ORDER** |
| PEPSICO, INC., | |
|     Counterclaim Plaintiff, | |
| vs. | |
| MAHASKA BOTTLING COMPANY, INC.; PEPSI-COLA BOTTLING COMPANY OF SALINA, INC.; and PEPSI-COLA BOTTLING COMPANY OF NORFOLK, INC., | |
|     Counterclaim Defendants. | |

This matter comes before the Court on three separate motions to exclude expert testimony. First, Defendants PepsiCo, Inc. (PepsiCo) and Bottling Group, LLC d/b/a Pepsi Beverage Company (PBC) (collectively, Defendants) filed a Motion to Exclude the Expert Opinions and Testimony of Eric Engstrom, ECF No. 137. Plaintiffs Mahaska Bottling Company, Inc., Pepsi-Cola Bottling Company of Salina, Inc., and Pepsi-Cola Bottling Company of Norfolk, Inc. (collectively, Plaintiffs or Mahaska) filed a Motion to Exclude Defendants' Expert Lucy Allen, ECF No. 139, and a Motion to Exclude Defendants' Expert Michael Bellas, ECF No. 140. The opposing parties in all three motions resist. No party requested a hearing, and the Court finds that none is necessary.

## I.      BACKGROUND

The circumstances of this litigation have been summarized in the Court's prior orders and will not be repeated in detail here.  Both parties have asserted various claims and counterclaims against the other based on a half-century-long business relationship.  On August 26, 2019, the Court entered an order on the parties' motions for summary judgment, ECF No. 300.  For the reasons set forth therein, the Court dismissed the following claims:

1. Mahaska's Count I (only as to Breach of Contract: Territorial Exclusivity Under the EBAs and Mahaska's Right to Price),
2. Mahaska's Count II (Breach of Contract: Syrup and Concentrate Pricing),
3. Mahaska's Count III (Breach of Contract: Syrup and Concentrate Pricing),
4. Mahaska' Count IV (Breach of Duty of Good Faith and Fair Dealing), and
5. Mahaska's Count V (Tortious Interference only as to DPSG and PBC).
6. PepsiCo's Counterclaim II (Breach of Implied Covenant),
7. PepsiCo's Counterclaim III (Unjust Enrichment),
8. PepsiCo's Counterclaim IV (Conversion), and
9. PepsiCo's Counterclaim VI (Unjust Enrichment).

The following claims remain:

1. Mahaska's Count I (only as to Breach of Contract: Paragraph 8 "Offers" and Big Bets Program) and
2. Mahaska's Count V (Tortious Interference only as to Dollar General and Family Dollar).
3. PepsiCo's Counterclaim I (Breach of 1985 Agreement),
4. PepsiCo's Counterclaim V (Breach of Paragraph 8),
5. PepsiCo's Counterclaim VII (Breach of Implied Covenant), and
6. PepsiCo's Counterclaim IX (Tortious Interference).

## II.     DISCUSSION

### A.      <u>Daubert</u> Standard and FRE 702

The Federal Rules of Evidence, as interpreted by the Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579, 589 (1993), govern this matter.  Federal Rule of Evidence 702 governs the testimony of expert witnesses and states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b)   the testimony is based on sufficient facts or data;
(c)   the testimony is the product of reliable principles and methods; and
(d)   the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "[T]the trial judge has the gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  Allen v. Brown Clinic, P.L.L.P., 531 F.3d 568, 573 (8th Cir. 2008) (second alteration in original) (quoting Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (quoting Daubert, 509 U.S. at 597)).  "An expert's testimony to be admissible 'must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.'"  Kirk v. Schaeffler Grp. USA, Inc., 887 F.3d 376, 391 (8th Cir. 2018) (quoting Johnson v. Mead Johnson & Co., 754 F.3d 557, 561-62 (8th Cir. 2014)).  "Rule 702 is a rule 'of admissibility rather than exclusion.'"  PFS Distrib. Co. v. Raduechel, 574 F.3d 580, 597 (8th Cir. 2009) (quoting Jenson v. Eveleth Taconite Co., 130 F.3d 1287, 1298 (8th Cir. 1997)).

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.  Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

Hartley v. Dillard's, Inc., 310 F.3d 1054, 1061 (8th Cir. 2002) (quoting Bonner v. ISP Techs., Inc., 259 F.3d 924, 929-30 (8th Cir. 2001)); see also Wash Sols., Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 895 (8th Cir. 2005) (finding no abuse of discretion in the district court's admission of expert testimony regarding lost future profits, reasoning other witness testimony verified the accuracy of information relied upon by the economic expert in calculating future lost profits).

The screening requirement of Rule 702 has been boiled down to a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  This is the basic rule of relevancy.  Second, the proposed witness must be qualified to assist the finder of

fact.  Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

Johnson, 754 F.3d at 561 (quoting Polski v. Quigley Corp., 538 F.3d 836, 839 (8th Cir. 2008).

**B.    Defendants' Motion to Exclude Engstrom's Testimony**

Eric Engstrom is employed by LWBJ Capital Advisors, LLC, an accounting firm, as a Director of Valuation and Transaction Services.  He is a Certified Public Accountant and Chartered Financial Analyst, and he has degrees in accounting from the University of Iowa.  He regularly testifies as an expert witness on issues relating to business valuation and economic damages, including involving lost profit calculations.  He is qualified to testify regarding damage calculations in this case.

Engstrom's expert report covers three primary topics relating to damages: lost "Dollar Channel" profits, concentrate pricing, and the Big Bets program.  Based on the Court's summary judgment ruling dismissing all concentrate pricing claims, Engstrom's expert testimony as to those claims is now moot.  Defendants' motion to exclude Engstrom's expert testimony regarding concentrate pricing is **granted**.

**1.    Dollar Channel Lost Profits**[1]

Engstrom's report estimated Plaintiffs' alleged lost profits from Dollar Channel (i.e., Dollar General, Family Dollar, and Dollar Tree) business by calculating lost revenue, avoided expenses, lost profit, and present value of lost profit.  Each of the four steps in the process involved numerous assumptions and sub-steps and relied on a variety of factual sources.  Defendants argue that Engstrom's calculations are based on unsupported assumptions, ignore relevant facts,

---

[1] This relates to Plaintiffs' Count V (Tortious Interference – Dollar General and Family Dollar).

and improperly speculate that prior lost profits will continue and create future lost profits. Defendants present a laundry list of facts Engstrom allegedly failed to consider and make numerous assumptions they assert Engstrom inappropriately applied.  Defendants argue that even if any given factual issue would just go to weight, the cumulative weight of all their factual criticisms renders Engstrom's testimony unreliable and warranting of exclusion.

Defendants cite Watson v. United States, 668 F.3d 1008, 1014 (8th Cr. 2012) (quoting Nebraska Plastics, Inc. v. Holland Colors Americas, Inc., 408 F.3d 410, 416 (8th Cir. 2005)), for the proposition that an expert opinion that fails to account for a "plethora of specific facts" and is "fundamentally unsupported" must be excluded.  Defs.' Reply Mot. Exclude 3, ECF No. 166.  In Nebraska Plastics, the Eighth Circuit concluded that the district court did not abuse its discretion in excluding the plaintiff's expert from testifying about damages based on future warranty claims because the expert's testimony assumed, among other things, that 100% of relevant products would be subject to warranty claims but the factual record showed that historically only 3.5% of products were in fact subject to warranty claims.  Nebraska Plastics, 408 F.33d at 416.  The court stated that "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination," but nonetheless concluded that the expert's testimony was so deficient in its factual bases that it would not be helpful to the jury.  Id. (quoting Hartley, 310 F.3d at 1061.

The factual issues for which Defendants assert Engstrom failed to account are not com-parable to those at issue in Nebraska Plastics.  For instance, Defendants challenge Engstrom's projection of 8% annual growth of Mahaska sales to Dollar Channel stores between 2018 and 2022 as too high because he allegedly ignored economic forecasts of 6.5% and 4.8% total

revenue growth for Dollar General and Dollar Tree, respectively.[2]   Plaintiffs defend Engstrom's

projection as being conservative because Mahaska's historical revenue growth from sales to

Dollar Channel stores was around 12% and accelerating.   Defendants respond that Engstrom

failed to consider factors, including Mahaska's non-Dollar Channel sales, other distributors'

Dollar Channel sales, Mahaska's comparative growth rate between new and existing dollar

stores, projections for new dollar stores opening in Mahaska's territories, and diversion of Pepsi

sales from the Dollar Channel to other channels, thus rendering the historical growth rate was

unsustainable.   Such a fact-specific, back-and-forth dispute is a clear example of an issue of

evidentiary weight, not admissibility, and is wholly unlike the expert testimony excluded in

Nebraska Plastics, which was based on the expert's sweeping assumption that warranty claims

would be filed on 100% of the subject products when the historical data showed warranty claims

were filed on only 3.5% of the subject products.   Nebraska Plastics, 408 F.33d at 416.

     Defendants further argue that Branden Muhl,[3] Mahaska's CEO, "found many of

Engstrom's assumptions to be inappropriate," which, Defendants argue, demonstrates that

Engstrom's report is unreliable and speculative.   Defs.' Br. Supp. Mot. Exclude 8, ECF No. 137-

1.   However, as Defendants acknowledge, Muhl's comments at his deposition suggest that he

thought Engstrom's damage calculation was too *conservative*.   For instance, Muhl stated that

Engstrom's projection of 12% annual revenue growth from 2018 to 2022 from sales to Dollar

Channel customers, although accurate from 2010 to 2015, should have been closer to 20 to 22%,

---

     [2] Notably, the forecasts Defendants cite appear to be for overall Dollar General and Dollar Tree revenue growth, not Mahaska's revenue growth from *sales* to Dollar General and Family Dollar.   Count V only relates to Dollar General and Family Dollar.   See August 26, 2019 Order 57 n.29, ECF No. 300.

     [3] Branden Muhl's testimony, which Defendants raise in support of their motion to exclude Engstrom's testimony, is considered by the Court for purposes of this motion and does not undermine the Court's prior ruling excluding Branden Muhl from testifying as an expert, ECF No. 242.

if not higher, because growth was accelerating after 2015. As noted above, Defendants them-

selves argue that various factors suggest Engstrom's 12% growth projection was too high.

Defendants cannot have it both ways, arguing on the one hand that Engstrom's projections were

too aggressive because they failed to account for contrary factors, while on the other hand citing

Muhl's testimony that Engstrom's growth projections were too conservative; Defendants cannot

use contradictory theories in support of the proposition that Engstrom's testimony is fatally

unreliable. The factors Defendants argue Engstrom ignored are the bases of cross examination at

trial, not pre-trial exclusion. See Kudabeck v. Kroger Co., 338 F.3d 856, 862 (8th Cir. 2003)

("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but admissible

evidence." (quoting Daubert, 509 U.S. at 596)). Moreover, determining the appropriate weight

to be given to Engstrom's testimony is the role of the jury, not the Court's role on a Daubert

motion. See Eckerberg v. Inter-State Studio & Publ'g Co., 860 F.3d 1079, 1088 (8th Cir. 2017)

("The jury was entitled to determine what weight, if any, to give any of the expert testimony

offered by the parties." Niemiec v. Union Pac. R.R. Co., 449 F.3d 854, 859 (8th Cir. 2006)).

Defendants also cite Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1056 (8th

Cir. 2000), in arguing Engstrom's testimony must be excluded because he failed to account for

relevant factors in his analysis, such as Plaintiffs possibly having diverted PepsiCo product sales

to other customers, which would offset lost profits from reduced sales to Dollar Channel

customers. In Concord Boat, the Eighth Circuit found a district court erred in admitting expert

testimony in an antitrust suit when the expert attempted to construct an alternative economic

model but, according to the Eighth Circuit, "did not incorporate all aspects of the economic

reality" and whose report was so deficient in its factual foundation that the expert's conclusions

were "'mere speculation.'" Concord Boat, 207 F.3d at 1057 (quoting Virgin Atl. Airways Ltd. v.

7

British Airways PLC, 69 F. Supp. 2d 571, 580 (S.D.N.Y. 1999)).  Here, Engstrom *did* consider

the potential that Plaintiffs' sales would be diverted to non-Dollar Channel customers but con-

cluded in his report that Plaintiffs' sales to non-Dollar Channel customers were essentially the

same in 2017 (the first full year after Defendants' alleged wrongful conduct) as in 2015, and he

therefore did not incorporate sales diversion into his calculations.  Defendants characterize this

analysis as Engstrom "summarily dismiss[ing]" the potential for diversion and cite their own

expert's testimony that sales in 2017 to non-Dollar Channel customers were higher than expected

given historical downward trends.  Defs.' Reply 2, ECF No. 166.  As demonstrated by Defen-

dants' own argument that their expert reached a different conclusion, Engstrom's testimony and

report "should be tested by the adversary process with competing expert testimony and cross-

examination, rather than excluded by the court at the outset."  Johnson, 754 F.3d at 562 (citing

Daubert, 509 U.S. at 590, 596).  It is then for the jury to determine the weight that should be

accorded to the experts' opinions.  Engstrom's decision not to include sales diversion in his

calculations, based on his analysis of non-Dollar Channel sales, is not so speculative as to render

his testimony unreliable and suitable for exclusion.  For these reasons, Defendants' motion is

**denied** with respect to Engstrom's testimony regarding Dollar Channel lost profits.

## 2.  The Big Bets Program[4]

Engstrom's report includes analysis of reimbursements Plaintiffs claim Defendants owe

relating to the Big Bets program.  The report explains that Engstrom calculated damages by

reviewing calculations that both parties had exchanged and analyzing the calculations to, among

other things, exclude payments Defendants have already made and identify discrepancies and

inconsistencies.  Defendants argue that Engstrom's expert testimony regarding the Big Bets

---

[4] This relates to Count I (Breach of Contract – Big Bets Program).

program should be excluded because it only involved a "simple subtraction exercise that does not require an expert witness" and, therefore, will not assist the jury in understanding the evidence. Defs.' Br. Supp. Mot. Exclude 13, ECF No. 137-1.  Defendants rely on Israel Travel Advisory Service v. Israel Identity Tours, No. 92 C 2379, 1993 WL 387346, at *2 (N.D. Ill. Sept. 23, 1993), in which the court barred an accountant's expert testimony regarding damages when the testimony was based on "simple averages [that] could be computed by anyone with junior high school mathematics" and "dr[ew] nothing from his purported experience."

Plaintiffs respond by citing WWP, Inc. v. Wounded Warriors Family Support, Inc., 628 F.3d 1032, 1039 (8th Cir. 2011), in which the Eighth Circuit found that a district court did not abuse its discretion in permitting expert testimony from a forensic accountant who "analyz[ed] a substantial amount of financial data, and applied reliable methods in forming opinions that would help the jury understand the evidence." (alteration in original) (internal quotation marks omitted). The appellants argued that the expert "made only simple mathematical calculations to arrive at his damages calculation," but the court found that an expert need not "make *complicated* mathematical calculations" for the calculations to be admissible and helpful to a jury. Id. (citing In re Prempro Prods. Liab. Litig., 514 F.3d 825, 831 (8th Cir. 2008) (holding district court did not abuse its discretion in permitting expert testimony that was "an exercise in basic math using simple deductive reasoning.")).

Plaintiffs also cite Total Control, Inc. v. Danaher Corp., 338 F. Supp. 2d 566, 569 (E.D. Pa. 2004), in which the district court allowed expert testimony from a financial analyst that only involved "basic skills of arithmetic" because the expert's "ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the jury." That court further noted that "courts have taken a liberal approach to the admissibility of expert testimony in instances when a party offers expert guidance to the finder of fact respecting factual

issues that arguably fall within the competence of lay people." Id. at 569-70 (quoting Joseph M. McLaughlin, Weinstein's Federal Evidence § 702.03(2)(b) (2d ed. 2004)).

Defendants respond that WWP and Total Control are inapposite because the expert testimony in both cases involved "vast amounts of data," whereas Engstrom's analysis was "based on data already organized into three Excel workbooks that clearly identify funding requested versus funding received." Defs.' Reply 4, ECF No. 166. Leaving aside that the Eighth Circuit in WWP characterized the expert testimony as involving "substantial" rather than "vast" amounts of data, WWP, 628 F.3d at 1039, and that the district court in Total Control did not purport to establish a minimum requirement that an expert analyze a "vast" amount of data, the key inquiry here is not whether the expert analyzed a sufficiently large amount of data but rather whether the expert's analysis is helpful to a jury, see Total Control, 338 F. Supp. 2d at 569 ("[A]n expert can be employed if his testimony will be helpful to the trier of fact in understanding evidence that is simply difficult, [though] not beyond ordinary understanding." (alternations in original) (quoting United States v. Downing, 753 F.2d 1224, 1229 (3d Cir. 1985))). The Court must disagree with Defendants' position that Engstrom's testimony is unhelpful.

As an initial matter, Defendants' reliance on Israel Travel is misplaced for several reasons. Tellingly, on appeal of other issues, the Seventh Circuit Court of Appeals described that case as "a spite match, and as in many such contests the parties have raised every imaginable claim and others that exceed the bounds of imagination." See Israel Travel Advisory Serv., Inc. v. Israel Identity Tours, Inc., 61 F.3d 1250, 1253 (7th Cir. 1995). As the district court described in that case, "[e]xpert testimony has been a contentious issue between the parties." Israel Travel, 1993 WL 387346, at *1. Contrary to Defendants' characterization that the district court in Israel Travel excluded the plaintiff's expert merely because the expert proffered only simple averages that a junior high student could compute, the contentious backdrop of the Israel Travel litigation

informed the district court's ruling. Id. at *2. Thus, in excluding the expert, the district court noted the plaintiff's (arguable) failure to provide a final summary of the expert's opinion as ordered by the court, id.; the expert did not qualify as an expert in the relevant field, id.; and the expert's testimony was not based on specialized knowledge, id. at *2. The challenges to Engstrom's testimony stand in stark contrast.

Defendants have not challenged Engstrom's qualifications as an expert in the relevant field. More importantly, the calculations at issue here are not simple arithmetic that could be computed by a junior high student. The three Excel workbooks Defendants describe as forming the basis for Engstrom's Big Bets calculations span approximately 50 pages, include dozens of lines of data per page, often spread out across various, inconsistently-formatted columns, and are full of accounting language that could very well confuse a jury. The workbooks contain a substantial amount of data. Further, Engstrom analyzed the data by identifying inconsistencies and discrepancies, which goes beyond mere arithmetic. Even if a jury would be able to eventually digest the data, determine what calculations would need to apply to which figures, and correctly apply the calculations, a jury would benefit from receiving Engstrom's testimony analyzing the data, particularly considering the voluminous data and exhibits that the parties intend to set forth for the jury across the various claims and counterclaims presented in this case. For these reasons, Defendants' motion is **denied** with respect to Engstrom's testimony regarding the Big Bets program.

### C. Plaintiffs' Motion to Exclude Lucy Allen's Expert Opinion Testimony

Lucy Allen is Managing Director of NERA Economic Consulting, where she has worked for approximately 25 years, and a former staff economist on the Council of Economic Advisers. She has multiple degrees in economics and business administration from Yale University and has

frequently been retained as an expert witness in federal litigation. She is qualified to testify as an expert witness regarding damage calculations.

Allen's expert report covers three primary topics relating to damages: Brand Development Fees, Delivery Balances, and Paragraph 8 payments. Plaintiffs also argue Allen's rebuttal reports to Engstrom's report should be excluded as unreliable. Based on the Court's summary judgment ruling dismissing claims relating to Brand Development Fees, Allen's expert testimony as to those claims is now moot. Defendants' motion to exclude Allen's expert testimony regarding Brand Development Fees is **granted**.

### 1. Delivery Balances[5]

Relying on Israel Travel, 1993 WL 387346, at *2, Plaintiffs argue that Allen's calculations of damages relating to delivery balances are based on simple mathematical calculations that are not informed by her expertise and would not be helpful to a jury. Defendants respond that Allen analyzed 90 invoices that contained numerous line items and columns, extracted the relevant information from the invoices, and compiled the data in a helpful summary chart. Defendants rely on DL v. District of Columbia, 730 F. Supp. 2d 78, 83 (D.D.C. 2010), in which the district court permitted expert testimony regarding statistics when it was based on analyzing over "12,340 entries" of data, even though "it technically would be feasible" for the trier of fact to analyze the data and "reach very elementary statistical conclusions without [the witness's] expertise." The court concluded that the expert's "testimony is very helpful to [the trier of fact] in distilling conclusions from this large set of data." Id. Defendants distinguish between, on the one hand, expert testimony like Allen's or the expert in DL, and, on the other hand, expert

---

[5] These damages relate to Counterclaim I (Breach of 1985 Amendment). As the Court noted in the summary judgment order, August 26, 2019 Order 68 n.32, ECF No. 300, the parties use inconsistent labels for various delivery fees or balances. For the purpose of this order, the Court uses "delivery balance" when referring to the subject of Allen's report on this topic.

testimony that is based on calculations that could have been performed "on a blackboard or a piece of paper," In re Connolly North America, LLC, 398 B.R. 564, 576 (Bankr. E.D. Mich. 2008), such as the "simple averages" the expert provided in Israel Travel, 1993 WL 387346, at *2.

Allen's damage calculations regarding delivery balances, as with Engstrom's damage calculations regarding the Big Bets program, rely on a substantial amount of disparate, potentially confusing sources of data, such that Allen's analysis and calculations are likely to help the jury in making sense of the requisite calculations. As this Court reasoned in regard to Engstrom's calculations, even if Allen's actual calculations are simple, applying the calculations to the data is not.

Plaintiffs also argue that admitting Allen's testimony regarding damages relating to delivery balances would mislead the jury and prejudice Plaintiffs because it might cause the jury to think that Allen "is offering an opinion that Mahaska is required under a contract to pay balance delivery fees, or that the charges appearing on those balance delivery fee invoices are accurate." Pls.' Br. Support Mot. Exclude Allen 13, ECF No. 139-1. Plaintiffs rely on Master-Halco, Inc. v. Scillia, Dowling & Natarelli, LLC, No. 3:09-CV-1546 (MRK), 2010 WL 2978289, at *3 (D. Conn. Apr. 9, 2010), in which the court excluded expert testimony when the expert's damage calculations were so simple that "[t]here is absolutely no reason why the jury cannot do this for itself; in fact, juries do these types of calculations all the time." The expert's award calculation involved adding together the alleged damage amount (the uncollected debt defendants owed to the plaintiff) to the attorneys' fees and litigation costs (the amount plaintiff incurred in prior debt collection lawsuits against the defendants)—both amounts having been provided to the expert by the plaintiff's counsel—and multiplying the resulting sum by an interest rate, which was also provided by the plaintiff's counsel. Id. at *3-6. The court stated

13

that permitting such expert testimony would be dangerous because "the jury could be mislead [sic] into thinking that [the expert] actually *did* do some of the things that he actually did not do—like determine reasonableness of attorneys' fees and costs . . . .  Any such assumption by the jury would clearly cause unfair prejudice to the [d]efendants."  Id. at *6 (citing Fed. R. Evid. 403).  Plaintiffs also quote the following language from Somnis v. Country Mutual Insurance Company, 840 F. Supp. 2d 1166 (D. Minn. 2012):

> It is for "[t]he jury . . . to draw reasonable inferences from the firsthand data.  When an expert witness is called upon to draw those inferences, several concerns are raised. . . .   [A] certain patina attaches to an expert's testimony unlike any other witness; this is 'science,' a professional's judgment, the jury may think, and give more credence to the testimony than it may deserve."

Somnis, 840 F. Supp. 2d at 1173 (alterations in original) (quoting United States v. Hines, 55 F. Supp. 2d 62, 64 (D. Mass. 1999)).  The district court in Somnis permitted an expert's testimony that there was an "absence of an accidental explanation for a fire" thus allowing the jury to reasonably infer that the fire was incendiary.  Id. at 1171.  However, the district court excluded the expert from testifying that "the absence of an accidental explanation suggests the fire was incendiary," reasoning "expert testimony may be admitted [only] where the inferences that are sought to be drawn are inferences that a jury could not draw on its own."  Id. at 1172-73 (alteration in original) (quoting Hines, 55 F. Supp. 2d at 64).

Defendants respond that Allen does not opine on the validity of the underlying legal theories but has instead calculated damages with the assumption that the relevant legal theory is correct, and that Plaintiffs' real objection is that "Allen's opinions are not helpful because they fail to conform with Mahaska's legal theories."  Defs.' Resist. Mot. Exclude Allen 8, ECF No. 151.  Defendants cite Harris v. Koenig, 815 F. Supp. 2d 6, 10 (D.D.C. 2011), in which the district court permitted the expert's damages testimony based on the assumption that the party's legal theories were valid.  The district court explained that the expert's reliance on the party's

14

assumption was not unreasonable and that while the other party "may disagree with th[e] legal theory, resolution of [the] disagreement will occur at the merits stage of the litigation and not pursuant to a Rule 702 motion." Id. (citing Donovan v. Bierwirth, 754 F.2d 1049, 1052 (2d Cir. 1985) ("Measuring damages involves the application of law to fact; the proper formula for calculating damages is essentially a question of law.")).

Allen's opinion regarding damage calculations is unlikely to mislead the jury into believing that Defendants' underlying legal theory is valid. As noted by the district court in Harris, damage calculations inherently rely on making assumptions about underlying legal theories, but expert witnesses nonetheless regularly testify to damages. Id. To the extent that the jury may interpret Allen's damages testimony as going to the merits of the claims, the onus is on the parties to appropriately cabin Allen's testimony and accurately describe the role of such testi-mony during argument to the jury; the appropriate remedy to a slight risk of confusion is not to exclude Allen's testimony, which would otherwise be helpful to the jury, at the outset. Further, the cases Plaintiffs cite are not on point. The expert in Master-Halco served no helpful purpose because he only performed a very small number of calculations with numbers provided by counsel, Master-Halco, 2010 WL 2978289, at *3-6, unlike Allen, who independently reviewed and analyzed a substantial number of invoices to calculate damages. The district court in Somnis only excluded the expert from specifying the inference to be drawn from his detailed report, reasoning that such an inference was properly in the realm of the jury. Somnis, 840 F. Supp. 2d at 1173. Here, Allen's anticipated testimony would be helpful to the jury in calculating damages and does not improperly intrude on the realm of the jury to draw its own inferences.

Plaintiffs also cite Shaw Group v. Marcum, 516 F.3d 1061, 1068 (8th Cir. 2008), in arguing that "the Eighth Circuit has refused to allow expert testimony which presupposes a contractual

duty."[6] Pls.' Reply Mot. Exclude Allen 2, ECF. No. 168.  This misreads the court's ruling.  In

Shaw Group, the Eighth Circuit found that a district court properly excluded expert testimony

from an electrical engineer as to a party's duty under a contract but permitted testimony from the

expert regarding the expert's experiences regarding ordinary business practices in the industry.

Shaw Group, 516 F.3d at 1068.  The court did not find that an expert may not *presuppose* a con-

tractual duty but instead excluded the expert's testimony as to what the plaintiff's duties were

under the contract because "duty is a question of law."  Id. (citing Lacy v. Flake & Kelley

Mgmt., 235 S.W.3d 894, 896 (2006)).  The circumstances in Shaw Group are unlike those in the

present case.

     Here, in order to calculate damages, Allen presupposed, for instance, that Plaintiffs were

liable and that invoices were accurate, without directly opining on the validity of the party's

underlying legal theories.  As a damages expert, Allen may assume liability in order to address

damages; a damages expert's testimony is, of course, not *proof* of liability.  See Robroy Indus.-

Texas, LLC v. Thomas & Betts Corp., No. 2:15-CV-512-WCB, 2017 WL 1319553, at *4 (E.D.

Tex. Apr. 10, 2017) ("[The plaintiff's damages expert] is allowed to assume liability and address

---

[6] Plaintiffs initially argued that the jury might misinterpret Allen's assumptions as legal conclusions, resulting in confusion and prejudice.  E.g., Pls.' Br. Support Mot. Exclude Allen, at 14, ECF No. 139-1 ("[t]here is a risk that the jury will be misled into believing that Ms. Allen is opining on more than just the calculations she performed; instead, the jury may think that she is actually opining on the assumptions underlying h[er] damage estimates.").  By contrast, Plaintiffs argued in their Reply that Allen actually draws impermissible legal conclusions rather than making assumptions.  Pls.' Reply Mot. Exclude Allen 1-3, ECF No. 168 ("[Defendants] would like to characterize Allen's legal conclusions as assumptions.").  These arguments are in tension because Plaintiffs themselves initially characterized Allen's testimony as assumptions for the purposes of damage calculations.  E.g., Pls.' Br. Support Mot. Exclude Allen 14, ECF No. 139-1 ("Allen's balance delivery fee calculations are premised on two key *assumptions*: (1) that Plaintiffs are liable . . . and (2) that the invoices are accurate. . . .  [Allen's] paragraph 8 methodology . . . is premised on the *assumption* that Plaintiffs overstated their pricing.") (emphasis added).  Although Plaintiffs are not explicit about how these two arguments relate, the Court considers both arguments for the purposes of this motion.

only the issue of damages.  To prove causation, [the plaintiff] will be required . . . to look to evidence other than the testimony of [the damages expert]"); Sancom, Inc. v. Qwest Commc'ns Corp., 683 F. Supp. 2d 1043, 1068 (D.S.D. 2010) ("[I]t is well-settled that a damages expert . . . can testify as to damages while assuming the underlying liability." (citing In re Sulfuric Acid Antitrust Litigation, 235 F.R.D. 646, 660 (N.D. Ill. 2006)).

Plaintiffs also cite Permacel Automotive v. Kohler Company, No. 08-00804-CV-W-FJG, 2009 WL 3075568, at *1 (W.D. Mo. Sept. 23, 2009), for the proposition that an expert can make factual assumptions but cannot offer opinions that amount to legal conclusions.  That is correct. The Permacel court found that an expert testifying to damages could assume, as a factual matter, that a party breached a contract in order for the expert to calculate damages associated with the alleged breach.  Id.  Indeed, the court noted that the expert "*had* to make the factual assumption that a breach of contract had occurred" in order to calculate damages.  Id.  Here, however, Plaintiffs point to examples of Allen's testimony and assert that they are legal conclusions. [7]  Allen assumes violations of duties consistent with Defendants' legal theories and then calculates damages based on those theories.  To the extent her trial testimony does not clearly indicate the violations are assumed, if proffered in that form at trial, it would be subject to objections and could be further clarified upon cross examination.  Except in trials where liability is admitted and the only issue is the amount of damages, experts testifying to damages must make assumptions about liability and the parties' legal theories in order to calculate damages.  The case of United States v. Klaphake, 64 F.3d 435 (8th Cir. 1995), also cited by Plaintiffs, provides an example of

---

[7] The only specific instances from Allen's report that Plaintiffs in their Reply identify as legal conclusions relate to Brand Development Fees, but, as noted above, testimony regarding Brand Development Fees is moot after related claims were disposed of at the summary judgment stage.  To the extent Plaintiffs intended their argument to apply to Allen's testimony regarding delivery balances or paragraph 8 payments, Allen makes assumptions for the purposes of calculating damages but does not directly opine on legal theories.

properly excluded expert testimony.  In <u>Klaphake</u>, the Eighth Circuit affirmed the district court's

exclusion of expert testimony from a lawyer as to the legality of a trust agreement but did allow

the expert to testify to matters within his personal knowledge.  <u>Klaphake</u>, 64 F.3d at 438-39.

That is unlike the present case, where Allen assumes violations for purposes of calculating

damages but does not directly opine on the validity of the legal theories.  For these reasons,

Plaintiffs' motion to exclude Allen's testimony regarding delivery balances is **denied**.

### 2.   **Paragraph 8 Payments**[8]

At the time the parties briefed issues regarding Plaintiffs' Motion to Exclude Allen, Allen

had provided a proposed methodology regarding Paragraph 8 payments but had not applied that

methodology to the underlying facts, purportedly because Plaintiffs had yet to produce the

necessary information despite discovery requests.  Plaintiffs and Defendants vigorously dispute

whether Defendants already had in their possession the necessary underlying materials and

whether Plaintiffs failed to produce such materials.  Allen subsequently applied her methodology

to the materials, which Defendants provided as a declaration at the summary judgment stage.

Decl. of Allen – April 17, 2019, ECF No. 246-2.  Although Plaintiffs note that Allen, at the time

of the <u>Daubert</u> motion briefing, had not yet applied the methodology, Plaintiffs present no

argument and cite no case law as to why the Court should exclude Allen's testimony on that

basis and instead argue against Allen's proposed methodology.  For purposes of considering the

present motion, the Court will evaluate Allen's proposed methodology as presented at the time of

the relevant briefing rather than rely on Allen's subsequent declaration.

As against Allen's proposed methodology pertaining to Paragraph 8 payments, Plaintiffs

repeat the argument they made against Allen's report pertaining to delivery balances.  Plaintiffs

---

[8] This relates to Count I (Breach of Contract – Paragraph 8 "Offers"), as well as
Counterclaims V (Breach of Paragraph 8) and VII (Breach of Implied Covenant).

additionally argue that Allen's testimony on Paragraph 8 payments should be excluded because Allen did not adequately understand, or incorporate into her methodology, Mahaska's tier-based pricing structure and Pepsi's process for receiving and making Paragraph 8 payments.  Defendants respond by citing <u>Hose v. Chicago Northwestern Transportation Co.</u>, 70 F.3d 968, 974 (8th Cir. 1995), to say that the factual basis of an expert opinion goes to weight, not admissibility.

The Court agrees with Defendants that Allen's testimony regarding Paragraph 8 payments is admissible.  As explained above, in a case such as this that necessarily involves a highly significant number of exhibits, including many financial documents that would be unfamiliar to jurors, across numerous claims and counterclaims, expert testimony regarding calculating damages would assist the jury even if the underlying arithmetic is not complex.  As with Allen's methodology with respect to delivery balances, her proposed methodology for calculating Paragraph 8 payments incorporates a substantial amount of disparately-sourced data in a way that would assist the jury.  This does not preclude Plaintiffs from questioning Allen as to the accuracy of her methodology on cross-examination.  Accordingly, Plaintiffs have not sufficiently demonstrated that Allen's testimony is so unreliable that exclusion is warranted, as Plaintiffs' arguments go to weight, not admissibility.  <u>See</u> <u>Eckerberg</u>, 860 F.3d at 1088.  For these reasons, Plaintiffs' motion to exclude Allen's testimony regarding Paragraph 8 payments is **denied**.

### 3.  Engstrom's Report

Plaintiffs also argue that Allen's report and testimony criticizing Plaintiffs' expert witness report from Engstrom should be excluded as unreliable.  Plaintiffs' primary argument is that Allen's criticism of Engstrom's report is based on her subjective opinion rather than the result of a rigorous methodology.  Pointing to the <u>Daubert</u> factors, Plaintiffs argue that Allen's critiques of Engstrom cannot be tested, have not been subject to peer review, and do not have a known potential error rate.  Defendants argue that an economic expert can appropriately critique the

methodology of an opposing expert witness without proposing an alternative methodology and note that the Supreme Court has said that the <u>Daubert</u> test is meant to be "flexible."  <u>See</u> <u>Kumho</u> <u>Tire Co.</u>, 526 U.S. at 142.

Courts regularly permit expert witness testimony even if the expert primarily critiques the opposing expert's approach without offering an alternative approach.  <u>See</u> <u>Aviva Sports, Inc. v.</u> <u>Fingerhut Direct Mktg.</u>, 829 F. Supp. 2d 802, 834 (D. Minn. 2011) (collecting cases).  "It is the proper role of rebuttal experts to critique plaintiffs' expert's methodologies and point out potential flaws in the plaintiff's experts' reports."  <u>Id.</u>  Although the Court still has a gatekeeping function with rebuttal expert witness testimony, Allen's critiques of Engstrom's report, which primarily relate to facts that Allen alleges Engstrom ignored or failed to properly consider, meet the standard of admissibility.  Further, as the Court reasoned regarding Defendants' factual criticisms of Engstrom's report, Plaintiffs' objections to Allen's criticisms of Engstrom's report are not so significant as to make Allen's rebuttal inherently unreliable and inadmissible but instead go to the weight the jury chooses to afford that testimony.  Allen's rebuttal, which appears reliable and grounded in Allen's expertise, is admissible consistent with Rule 702.  For these reasons, Plaintiffs' motion to exclude Allen's testimony regarding rebutting Engstrom's report and testimony is **denied**.

### D.  Plaintiffs' Motion to Exclude Michael Bellas's Expert Opinion Testimony

Michael Bellas is the Chairman and founder of the Beverage Marketing Corporation of New York, a consulting, research, and financial advisory firm specializing in the global beverage industry.  Bellas graduated from Yale University, University of Michigan Law School, and Columbia Business School; has vast experience in the beverage industry; and since 2015, has been retained as an expert witness in at least four other suits involving beverage companies.  He is qualified to testify as an expert relating to the beverage industry.

Bellas' expert report provides a brief history of the beverage industry.  With few exceptions, the report does not discuss specific claims or factual disputes directly at issue between the two sides in this case but instead sets forth historical information, data, and trends about the industry in which the parties operate.  Plaintiffs raise a long list of arguments against Bellas' testimony but only assert one argument in their Reply—namely, that Defendants have conceded Bellas' testimony is inappropriate by arguing that it relates to Defendants' corporate intent. Defendants respond that Bellas' report relates to Plaintiffs' tortious interference claim, which alleges Plaintiffs had a right to a reasonable profit, and Bellas' report explains that what constitutes a reasonable profit has changed over time due to market forces.  Defendants also contend that the report's information regarding a shift in bargaining power in the beverage industry is critical for the jury in evaluating Mahaska's tortious interference claim, specifically with respect to Defendants' intent.  Finally, Defendants argue that the report's information regarding the beverage industry provides helpful background context to the claims in dispute.  Plaintiffs respond that experts cannot testify about corporate intent and conclude that "[t]he Eighth Circuit has made clear that an expert's opinion regarding a corporation's intent is irrelevant."  Curiously, Plaintiffs do not cite authority, binding or otherwise, for this proposition either from the Eighth Circuit or any other court.  Pls.' Reply Mot. Exclude Bellas 3, ECF No. 164.

Although Plaintiffs do cite district court cases for the proposition that experts cannot testify to intent, those cases all involve the exclusion of expert testimony that goes directly to intent rather than factual testimony regarding things such as market conditions and industry trends, from which the jury could draw inferences regarding a party's intent.  See, e.g., Langenbau v. Med-trans Corp., 167 F. Supp. 3d 983, 1001-02 (N.D. Iowa 2016) (excluding the plaintiff's expert's testimony that the defendant corporation "showed a conscious disregard for safety" and that its corporate officers made "conscious business decisions"); In re: Levaquin Prod. Liab.

Litig., No. MDL 08-1943 (JRT), 2010 WL 11470977, at *2-4 (D. Minn. Nov. 10, 2010) (excluding the testimony of plaintiffs' experts that represented the expert's subjective beliefs regarding the defendant corporations' bad intent but permitting the experts' testimony that expressed general methodological research principles from which the jury could draw inferences); Lafarge N. Am., Inc. v. Discovery Grp. LLC, No. 05-1110-CV-W-FJG, 2010 WL 3025120, at *7 (W.D. Mo. July 30, 2010) (striking those statements by the defendant's expert witness that went directly to defendant corporation's state of mind); In re Baycol Prod. Litig., 532 F. Supp. 2d 1029, 1054 (D. Minn. 2007) (excluding expert testimony that corporation "acted ethically, irresponsibly or recklessly" but permitting the expert's testimony regarding the standard of care in industry); Neuharth v. NACCO Materials Handling Grp., Inc., No. CIV. 01-4034-KES, 2002 WL 34700601, at *5 (D.S.D. Dec. 17, 2002) (excluding expert testimony that a corporation "had a particular motive" but permitting the expert's opinion testimony regarding the cause of the plaintiff's injuries from which jury could draw inferences).  Somnis, which Plaintiffs cited in moving to exclude Allen's testimony, illustrates this distinction:  the Somnis court permitted an expert's testimony that there was an "absence of an accidental explanation for a fire" but excluded the expert's testimony that, because there was no evidence that the fire was caused accidentally, it must have been caused intentionally.  Somnis, 840 F. Supp. 2d at 1171-73.  Bellas' testimony relates to facts properly within his expertise—namely, market conditions and industry trends—which may be helpful to the jury in determining Defendants' intent, but Bellas does not directly opine on Defendants' intent.

The primary argument that Plaintiffs presented in their initial brief is that Bellas' testimony regarding market conditions and bargaining power is irrelevant because all the claims relate to the specific contracts and relationships between Plaintiffs and Defendants and not the industry at large.  Plaintiffs make several permutations of the same underlying objection, variously arguing

that testimony regarding national industry conditions is irrelevant, unreliable, and not helpful to a jury. Defendants respond that Bellas' testimony relates to, among other things, Plaintiffs' tortious interference claim by describing the national market pressures that influenced Defendants, such as the growing market power of national chain customers that push suppliers such as Defendants in pricing and logistics. Bellas' testimony regarding national market conditions in the beverage industry relates to the remaining claims and is relevant and helpful to a jury even if the testimony is not focused on the relationship between Plaintiffs and Defendants because it provides industry context to the interactions between the parties. Plaintiffs' argument that Bellas' testimony is unreliable because it is not sufficiently focused on the Dollar chain customers, on the Midwest, or on other specific aspects of the case goes to weight rather than admissibility. See Kudabeck, 338 F.3d at 862 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (quoting Daubert, 509 U.S. at 596)).

Plaintiffs also argue that Bellas' report touches on now-dismissed antitrust claims and asks that such testimony be stricken. Plaintiffs particularly allege that references to Defendants "squeezing" Plaintiffs are improper because such references relate to the dismissed antitrust claims, and that Bellas—who is not an economist—should not be permitted to testify regarding economic topics. Defendants respond that Plaintiffs repeatedly state in their Second Amended Complaint that Defendants attempted to "squeeze" Plaintiffs in reference to non-antitrust claims, and that Bellas' testimony on such issues relates to the remaining Paragraph 8 and tortious interference claims. Although any testimony regarding antitrust claims is irrelevant and inadmissible, testimony regarding market pressures—including testimony relating to Defendants "squeezing" Plaintiffs—remain relevant to the existing claims. Further, Plaintiffs' argument that Bellas as a non-economist cannot testify regarding economic topics is unpersuasive because

Bellas does not attempt to create an economic model beyond his expertise but rather focuses his testimony on historical information and trends regarding the beverage industry, a topic on which he is qualified.  For these reasons, Plaintiffs' motion to exclude Bellas' testimony is **denied**.

**IT IS SO ORDERED.**

Dated this 23d day of October, 2019.

JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT